| | |
|---|---|
| **CYNTHIA J. JOHNSON,** | |
| **Plaintiff,** | |
| **v.** | **AFFIDAVIT OF BETTY COULTER** |
| **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION; CATHY BEAM (individual capacity),** | |
| **Defendants.** | |

Betty Coulter, being duly sworn, states:

1. I am over eighteen years old and am under no disability. I have personal knowledge of all matters stated in the Affidavit.

2. I work for the City of Charlotte as the Chief Risk Manager of the Risk Management Office of the City's Finance Department. Since at least 1986, the Risk Management Division has administered the insurance and self-insured retention programs for the Charlotte-Mecklenburg Board of Education, d/b/a Charlotte Mecklenburg Schools ("CMS"), and the Office has in its possession all insurance policies and other documents concerning CMS's insurance coverage, self-insured retention, and other insurance-related matters.

3. As Chief Risk Manager of the Risk Management Office, I have custody and access to the documents concerning CMS's insurance coverage, self-insured retention, and other insurance-related matters, including for fiscal year 2018-2019 (which lasted from July 1, 2018 through June 30, 2019). I am personally familiar with CMS's insurance coverage, self-insured retention, and other insurance-related matters for that fiscal year.

1

4. I have reviewed the First Amended Complaint filed in this case, which seeks damages from CMS for an event that allegedly happened during the 2018-2019 fiscal year.

5. For fiscal year 2018-2019, with respect to claims for bodily injury and property damage, CMS had a self-insured retention of $1,000,000 per occurrence, with a limit of $5,000,000. (*See* Exhibit A, bates 2). CMS did not have any liability insurance during that fiscal year covering claims for tort claims of $1,000,000 or less.

6. As this Affidavit explains below, the only liability insurance that CMS had for fiscal year 2018-2019 were excess liability policies. Coverage under those policies for bodily injury or property damage is triggered only if CMS becomes liable for, and pays, the first $1,000,000 for an occurrence.

7. CMS's first and second layers of excess coverage for bodily injury or property damage claims was provided by Safety National Casualty Corp. For the 2018-2019 fiscal year, CMS was covered under liability policies issued by Safety National Casualty Corp, Policy #'s GLE4058956 and XPE4058961 (hereinafter the "Safety National Policies").

8. A true and accurate copy of the Safety National Policies are attached as **Exhibit "A"** and incorporated into this Affidavit by reference. The attached Safety National Policies are kept in the regular course of the Risk Management Office's business, and it is the Office's regular practice to keep and maintain such policies.

9. CMS's first and second layer of excess coverage, provided by the Safety National Policies, is triggered for bodily injury or property damage claims only if CMS becomes liable for and pays the first $1,000,000 for a claim. As a result, the Safety National Policies provide no coverage for bodily injury or property damage claims of $1,000,000 or less. *See* Ex. A., Bates p. 44.

10. CMS has an additional excess policy provided by Safety National Policy for Educator's Legal and Employment Practices, ("Safety National EL"), Policy#SED6675347 attached as **Exhibit "B"** and incorporated into this Affidavit by reference. This Policy contains a Governmental Immunity Endorsement provision that states in pertinent part as follows: "The purchase of this policy is not intended by the Insured to waive its governmental immunity under North Carolina General Statutes Sect. 153A-435 or any other applicable law or statute or amendments thereto. Accordingly, subject to its terms, conditions and limits, this policy provides coverage only for Wrongful Acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense of governmental immunity is asserted, a court of competent jurisdiction determines the defense of governmental immunity is not applicable". (*See* Ex. B., Bates p. 14).

11. Based on the language in the Safety National EL Policy, it does not apply to claims for which the Board has governmental immunity.

12. The Safety National EL Policy excludes all claims for bodily injury and property damage.

13. CMS's second layer of excess coverage was provided by Great American Insurance Company. For fiscal year 2018-2019, CMS was covered under a commercial excess liability policy issue by Great American, Policy #EXC2275340 (hereinafter the "Great American Policy").

14. A true and accurate copy of the Great American Policy is attached as **Exhibit "C"** and incorporated into this Affidavit by reference. The attached Great American Policy is kept in regular course of the Risk Management Office's business, and it is the Office's regular practice to keep and maintain such polices.

15. CMS's next layer of excess coverage, provided under the Great American Policy, is triggered only if coverage under the Safety National Policies are exhausted. The Great American Policy contains an "Excess Liability Coverage Form" stating that "[t]his policy applies only in excess of the 'Underlying Limits of Insurance' shown on Item 5 of the Declarations." (*See* Ex. C, bates 3). Item 5 of the Declarations incorporates an Underlying Insurance Schedule, which defines "Underlying Insurance" as the Safety National Policies. (*Id.* at bates 5)

16. Under the Great American Policy, the Schedule of Underlying Insurance identifies the underlying limits of insurance as CMS's $1,000,000 self-insured retention and the $5,000,000 in coverage under the Safety National Policies. (*See* Ex. C, bates 5). The Great American Policy provides excess coverage up to $15,000,000. (*Id.* at bates 3). The Great American Policy provides that coverage under this policy will not apply unless and until the Insured or the Insured's 'underlying insurance' is obligated to pay the full amount of the 'Underlying Limits of Insurance.' (*Id.* at bates 20). As a result, coverage under the Great American Policy is triggered only if CMS and Safety National Policies already have paid the first $5,000,000 of a claim.

17. For fiscal year 2018-2019, CMS had no liability insurance for bodily injury claims of $1,000,000 or less. Coverage under the Safety National Policies and Great American Policy for that fiscal year is not triggered unless and until CMS has become liable for, and has paid, its full $1,000,000 self-insured retention for a particular claim.

18. CMS has not paid any amount of money for the tort claim in this action.

19. The Safety National Policy contains a Governmental Immunity Endorsement provision that states in pertinent part as follows: "This Policy only applies to the extent that immunity from liability is not otherwise provided under North Carolina Law. Your purchase of this insurance does not constitute a waiver on behalf of any Insured, of the sovereign or governmental immunity provided under North Carolina General Statutes Sect. 160A-485, 160A-485-5, 115C-42, Sec. 153A-435 or Sec. 115D-24, or any amendments thereto." (*See* Ex. A, bates 18). Accordingly, the Safety National Policies apply only to claims for which the Board does not have governmental immunity, and the Great American Policy is never triggered.

20. If CMS has governmental immunity from the first $1,000,000 of a general liability claim, the excess coverage under the Safety National Policies and the Great American Policy is never triggered. CMS will never be liable for, and will never pay, the first $1,000,000 of those claims, which is a necessary condition to coverage under the Safety National Policies and the Great American Policy.

21. Other than the Safety National Policies and the Great American Policy, CMS is not covered by any other liability insurance from July 1, 2018 through June 30, 2019. During fiscal year 2018-2019, CMS did not participate in any pooled insurance plans and did not have any liability insurance through the North Carolina School Board's Trust.

This the _28th_ day of _January_ 2022.

_Betty P. Coulter_
Betty Coulter

Tonie Diamond Richards
Notary Public
My Commission Expires: 3-5-20...

4

## SAFETY NATIONAL CASUALTY CORPORATION

### PRIVACY STATEMENT

### Our Commitment To Our Customers

Safety National Casualty Corporation ("Safety National") is proud to have provided quality products and services to its customers for over 50 years. We greatly appreciate the trust that you and all of our customers place in us. We protect that trust by respecting the privacy of all of our customers, both present and past. The following will explain our privacy practices so that you will understand our commitment to your privacy.

### We Respect Your Privacy

When you apply to Safety National for any type of insurance, you disclose information about you to us. The collection, use and disclosure of such information is regulated by law. Safety National and its affiliates maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your personal information. Our employees are also advised of the importance of maintaining the confidentiality of your information.

### Types Of Information We Collect

Safety National obtains most of our information directly from you, your agent or broker. The application you complete, as well as any additional information you provide, generally gives us most of the details we need to know. Depending on the nature of your insurance transaction, we may need further details about you.

We may obtain information from third parties, such as other insurance or reinsurance companies, medical providers, government agencies, information clearinghouses and other public records. We may also obtain information about you from your other transactions with us, our affiliates or others.

### What We Do With Your Information

Information that has been collected about you will be retained in our files. We will review your information in evaluating your request for insurance coverage, determining your rates or underwriting risk, servicing your policy or adjusting claims. We may retain information about our former customers and would disclose that information only to affiliates and to non-affiliates as described in this notice or as otherwise permitted by law.

### To Whom Do We Disclose Your Information

We will not disclose any non-public, personal information about our customers or former customers, except as permitted by law. That means we may disclose information we have collected about you to the following types of third parties:

- Our affiliated companies (Members and subsidiaries of the Tokio Marine Holdings, Inc. group of companies).

- Your agent or broker.

- Parties who perform a business or insurance function for Safety National, including reinsurance, underwriting, claims administration or adjusting, investigation, loss control and computer systems companies.

- Other insurance companies or agents as reasonably necessary concerning your application, policy or claim.

- Insurance regulatory or statistical reporting agencies.

- Law enforcement or governmental authorities in connection with suspected fraud or illegal activities.

- Authorized persons as ordered by subpoena, warrant or court order, or as required by law.

We do not disclose any non-public, personal information about you to non-affiliated companies for marketing purposes or for any other purpose except those specifically allowed by law and described above.

### Independent Sales Agents or Brokers

Your policy may have been placed with us through an independent agent or broker ("Sales Agent"). Your Sales Agent may have gathered information about you. The use and protection of information obtained by your Sales Agent is their responsibility, not Safety National's. If you have questions about how your Sales Agent uses or discloses your information, please contact them directly.

PN 99 02 0209

SAFETY NATIONAL CASUALTY CORPORATION
1832 Schuetz Road
St. Louis, MO 63146
(888) 995-5300

A STOCK COMPANY

# COMMERCIAL POLICY

_____
SECRETARY

_____
PRESIDENT

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM AND
ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

CP 99 03 03 14

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

**COMMERCIAL GENERAL LIABILITY
COVERAGE FORM DECLARATIONS**

| Policy Number | Policy Period | |
|---|---|---|
| | **From** | **To** |
| GLE4058956 | 07/01/2018 | 07/01/2019 |
| | 12:01 A.M. Standard Time at the described location | |

**Previous Policy Number:**

| **Transaction** |
|---|
| New Business |

| **Named Insured and Address** | **Agent** |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | 61091<br>USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone: |
| Business Description<br>MUNICIPALITY | Type of Business<br>CITY GOVERNMENT |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| **LIMITS OF INSURANCE** | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 2,000,000 | Combined BI & PD |
| DAMAGE TO PREMISES | | |
| RENTED TO YOU LIMIT | $ 500,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | N/A - No Coverage | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 2,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | | $ 4,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | | $ 4,000,000 |

| **DESCRIPTION OF BUSINESS** |
|---|

FORM OF BUSINESS:

☐ INDIVIDUAL          ☐ PARTNERSHIP          ☐ JOINT VENTURE          ☐ TRUST

☐ LIMITED LIABILITY COMPANY          ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

BUSINESS DESCRIPTION:  MUNICIPALITY

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Safety National Casualty Corporation

# CMBOE EXHIBIT A  004

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO  63146
(888) 995-5300

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

| | |
|---|---|
| Policy Number: | GLE4058956 |
| Named Insured: | CHARLOTTE-MECKLENBURG BOARD OF EDUCATION |
| Agent: | USI INSURANCE SERVICES NATIONAL, INC. |
| Effective Date: | 07/01/2018 |

## ALL PREMISES YOU OWN, RENT OR OCCUPY

| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| Schedule on File with Company | See Schedule on File with Company |

## CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| Schedule on file with Company | Schools – public – elementary, kindergarten or junior high | 47471 | Per Student | | | $88,925 | Included |

TOTAL PREMIUM (SUBJECT TO AUDIT)     $ 88,925

STATE SURCHARGES (if applicable)     _____

TOTAL DUE AT INCEPTION:     $ 88,925

AT EACH ANNIVERSARY     _____

(IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS)

| AUDIT PERIOD (IF APPLICABLE) | ☐ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

## ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

See Attached Schedule of Forms and Endorsements

_____

_____

_____

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Safety National Casualty Corporation

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| GLE4058956 | 07/01/2018 | 07/01/2019 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

| Form Number | Form Title |
|---|---|
| PN 99 02 0209 | Privacy Statement |
| CP 99 03 03 14 | Commercial Policy Cover |
| CG 10 01 11 09 | Commercial General Liability Declarations |
| IL 10 06 12 08 | Schedule Of Forms And Endorsements |
| IL N 001 09 03 | Fraud Statement |
| IL P 001 01 04 | U.S. Treasury Dept's Office Of Foreign Assets Control |
| SNGL 004 1111 | Amended Definition Of Bodily Injury |
| SNGL 044 0514 | Asbestos Exclusion |
| CG 21 70 01 15 | Cap On Losses from Certified Acts of Terrorism |
| SNGL 012 1209 | Co-Employee Exclusion Deleted |
| CG 22 71 04 13 | Colleges Or Schools (Limited Form) |
| IL 10 05 12 08 | Common Policy Change Endorsement |
| CG 22 67 10 93 | Corporal Punishment |
| SNGL 053 0514 | Deletion Of Premium Audit Condition |
| SNGL 022 1111 | Designated Additional Insured |
| IL 09 85 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| SNGL 002 0908 | ERISA Exclusion |
| CG 02 24 10 93 | Earlier Notice Of Cancellation Provided By Us |
| SNGL 054 0514 | Employee Benefits Liability Coverage With Self-Insured |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 07 05 14 | Exclusion - Access or Disclosure of Confidential or Per |
| CG 21 35 10 01 | Exclusion - Coverage C - Medical Payments |
| CG 22 50 04 13 | Exclusion - Failure To Supply |
| CG 22 56 07 98 | Exclusion - Injury To Volunteer Firefighters |
| CG 21 67 12 04 | Fungi Or Bacteria Exclusion |
| CG 24 09 07 98 | Governmental Subdivisions |
| SNGL 020 1111 | Knowledge Of Occurrence |
| SNGL 043 0514 | Lead Contamination Exclusion |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion End (Broad Form) |
| SNGL 024 1111 | Self-Insured Retention Endorsement |
| CG 21 96 03 05 | Silica Or Silica-Related Dust Exclusion |
| CG 21 55 09 99 | Total Pollution Exclusion With A Hostile Fire Exception |
| SNGL 038 1111 | Unintended Failure To Provide Notice Of Occurrence |
| SNGL 021 1111 | Unintentional Failure To Disclose Hazards Or Occurrence |
| IL 02 69 09 08 | North Carolina Changes - Cancellation And Nonrenewal |

**IL 10 06 12 08**

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| GLE4058956 | 07/01/2018 | 07/01/2019 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

IL 00 17 11 98        Common Policy Conditions
CG 00 01 04 13        Commercial General Liability Coverage Form

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# CMBOE EXHIBIT A  009
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDED DEFINITION OF BODILY INJURY

This endorsement modifies insurance provided under the following:

        COMMERCIAL GENERAL LIABILITY COVERAGE FORM
        PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
        LIQUOR LIABILITY COVERAGE FORM
        OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
        RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
        POLLUTION LIABILITY COVERAGE FORM

## CHANGE

Under **SECTION V – DEFINITIONS** and **SECTION VI – DEFINITIONS** for POLLUTION LIABILITY COVERAGE FORM, the definition of "Bodily injury" is amended to include the following:

    "Bodily injury" shall also mean mental anguish, shock, humiliation or emotional distress sustained by a person in conjunction with a covered "occurrence" or offense when accompanied by physical injury, sickness or disease.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018       Policy No. GLE4058956       Endorsement No.

Named Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION       Premium $ Included

Insurance Company Safety National Casualty Corporation

                        Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**CHANGE**

This insurance does not apply to "bodily injury" or "property damage" arising out of:

(1)  The inhalation, ingestion or prolonged physical exposure to asbestos or goods or products containing asbestos;

(2)  The use of asbestos in constructing or manufacturing any goods, products or structure;

(3)  The removal of asbestos from any goods, products or structure;

(4)  The manufacture, sale, transportation, storage or disposal of asbestos, or goods or products containing asbestos; or

(5)  Payment for the investigation or defense of any claim or "suit" or any loss, cost, expense, fine or penalty related to the above exclusions.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  07/01/2018          Policy No. GLE4058956          Endorsement No.

Named Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION          Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

SNGL 044 0514          Safety National Casualty Corporation          **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

 © Insurance Services Office, Inc., 2015

# CO-EMPLOYEE EXCLUSION DELETED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

## CHANGES

**Section II - Who is an Insured, 2. a. (1) (a)** is amended to read:

(a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to your other "volunteer workers" while performing duties related to the conduct of your business;

**Section II - Who is an Insured, 2. a. (1) (b)** is amended to read:

(b)  To the spouse, child, parent, brother or sister of that "volunteer worker" as a consequence of Paragraph (1)(a) above;

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  07/01/2018          Policy No. GLE4058956          Endorsement No.

Named Insured  CHARLOTTE-MECKLENBURG BOARD OF EDUCATION          Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

**COMMERCIAL GENERAL LIABILITY**
**CG 22 71 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COLLEGES OR SCHOOLS (LIMITED FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to the operation of any college or school by you or on your behalf, the following provisions apply:

**A.** With respect to the transportation of students, Exclusion **g.** of Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading or unloading" or entrustment to others of any aircraft, "auto" or watercraft that is owned, operated or hired by any insured. For the purpose of this exclusion, the word hired includes any contract to furnish transportation of your students to and from schools.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned, operated or hired by any insured.

**B.** The following exclusions are added to **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** If the college or school owns or operates an infirmary with facilities for lodging and treatment or a public clinic or hospital, this insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" caused by:

**a.** The rendering of or failure to render:

**(1)** Medical, surgical, dental, X-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

**(2)** Any health or therapeutic service, treatment, advice or instruction; or

**(3)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

**b.** The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

**c.** The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **a., b.** or **c.**

**2.** This insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition if there is no direct management, organization or supervision of such sports or athletic contest or exhibition by any insured.

**C.** The following exclusion is added to **Section I – Coverage C – Medical Payments:**

We will not pay expenses for "bodily injury" to your student.

**D. Section II – Who Is An Insured** is amended to include as an insured any of the following but only with respect to their duties in connection with the positions described below:

**1.** Any of your trustees or members of your Board of Governors if you are a private charitable or educational institution;

**2.** Any of your board members or commissioners if you are a public board or commission; or

**3.** Any student teachers teaching as part of their educational requirements.

# CMBOE EXHIBIT A 014
# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| GLE4058956 | 07/01/2018 |
| **Endorsement Number** | |
| | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### SEXUAL ABUSE AND/OR MOLESTATION COVERAGE ENDORSEMENT

**A.** The following is added to

- Paragraph **1. Insuring Agreement** of SECTION I–COVERAGES, COVERAGE A–BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and,

- Paragraph **1. Insuring Agreement** of SECTION I–COVERAGES, COVERAGE B–PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance applies to, and we will pay, those sums the insured becomes legally obligated to pay as damages for "bodily injury" or "personal and advertising injury" arising out of an "occurrence" of "sexual abuse and/or molestation" caused by the negligent:

    a. Employment;
    b. Investigation;
    c. Supervision;
    d. Reporting to the proper authorities, or failure to so report; or
    e. Retention;

of an "employee", "temporary worker" or "volunteer worker" whose conduct is not otherwise excluded or any other person for whom you are legally liable.

**B.** The following new exclusions are added to

- Paragraph **2., Exclusions** of SECTION I–COVERAGES, COVERAGE A–BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and,

- Paragraph **2., Exclusions** of SECTION I–COVERAGES, COVERAGE B–PERSONAL AND ADVERTISING INJURY LIABILITY:

IL 10 05 12 08          **Page 1 of 2**

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| GLE4058956 | 07/01/2018 |
| | 12:01 A.M. Standard Time at the described location |

## CHANGE DESCRIPTION

This insurance does not apply to "bodily injury" or "personal and advertising injury" to any person who committed; attempted to commit; participated in; directed; knowingly allowed; or failed to take action to prevent reoccurrence after having knowledge of, any act of "sexual abuse and/or molestation".

We may defend any insured in connection with a claim or "suit" involving such conduct until either our investigation or an adjudication establishes that that accusation of such conduct is correct.

**C.** The respect to only the coverage provided by this endorsement, the definition of "Occurrence" in **SECTION V - DEFINITIONS**, is replaced with the following:

**13.** "Occurrence" means:

    **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or,

    **b.** An incident of "sexual abuse and/or molestation" or multiple incidents of "sexual abuse and/or molestation" caused by the same person and/or people. Multiple incidents of "sexual abuse and/or molestation" taking place over multiple policy periods shall constitute one "occurrence" and shall be deemed to occur at the time of the first incident of "sexual abuse and/or molestation". If no coverage for "sexual abuse and/or molestation" is in place at the time of the first incident of "sexual abuse and/or molestation", no coverage shall be provided for subsequent incidents.

**D.** The following new definition is added to **SECTION V – DEFINITIONS**:

**23.** "Sexual abuse and/or molestation" means: sexual assault, sexual abuse, molestation, sexual exploitation, sexual misconduct, sexual injury, and illicit conduct or a sexual nature whether or not involving physical contact, regardless of whether or not caused by, or at, the direction of, or negligence of, you, any insured, any person or any cause whatsoever.

All other terms and conditions of your policy apply to the extent they do not conflict with the terms of this Endorsement.

GLM 007-2 0518

# CMBOE EXHIBIT A 016
# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| GLE4058956 | 07/01/2018 |
| **Endorsement Number** | |
| | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### WHO IS AN INSURED – EMERGENCY FIRST AID & EMPLOYED EMT/PARAMED COVERAGE

**Item 2.a.(1)(d)** of **Section II- Who Is An Insured** is deleted in its entirety and replaced by the following:

(d) Arising out of his or her providing or failing to provide professional health care services. The following activities shall not be considered professional health care services and thus shall not be excluded by this item 2.a.:

  a. The rendering or failing to render of emergency first aid treatment by your non-medical employees when such services are outside the normal scope of duties such person performs for you and when rendered by such person due to the unavailability of other appropriate professional medical or paramedical practitioners at the time of the emergency;

  b. With the exception of health care operations otherwise specifically excluded by endorsement, the rendering or failing to render of emergency first aid treatment by your medical personnel when such services are outside the normal scope of duties such person performs for you and when rendered by such person due to the unavailability of other appropriate professional medical or paramedical practitioners at the time of the emergency.

  c. The rendering or failing to render of emergency medical treatment by your employed Paramedical or Emergency Medical Technicians (EMTs) when acting in the scope of their employment for you.

GLM 118 0218

# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| GLE4058956 | 07/01/2018 |
| **Endorsement Number** | |
| | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

## DESIGNATED ENTITY EXCLUSION

**SECTION III – WHO IS AN INSURED,** is amended by adding the following:

4. Notwithstanding the foregoing, neither **The Charlotte Area Transit System (CATS)** nor **The Charlotte Douglass International Airport (CDA),** nor any of their directors, officers, committee, council or board members, managers, employees or volunteer workers, shall be considered an Insured. Accordingly, this insurance does not apply to liability for "bodily injury", "property damage" or "personal and advertising injury", medical benefits or supplementary payments arising from or in any way connected to such organizations. Additionally, the coverage provided by this policy shall not be considered primary nor excess over any policies providing coverage for such organizations.

GLM 119-2 0718

# CMBOE EXHIBIT A 018
# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| GLE4058956 | 07/01/2018 |
| **Endorsement Number** | |
| | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### PRESERVATION OF GOVERNMENTAL IMMUNITY – NORTH CAROLINA

This policy only applies to the extent that immunity from liability is not otherwise provided under North Carolina law.

Your purchase of this insurance does not constitute a waiver on behalf of any insured, of the sovereign or governmental immunity provided under N.C.G.S.A. Sect. 160A-485, N.C.G.S.A. Sect. 160A-485.5, N.C.G.S.A. Section 153A-435, N.C.G.S.A. 115C-42, or N.C.G.S.A.115D-24, or any amendments thereto.

GLM 024 0917

**COMMERCIAL GENERAL LIABILITY**
**CG 22 67 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CORPORAL PUNISHMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **a.** of paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is replaced by the following:

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" resulting from:

**(1)** The use of reasonable force to protect persons or property; or

**(2)** Corporal punishment to your student administered by or at the direction of any insured.

Copyright, Insurance Services Office, Inc., 1992

Case 3:22-cv-00045-RJC-DCK   Document 31   Filed 03/07/22   Page 23 of 155

# CMBOE EXHIBIT A  020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DELETION OF PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE FORM
      LIQUOR LIABILITY COVERAGE FORM
      POLLUTION LIABILTY COVERAGE FORM
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**CHANGE**

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

    **5.**     **Premium Audit, b.** is deleted in its entirety and is not applicable to this policy.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  07/01/2018      Policy No. GLE4058956      Endorsement No.

Named Insured  CHARLOTTE-MECKLENBURG BOARD OF EDUCATION      Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

# DESIGNATED ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| |
|---|
| Name of Additional Insured Person(s) or Organization(s): |
| Person(s) or Organization(s) as required by written contract.<br><br>Any individually scheduled Designated Additional Insured shall not be construed to override nor negate this blanket Designated Additional Insured. |
| Designated Project, Location, or Work of Covered Operations: |
| As per written contract or agreement with the above described person(s) or organization(s). |

## CHANGE

**SECTION II - WHO IS AN INSURED** is amended to include:

**4.** The person(s) or organization(s) shown in the Schedule above with whom you have agreed in a written contract to provide insurance such as is afforded under this Coverage Form, is included as an Additional Insured subject to the below:

    **a.** Insurance for such Additional Insured(s) scheduled above shall be afforded only to the extent that such Additional Insured is liable for "bodily injury", "property damage" or "personal and advertising injury" caused by your acts or omissions while actively engaged in the performance of your ongoing operations involving the project(s), locations(s), or work designated in the Schedule and as specified in the contract between you and the above scheduled Additional Insured(s).

    **b.** The insurance afforded under this Coverage Form to such Additional Insured(s) applies only:

        **(1)** If the "occurrence" or offense takes place subsequent to the execution and effective date of such written contract: and,

        **(2)** While such written contract is in force, or until the end of the policy period, which ever occurs first.

    **c.** **How Limits Apply to Additional Insured(s)**
    The most we will pay on behalf of the Additional Insured(s) scheduled above is the lesser of:

        **(1)** The limits of insurance specified in the written contract or written agreement; or,
        **(2)** The Limits of Insurance provided by the Coverage Form.

    The amount we will pay on behalf of such Additional Insured(s) shall be a part of, and not in addition to, the Limits of Insurance shown in the Coverage Form Declarations and described in this section. Such amount will thus not increase the Limits of Insurance shown for the Coverage Form.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

   **d.  Obligations at the Additional Insured's Own Cost**

      No Additional Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

The Additional Insured(s) scheduled above shall be subject to all other conditions set forth in the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018      Policy No. GLE4058956      Endorsement No.

Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION      Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

# CMBOE EXHIBIT A  023

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| | |
|---|---|
| **SCHEDULE – PART I** | |
| **Terrorism Premium (Certified Acts)** | $ 354 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** | |
| **Additional information, if any, concerning the terrorism premium:** | |
| **SCHEDULE – PART II** | |
| **Federal share of terrorism losses** _____ **% Year: 20** _____ | |
| (Refer to Paragraph **B.** in this endorsement.) | |
| **Federal share of terrorism losses** _____ **% Year: 20** _____ | |
| (Refer to Paragraph **B.** in this endorsement.) | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

 © Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

   © Insurance Services Office, Inc., 2015   **IL 09 85 01 15**

# CMBOE EXHIBIT A  025
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# ERISA EXCLUSION

This endorsement modifies insurance provided under the following Coverage Part:

    COMMERCIAL GENERAL LIABILITY

## CHANGES

This policy shall not apply to claims for which the insured is liable because of liability imposed by the Employment Retirement Income Security Act of 1974 (ERISA), including subsequent amendments, or any similar federal, state or local law or regulation.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018          Policy No. GLE4058956          Endorsement No.

Named Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION          Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

SNGL 002 0908                    Safety National Casualty Corporation                    Page 1 of 1

POLICY NUMBER: GLE4058956

COMMERCIAL GENERAL LIABILITY
CG 02 24 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Number of Days' Notice** 90 days except 10 days' notice for non-payment of premium where allowed by state law.

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE
# WITH SELF-INSURED RETENTION ("SIR")

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Each Employee SIR | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $ 2,000,000 | **each employee** | $ 1,000,000 | $ Included |
| | $ 4,000,000 | **aggregate** | | |
| **Retroactive Date:** | 05/01/1990 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

   **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

   **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

   **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

   **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

SNGL 054 0514    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 6**
Safety National Casualty Corporation
Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 31 of 155

(2) When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Em-ployee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**Page 2 of 6**
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Safety National Casualty Corporation
**SNGL 054 0514**
Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 32 of 155

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Self-Insured Retention ("SIR")**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the SIR amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this SIR.

**b.** The SIR amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the SIR amount.

**d.** We may pay any part or all of the SIR amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the SIR amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

SNGL 054 0514

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Safety National Casualty Corporation

Page 3 of 6

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 33 of 155

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected un-less any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each in-surer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Safety National Casualty Corporation

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

    **a.** This endorsement is canceled or not renewed; or

    **b.** We renew or replace this endorsement with insurance that:

        **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

        **(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **a.** The "employee benefit programs" insured;

    **b.** Previous types and amounts of insurance;

    **c.** Limits of insurance available under this endorsement for future payment of damages; and

    **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

    **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    **b.** Handling records in connection with the "employee benefit program"; or

    **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**SNGL 054 0514**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 5 of 6**

Safety National Casualty Corporation

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 35 of 155

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

       a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

       b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Safety National Casualty Corporation

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 07 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

Case 3:22-cv-00045-RJC-DCK  Document 31  Filed 02/07/22  Page 38 of 155

POLICY NUMBER: GLE4058956

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| **Description And Location Of Premises Or Classification:** |
| --- |
| All locations unless required by written contract or lease, executed prior to loss, to provide coverage for Coverage C – Medical Payments.<br><br>Individually scheduled persons or entities shall not be construed to override nor negate this blanket exclusion. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

**1.** Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

**2.** The following is added to Section **I** – Supplementary Payments:

**h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

COMMERCIAL GENERAL LIABILITY
CG 22 50 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – FAILURE TO SUPPLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity, steam or biofuel.

This exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity, steam or biofuel.

**COMMERCIAL GENERAL LIABILITY**
**CG 22 56 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – INJURY TO VOLUNTEER FIREFIGHTERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to any volunteer firefighters whether or not they are members of your organization, while in the course of their duties as such.

Copyright, Insurance Services Office, Inc., 1997
Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 41 of 155

**COMMERCIAL GENERAL LIABILITY**
**CG 21 67 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CMBOE EXHIBIT A  039

COMMERCIAL GENERAL LIABILITY
CG 24 09 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GOVERNMENTAL SUBDIVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an insured any elective or appointive officer or a member of any board or commission or agency of yours while acting within the scope of their duties as such.

**B.** Paragraph **b.** of the definition of "mobile equipment" in the **Definitions** Section is replaced by the following:

   **12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **b.** Vehicles maintained for use solely on or next to premises you own or rent. However, any land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus that is attached) owned or leased by you shall be deemed an "auto" and not "mobile equipment" if the only reason for considering it "mobile equipment" is that it is maintained for use exclusively on streets or highways owned by you.

CG 24 09 07 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/03/22   Page 43 of 155

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## CHANGE

The following is added to the **Duties In the Event of Occurrence, Offense, Injury, Pollution Incident, Claim or Suit** under the **CONDITIONS** section of the above-listed coverage forms:

It is agreed that knowledge of an "occurrence", offense, injury, pollution incident, claim or "suit" by your agent, servant or "employee" will not in itself be considered to be your knowledge of the "occurrence", offense, claim, or "suit" unless the individual(s) in the following position(s) or department(s) shall have received such notice from the agent, servant or "employee":

```
Knowledge by any person in the Risk Management Department, Human
Resources Department, Law Department or a Corporate Executive that
is responsible for receiving or acting on such information.
```

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018          Policy No. GLE4058956          Endorsement No.

Named Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION          Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

SNGL 020 1111                    Safety National Casualty Corporation                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Description of Premises, Work or Operations

All your premises, work and operations.

This endorsement applies only with respect to the premises, work or operations listed in the Schedule above.  If no entry appears in the Schedule, this endorsement applies with respect to all premises, work and operations.

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising out of the actual or alleged or suspected:
   a. Ingestion, inhalation, absorption or prolonged physical exposure or threat of exposure to lead in any form, or goods or products containing any form of lead;
   b. Use of any form of lead in constructing or manufacturing any good, product or structure;
   c. Removal of any form of lead from any good, product or structure; or
   d. Manufacture, sale, transportation, storage or disposal of lead or goods or products containing any form of lead;

2. Any loss, cost or expense arising out of any request, demand or order that any insured or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to, or assess the effects of lead; or repair, replace or improve any property as a result of such effects; or

3. Any loss, cost or expense arising our of any claim or "suit" by or on behalf of a governmental authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating or in any way responding to, or assessing the effects of lead; or repairing, replacing or improving any property as a result of such effects.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  07/01/2018          Policy No.  GLE4058956          Endorsement No.

Named Insured  CHARLOTTE-MECKLENBURG BOARD OF EDUCATION          Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur in the mailing states that require countersignature)

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 45 of 155

# CMBOE EXHIBIT A  042

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

IL 00 21 09 08 © ISO Properties, Inc., 2007 Page 1 of 2

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| | | | |
|---|---|---|---|
| Self-Insured Retention | $ | 1,000,000 | Per "Occurrence" |
| Self-Insured Retention | $ | N/A | Per "Claim" |
| Aggregate Self-Insured Retention Amount (if applicable) | $ | N/A | |

## CHANGE

**I.** The Coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY, MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to apply the additional provisions noted below.

    **A. SELF-INSURED RETENTION**

Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention.  Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form.  The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

    **1. SELF-INSURED RETENTION PER OCCURRENCE**

If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

# CMBOE EXHIBIT A  045
## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Occurrence amount is the most you will pay for Self-Insured Retention amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or claim.

**2.  SELF-INSURED RETENTION PER CLAIM**

If a Per Claim Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each claim until you have paid the Self-Insured Retention amount and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Claim amount is the most you will pay for Self-Insured Retention amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

**3.  AGGREGATE SELF-INSURED RETENTION AMOUNT**

The Aggregate Self-Insured Retention Amount only applies if an Aggregate Self-Insured Retention Amount is shown in the above Schedule.  If an Aggregate Self-Insured Retention Amount is shown in the Schedule, that amount is the most you will pay for all Self-Insured Retention amounts and "defense costs" incurred under this policy.  The Aggregate Self-Insured Retention Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

**B.  LIMIT OF INSURANCE**

The applicable **LIMIT OF INSURANCE** provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule.

**C.  OUR RIGHT TO REIMBURSEMENT**

With respect to any claim or "suit" under this policy that has been tendered to us and that may exceed the applicable Self-Insured Retention amount, we may pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit".
If we do so, you must promptly reimburse us for our payment.

**II.  CHANGES IN THE CONDITIONS SECTION OF EACH OF THE ABOVE-LISTED COVERAGE FORMS**

**A.** The following is added to the **BANKRUPTCY** Condition:

Satisfaction of the Self-Insured Retention amounts by you is a condition precedent to our liability for amounts in excess of the Self-Insured Retention regardless of insolvency or bankruptcy or inability to pay by you.  Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay by the "insured" or the "insured's" estate will not operate to:

1.  Deplete or reduce the Self-Insured Retention;
2.  Increase our liability under this policy; or
3.  Relieve us of our obligations under this policy.

In no event will we assume responsibility or obligations of the "insured".

B.  The following is added to the **DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE, INJURY, POLLUTION INCIDENT, CLAIM OR SUIT**(as applicable to the above-listed Coverage Form) Condition:

The "insured" must promptly give our authorized representative and our Claims Department a complete report of the existence of any claim or "suit" involving the following factors or probabilities:

1.  If the "ultimate net loss" for a claim or "suit" or multiple claims or "suits" arising out of any one "occurrence" or offense may, or is likely to, exceed 50% of the Self-Insured Retention; or

2.  If an "occurrence", offense, claim or "suit" involves:

    a.  Death;
    b.  Brain or spinal injury;
    c.  Amputation;
    d.  Loss of use of an arm, eye or leg;
    e.  Severe burns involving more than 25% of the body;
    f.  Multiple fractures;
    g.  Permanent and total disability;
    h.  Sexual abuse or molestation;
    i.  Significant psychological or neurological involvement;
    j.  Severe internal body organ damage or loss;
    k.  Severe cosmetic deformity or disfigurement;
    l.  A hospital stay of two weeks or longer;
    m.  An alleged error or omission of the "insured", the "insured's" claims service organization, or us or a claim for punitive damages against any of them; or
    n.  An actual or potential conflict of interest between the "insured" and us, or between the "insured's" claims service organization and us.

C.  The following is added to the **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition:

If the "insured" had rights to recover all or part of any payment we have made in excess of the Self-Insured Retention, those rights are transferred to us.  The "insured" must do nothing after loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.  Any amounts recovered will first be applied to reimburse us to the extent of our actual payment.

D.  **DEFENSE & SETTLEMENT** shall be added as follows:

1.  You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so.  If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2.  We will have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention.  If we avail ourselves of that right, you must cooperate with us.  In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit", you shall not be liable to reimburse us for those "defense costs".

3.  We may investigate and settle any claim or "suit" as we consider appropriate both within and in excess of the applicable Self-Insured Retention but we shall obtain your consent prior to entering into any settlement of a claim or "suit" that is equal to or less than the Self-Insured Retention amount.  If, however, you do not consent to any settlement within the Self-Insured Retention amount that is recommended by us and instead elect to contest the claim or continue with any legal proceedings involving the claim, our liability for the claim shall not exceed the amount determined by subtracting the Self-Insured Retention amount from the amount for which we recommended settlement, including "defense costs" incurred with our consent, to the date of such refusal.  Further we shall have no liability with respect to such claim if the result of the above calculation is zero or negative.  We will not continue to defend or settle any claim or "suit" after the Limit of Insurance of the applicable coverage has been exhausted by payments of judgments or settlements.

**E.   CLAIMS ADMINISTRATION** shall be added as follows:

You agree to maintain a continuous contract, with an independent claims service administrator approved for use by us, at your expense without reimbursement from us, and that such claims service administrator will report to us on a monthly basis all claims activity, including identity of claimants and the date, type, estimated payments, description and disposition of all claims.

**F.   SELF-INSURED RETENTION REPORTING** shall be added as follows:

You or the authorized claim service administrator must monitor the cumulative Self-Insured Retention amounts and "defense costs" incurred during the policy period and report those total amounts to us on a quarterly basis.  However, regardless of the quarterly reporting requirements, if the total of all incurred losses and "defense costs" should, at any time during the policy period, attain a total amount equal to 75% of the Aggregate Retention amount, you are required to make an immediate report to us of the total incurred losses and "defense costs" sustained at that time.

The required quarterly report must be in a format acceptable to us and shall include a listing of all individual losses and "defense costs" incurred as of the date of the report.

Within forty-five (45) days after the end of the policy term, you must give a listing of all existing claims or "suits" within the Self-Insured Retention amounts. Such listing shall include a description of each claim, "occurrence" or offense; date of the "occurrence" or offense; and the current status of the claim or "suit". Thereafter and on a quarterly basis, you shall provide an updated status of all claims or suits, paid and reserved, until all claims or "suits" are closed and settled.

Compliance with the reporting requirements set forth above, is a condition precedent to coverage.  In the event of non-compliance, we shall not be required to establish prejudice resulting from reporting noncompliance and shall be automatically relieved of liability with respect to the claim.

**G.  MIDTERM CANCELLATION** shall be added as follows:

If an Aggregate Self-Insured Retention Amount is shown in the above Schedule, in the event of a midterm cancellation, the Aggregate Self-Insured Retention Amount shall not be subject to any pro rata reduction.  Such Aggregate Self-Insured Retention Amount will apply as if the policy term had not been shortened.

**H.  GOOD FAITH** shall be added as follows:

You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**I.   HOLD HARMLESS AGREEMENT** shall be added as follows:

The "insured" will hold us harmless and indemnify us for any and all damages or attorney fees or other costs or expenses which are imposed upon us because of the acts or omissions of the "insured" or of the "insured's" employees, agents or independent contractors in the course of the investigation, settlement or defense of any claim or "suit" to which this insurance applies.

**J.   REPRESENTATIONS** shall be added as follows:

You agree that the procurement of insurance for all or any part of the Self-Insured Retention amounts shown in the above Schedule will cause there to be no coverage under this policy.

**K.   DISPUTE RESOLUTION** shall be added as follows:

If we and the "insured" do not agree whether coverage is provided under this policy or this Endorsement, or do not agree concerning the timing or amount of settlement of a claim or "suit", then either party may submit the matter to a court of competent jurisdiction or may make a written demand for arbitration. Where required by state law, the "insured" shall have the option of instead submitting the matter to a court of competent jurisdiction.    We have the absolute right to determine when a claim or "suit" should be settled and may proceed to settle the claim or "suit" if the "insured" refuses to do so upon our demand, or if the "insured" refuses to contribute the amount of the Self-Insured Retention.

When a matter is submitted for arbitration, we and the "insured" may agree to use one arbitrator.  If the parties fail to agree on one arbitrator, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, each will name two arbitrators of which the other party will decline one, and the final selection will be made by drawing lots.  If either party fails to appoint an arbitrator within 30 days of receiving written notice, delivered by certified mail, requesting it to do so, the requesting party will name both arbitrators.  Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding unless state laws do not allow for binding arbitration without the consent of the "insured" in which case the decision will be binding unless, upon commencement of the arbitration, the "insured" has made written demand for non-binding arbitration.  A decision rendered in a non-binding arbitration shall not preclude either party from submitting the matter to a court of competent jurisdiction following the rendering of such decision. Unless a non-binding decision has been elected, upon our request or the request of the "insured", a judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction.

## III.  ADDITIONAL DEFINITIONS

The following are added to the **DEFINITIONS** Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1. All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2. All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018          Policy No. GLE4058956          Endorsement No.

Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION          Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

**COMMERCIAL GENERAL LIABILITY**
**CG 21 96 03 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

# CMBOE EXHIBIT A  051

**COMMERCIAL GENERAL LIABILITY**
**CG 21 55 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

# CMBOE EXHIBIT A  052
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

# UNINTENDED FAILURE TO PROVIDE
# NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE FORM
      PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM
      LIQUOR LIABILITY COVERAGE FORM
      OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
      RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
      POLLUTION LIABILITY COVERAGE FORM

## CHANGE

**Paragraph  2. Duties in the Event of Occurrence, Offense, Claim or Suit** of the **CONDITIONS** section of each of the above referenced forms, except OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM where **Paragraph 4. Duties in the Event of Occurrence, Offense, Claim or Suit** applies and RAILROAD PROTECTIVE LIABILITY COVERAGE FORM where **Paraprah B. 2. Duties in the Event of Occurrence, Offense, Claim or Suit** applies, is amended to add the following:

    **e.**    We will not deny coverage as the result of an unintentional failure (meaning no intent to conceal, misrepresent or defraud) by you to provide notice of an "occurrence", an offense that may result in a claim, a claim, or a "suit" as long as notice is given by you to us as soon as practicable after becoming aware that the coverage afforded by this Coverage Form may apply.

**Paragraph  2. Duties in the Event of Occurrence, Offense, Claim or Suit** of the **CONDITIONS** section of the PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM is amended to add the following:

    **c.**    We will not deny coverage as the result of an unintentional failure (meaning no intent to conceal, misrepresent or defraud) by you to provide notice of an "occurrence", an offense that may result in a claim, a claim, or a "suit" as long as notice is given by you to us as soon as practicable after becoming aware that the coverage afforded by this Coverage Form may apply.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018      Policy No. GLE4058956      Endorsement No.

Named Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION      Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

# CMBOE EXHIBIT A  053

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS OR OCCURRENCES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

**CHANGE**

**Paragraph 6.  Representations** of the **CONDITIONS** section of each of the above-listed coverage forms is amended to add the following:

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards or prior "occurrences" is not intentional, meaning there is, or was, no intent to conceal, misrepresent or defraud.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2018    Policy No. GLE4058956    Endorsement No.

Named Insured CHARLOTTE-MECKLENBURG BOARD OF EDUCATION    Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

IL 02 69 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Requirements**

**a. Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Policies In Effect More Than 60 Days**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** Expiration of the policy term; or

**(2)** Anniversary date,

stated in the policy only for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(e)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

© ISO Properties, Inc., 2007

Case 3:22-cv-00045-RJC-DCK   Document 31-1   Filed 02/07/22   Page 58 of 155

**(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

**(h)** Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

**(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(1)** Expiration of the policy if this policy has been written for one year or less; or

**(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**b.** We need not mail or deliver the notice of nonrenewal if you have:

**(1)** Insured property covered under this policy, under any other insurance policy;

**(2)** Accepted replacement coverage; or

**(3)** Requested or agreed to nonrenewal of this policy.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** The written notice of cancellation or nonrenewal will:

**a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

**b.** State the reason or reasons for cancellation or nonrenewal.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Case 3:22-cv-00045-BJC-DCK Document 3-1 Filed 02/07/22 Page 60 of 155

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

  **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

  **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012
Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 64 of 155

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by;

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A;** and

  **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 74 of 155 © Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 76 of 155

## SAFETY NATIONAL CASUALTY CORPORATION

### PRIVACY STATEMENT

### Our Commitment To Our Customers

Safety National Casualty Corporation ("Safety National") is proud to have provided quality products and services to its customers for over 50 years. We greatly appreciate the trust that you and all of our customers place in us. We protect that trust by respecting the privacy of all of our customers, both present and past. The following will explain our privacy practices so that you will understand our commitment to your privacy.

### We Respect Your Privacy

When you apply to Safety National for any type of insurance, you disclose information about you to us. The collection, use and disclosure of such information is regulated by law. Safety National and its affiliates maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your personal information. Our employees are also advised of the importance of maintaining the confidentiality of your information.

### Types Of Information We Collect

Safety National obtains most of our information directly from you, your agent or broker. The application you complete, as well as any additional information you provide, generally gives us most of the details we need to know. Depending on the nature of your insurance transaction, we may need further details about you.

We may obtain information from third parties, such as other insurance or reinsurance companies, medical providers, government agencies, information clearinghouses and other public records. We may also obtain information about you from your other transactions with us, our affiliates or others.

### What We Do With Your Information

Information that has been collected about you will be retained in our files. We will review your information in evaluating your request for insurance coverage, determining your rates or underwriting risk, servicing your policy or adjusting claims. We may retain information about our former customers and would disclose that information only to affiliates and to non-affiliates as described in this notice or as otherwise permitted by law.

### To Whom Do We Disclose Your Information

We will not disclose any non-public, personal information about our customers or former customers, except as permitted by law. That means we may disclose information we have collected about you to the following types of third parties:

- Our affiliated companies (Members and subsidiaries of the Tokio Marine Holdings, Inc. group of companies).

- Your agent or broker.

- Parties who perform a business or insurance function for Safety National, including reinsurance, underwriting, claims administration or adjusting, investigation, loss control and computer systems companies.

- Other insurance companies or agents as reasonably necessary concerning your application, policy or claim.

- Insurance regulatory or statistical reporting agencies.

- Law enforcement or governmental authorities in connection with suspected fraud or illegal activities.

- Authorized persons as ordered by subpoena, warrant or court order, or as required by law.

We do not disclose any non-public, personal information about you to non-affiliated companies for marketing purposes or for any other purpose except those specifically allowed by law and described above.

### Independent Sales Agents or Brokers

Your policy may have been placed with us through an independent agent or broker ("Sales Agent"). Your Sales Agent may have gathered information about you. The use and protection of information obtained by your Sales Agent is their responsibility, not Safety National's. If you have questions about how your Sales Agent uses or discloses your information, please contact them directly.

PN 99 02 0209

SAFETY NATIONAL CASUALTY CORPORATION
1832 Schuetz Road
St. Louis, MO 63146
(888) 995-5300

A STOCK COMPANY

# COMMERCIAL POLICY

_____
SECRETARY

_____
PRESIDENT

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM AND
ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

CP 99 03 03 14

POLICY NUMBER: XPE4058961

**COMMERCIAL EXCESS LIABILITY**
**CX 10 01 12 12**

# COMMERCIAL EXCESS LIABILITY DECLARATION

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

**COMMERCIAL EXCESS LIABILITY**
**COVERAGE FORM DECLARATIONS**

| Policy Number | Policy Period | |
| --- | --- | --- |
| | **From** | **To** |
| XPE4058961 | 07/01/2018 | 07/01/2019 |
| | 12:01 A.M. Standard Time at the described location | |

**Previous Policy Number:**

| **Transaction** |
| --- |
| New Business |

| **Named Insured and Address** | **Agent** |
| --- | --- |
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | 61091<br>USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |
| Business Description MUNICIPALITY | Type of Business CITY GOVERNMENT |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Excess Policy – Limits Of Insurance | |
| --- | --- |
| **Each Occurrence Limit** | $ 3,000,000 |
| **Aggregate Limit** | $ 3,000,000 |
| **Other:** | $ |

| Excess Policy – Premium | |
| --- | --- |
| **Premium (including premium subject to audit)** | $ 55,551 |
| **Premium Shown Is Payable:** | |
| **At Inception** | $ 55,551 |
| **At Each Anniversary** (If policy period is more than one year and premium is paid in annual installments.) | $ |

| Audit Period<br>(If Applicable) | ☐ **Annually** | ☐ **Semiannually** | ☐ **Quarterly** | ☐ **Monthly** |
| --- | --- | --- | --- | --- |

Case 3:22-cv-00045-RJC-DCK   Document 31-1   Filed 12/07/22   Page 79 of 155

POLICY NUMBER: XPE4058961

**COMMERCIAL EXCESS LIABILITY**
**CX 10 01 12 12**

| Endorsements Attached To The Excess Policy |
|---|
| See Schedule Of Forms And Endorsements |
| |

| Schedule Of Controlling Underlying Insurance | |
|---|---|
| **Commercial Auto Liability** | **Company:** Safety National Casualty Corporation |
| | **Policy Number:** CAE4058957 |
| | **Policy Period:** 07/01/2018 - 07/01/2019 |
| | **Limits Of Insurance:** |
| | **Garage Aggregate Limit For Other Than Autos (if applicable)**   $ |
| | **Each Accident**    $   2,000,000 |
| **Employer's Liability** | **Company:** Safety National Casualty Corporation |
| | **Policy Number:** SP 4058805 |
| | **Policy Period:** 07/01/2018 - 07/01/2019 |
| | **Limits Of Insurance:** |
| | **Bodily Injury By Accident Each Accident**   $ 2,000,000 |
| | **Bodily Injury By Disease Policy Limit**   $ 2,000,000 |
| | **Bodily Injury By Disease Each Employee**   $ 2,000,000 |

Includes with permission, copyrighted material of Insurance Services Office, Inc.  **CX 10 01 12 12**
Safety National Casualty Corporation

Case 3:22-cv-00045-RJC-DCK  Document 13-1  Filed 02/07/22  Page 80 of 155

POLICY NUMBER: XPE4058961

**COMMERCIAL EXCESS LIABILITY**
**CX 10 01 12 12**

| General Liability | | | |
|---|---|---|---|
| | **Type Of Coverage:** ☒ Occurrence ☐ Claims-made | | |
| | **Company:** Safety National Casualty Corporation | | |
| | **Policy Number:** GLE4058956 | | |
| | **Policy Period:** 07/01/2018 - 07/01/2019 | | |
| | **Limits Of Insurance:** | | |
| | **Each Occurrence** | $ 2,000,000 | |
| | **Personal And Advertising Injury** | $ 2,000,000 | Any one person or organization |
| | **Products-completed Operations Aggregate** | $ 4,000,000 | |
| | **General Aggregate** | $ 4,000,000 | |

| Other Coverages | | | |
|---|---|---|---|
| | **Type Of Coverage:** ☐ Occurrence ☒ Claims-made | | |
| | **Company:** Safety Specialty Insurance Company<br>Educators Legal Liability | | |
| | **Policy Number:** SED6675347 | | |
| | **Policy Period:** 07/01/2018 - 07/01/2019 | | |
| | **Limits Of Insurance:** | | |
| | | $ 2,000,000 | Per Occurrence |
| | | $ 2,000,000 | Policy Annual Aggregate |

**CX 10 01 12 12**     Includes with permission, copyrighted material of Insurance Services Office, Inc.     **Page 3 of 3**
Case 3:22-cv-00045-RJC-DCK  Document 3-1  Filed 02/07/22  Page 81 of 155
Safety National Casualty Corporation

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| XPE4058961 | 07/01/2018 | 07/01/2019 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

| Form Number | Form Title |
|---|---|
| PN 99 02 02 09 | Privacy Statement |
| CP 99 03 03 14 | Commercial Policy Cover |
| CX 10 01 12 12 | Commercial Excess Liability Declaration |
| IL 10 06 12 08 | Schedule Of Forms And Endorsements |
| IL N 001 09 03 | Fraud Statement |
| IL P 001 01 04 | U.S. Treasury Dept's Office Of Foreign Assets Control |
| CX 21 30 01 15 | Cap on Losses from Certified Acts of Terrorism |
| IL 10 05 12 08 | Common Policy Change Endorsement |
| IL 09 85 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| CX 21 01 09 08 | Nuclear Energy Liability Exclusion Endorsement (Broad F |
| CX 02 19 09 08 | North Carolina Changes - Cancellation and Nonrenewal |
| IL 00 17 11 98 | Common Policy Conditions |
| CX 00 01 04 13 | Commercial Excess Liability Coverage Form |

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

 © ISO Properties, Inc., 2003

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**COMMERCIAL EXCESS LIABILITY**
**CX 21 30 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

**A.** Any endorsement addressing acts of terrorism (however defined) in any "controlling underlying insurance" does not apply to this excess insurance. The following provisions addressing acts of terrorism apply with respect to this excess insurance:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for "injury or damage" that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| XPE4058961 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

## EXCLUSION – FAILURE TO SUPPLY

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity or steam.

XLM 001 0817

**IL 10 05 12 08**

**Page 1 of 1**

# CMBOE EXHIBIT A  083
# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| XPE4058961 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

## EARLIER NOTICE OF CANCELLATION PROVIDED BY US

## SCHEDULE

| Number of Days' Notice: |
|---|
| 90 days |

**Paragraph b.(2)** of **5. Cancellation** under **Section III-CONDITIONS,** or such other replacement provision set forth under any applicable state cancellation endorsement, is hereby revised to provide the above specified number of days' notice to be given by us for any statutorily permitted reason for cancellation other than nonpayment of premium.

If any replacement provision set forth under an applicable state cancellation endorsement provides for more than the above number of days' notice, this endorsement shall not apply.

XLM 003 0817

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 87 of 155

# CMBOE EXHIBIT A  084
# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| XPE4058961 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### <u>NAMED INSURED - EXCLUSION</u>

Throughout this policy the words "you", "your" or the Named Insured, shall not include **The Charlotte Area Transit System (CATS)** nor **The Charlotte Douglass International Airport (CDA).**  Accordingly this insurance does not apply to liability for "bodily injury" or property damage" arising from such organizations**.**  Additionally, the coverage provided by this policy shall not be considered primary nor excess over any policies providing coverage for such organizations.

XLM 009 0718

# CMBOE EXHIBIT A  085

POLICY NUMBER: XPE4058961

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)** $ 2,137 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses** _____ **% Year: 20** _____ (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** _____ **% Year: 20** _____ (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

 © Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT
### (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions:**

**2. Exclusions**

**NUCLEAR ENERGY LIABILITY**

**a.** Under any Liability Coverage, to "injury or damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under any Liability Coverage, to "injury or damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "injury or damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to property damage to such "nuclear facility" and any property thereat.

**c.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

© ISO Properties, Inc., 2007

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Injury or damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

**COMMERCIAL EXCESS LIABILITY**
**CX 02 19 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

**A.** Paragraph **5.b.** of the **Cancellation** Provisions of **Section III – Conditions** is replaced by the following:

**b. Cancellation Requirements**

**(1) Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(a)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(2) Policies In Effect More Than 60 Days**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(a)** Expiration of the policy term; or

**(b)** Anniversary date;

stated in the policy only for one or more of the following reasons:

**(i)** Nonpayment of premium;

**(ii)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(iii)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(iv)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(v)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(vi)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

**(vii)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

**(viii)** Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

**(ix)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(x)** You fail to meet the requirements contained in our corporate charter, articles of incorporation or bylaws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(3)** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**(4)** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** Paragraph **13. When We Do Not Renew** of **Section III – Conditions** is replaced by the following:

**1. Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(1)** Expiration of the policy if this policy has been written for one year or less; or

**(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**b.** We need not mail or deliver the notice of nonrenewal if you have:

**(1)** Insured property covered under this policy, under any other insurance policy;

**(2)** Accepted replacement coverage; or

**(3)** Requested or agreed to nonrenewal of this policy.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** The written notice of cancellation or nonrenewal will:

**a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

**b.** State the reason or reasons for cancellation or nonrenewal.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

**1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 95 of 155

**COMMERCIAL EXCESS LIABILITY**
**CX 00 01 04 13**

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section **IV** – Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

## SECTION I – COVERAGES

**1. Insuring Agreement**

   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

   We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".

However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or suit, for which we have the duty to defend.

But:

   **(1)** The amount we will pay for "ultimate net loss" is limited as described in Section **II** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Coverage Part. However, if the policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Coverage Part.

   **b.** This insurance applies to "injury or damage" that is subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

   **c.** If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that "injury or damage" takes place during the policy period of this Coverage Part.

© Insurance Services Office, Inc., 2012

**d.** Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this insurance. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance".

## 2. Exclusions

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

Insurance provided under this Coverage Part does not apply to:

### a. Medical Payments

Medical payments coverage or expenses that are provided without regard to fault, whether or not provided by the applicable "controlling underlying insurance".

### b. Auto

Any loss, cost or expense payable under or resulting from any of the following auto coverages:

**(1)** First-party physical damage coverage;

**(2)** No-fault coverage;

**(3)** Personal injury protection or auto medical payments coverage; or

**(4)** Uninsured or underinsured motorists coverage.

### c. Pollution

**(1)** "Injury or damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

This exclusion does not apply to the extent that valid "controlling underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "injury or damage".

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations, and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or suits brought, or number of vehicles involved;

**c.** Persons or organizations making claims or bringing suits; or

**d.** Limits available under any "controlling underlying insurance".

**2.** The Limits of Insurance of this Coverage Part will apply as follows:

**a.** This insurance only applies in excess of the "retained limit".

**b.** The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss", for all "injury or damage" covered under this Coverage Part.

However, this Aggregate Limit only applies to "injury or damage" that is subject to an aggregate limit of insurance under the "controlling underlying insurance".

**c.** Subject to Paragraph **2.b.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under this insurance because of all "injury or damage" arising out of any one "event".

**d.** If the Limits of Insurance of the "controlling underlying insurance" are reduced by defense expenses by the terms of that policy, any payments for defense expenses we make will reduce our applicable Limits of Insurance in the same manner.

**3.** If any "controlling underlying insurance" has a policy period that is different from the policy period of this Coverage Part then, for the purposes of this insurance, the "retained limit" will only be reduced or exhausted by payments made for "injury or damage" covered under this insurance.

The Aggregate Limit of this Coverage Part applies separately to each consecutive annual period of this Coverage Part and to any remaining period of this Coverage Part of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION III – CONDITIONS

The following conditions apply. In addition, the conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions.

**1. Appeals**

If the "controlling underlying insurer" or insured elects not to appeal a judgment in excess of the amount of the "retained limit", we may do so at our own expense. We will also pay for taxable court costs, pre- and postjudgment interest and disbursements associated with such appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **II** – Limits Of Insurance.

**2. Bankruptcy**

**a. Bankruptcy Of Insured**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**b. Bankruptcy Of Controlling Underlying Insurer**

Bankruptcy or insolvency of the "controlling underlying insurer" will not relieve us of our obligations under this Coverage Part.

However, insurance provided under this Coverage Part will not replace any "controlling underlying insurance" in the event of bankruptcy or insolvency of the "controlling underlying insurer". The insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect and recoverable.

**3. Duties In The Event Of An Event, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "event", regardless of the amount, which may result in a claim under this insurance. To the extent possible, notice should include:

**(1)** How, when and where the "event" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury or damage" arising out of the "event".

**b.** If a claim is made or suit is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or suit and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

**c.** You and any other insured involved must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. First Named Insured Duties**

The first Named Insured is the person or organization first named in the Declarations and is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

At our request, the first Named Insured will furnish us, as soon as practicable, with a complete copy of any "controlling underlying insurance" and any subsequently issued endorsements or policies which may in any way affect the insurance provided under this Coverage Part.

**5. Cancellation**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**b.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**6. Changes**

This Coverage Part contains all the agreements between you and us concerning the insurance afforded. The first Named Insured is authorized by all other insureds to make changes in the terms of this Coverage Part with our consent. This Coverage Part's terms can be amended or waived only by endorsement.

**7. Maintenance Of/Changes To Controlling Underlying Insurance**

Any "controlling underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of aggregate limits in accordance with the provisions of such "controlling underlying insurance" that results from "injury or damage" to which this insurance applies.

Such exhaustion or reduction is not a failure to maintain "controlling underlying insurance". Failure to maintain "controlling underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect.

The first Named Insured must notify us in writing, as soon as practicable, if any "controlling underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "controlling underlying insurance" is changed.

**8. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**9. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** If this policy is auditable, the premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premium is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

Case 3:22-cv-00045-RJC-DCK Document 51 Filed 02/07/22 Page 99 of 155

**10. Loss Payable**

Liability under this Coverage Part does not apply to a given claim unless and until:

**a.** The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and

**b.** The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

**11. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, "controlling underlying insurer" and the claimant or the claimant's legal representative.

**12. Transfer Of Defense**

**a. Defense Transferred To Us**

When the limits of "controlling underlying insurance" have been exhausted, in accordance with the provisions of "controlling underlying insurance", we may elect to have the defense transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or suits seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

**b. Defense Transferred By Us**

When our limits of insurance have been exhausted our duty to provide a defense will cease.

We will cooperate in the transfer of control of defense to any insurer specifically written as excess over this Coverage Part of any outstanding claims or suits seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

In the event that there is no insurance written as excess over this Coverage Part, we will cooperate in the transfer of control to the insured and its designated representative.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION IV – DEFINITIONS**

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

**1.** "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

**2.** "Controlling underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

**3.** "Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

**4.** "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

**5.** "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

**6.** "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

**a.** Settlements, judgments, binding arbitration; or

**b.** Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

Case 1:22-cv-00045-RJC-DCK   Document 31-1   Filed 07/07/22   Page 100 of 155

## SAFETY SPECIALTY INSURANCE COMPANY

### PRIVACY STATEMENT

**Our Commitment To Our Customers**

Safety Specialty Insurance greatly appreciates the trust that you and all of our customers place in us. We protect that trust by respecting the privacy of all of our customers, both present and past. The following will explain our privacy practices so that you will understand our commitment to your privacy.

**We Respect Your Privacy**

When you apply to Safety Specialty for any type of insurance, you disclose information about you to us. The collection, use and disclosure of such information are regulated by law. Safety Specialty and its affiliates maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your personal information. Our employees are also advised of the importance of maintaining the confidentiality of your information.

**Types Of Information We Collect**

Safety Specialty obtains most of our information directly from you, your agent or broker. The application you complete, as well as any additional information you provide, generally gives us most of the details we need to know. Depending on the nature of your insurance transaction, we may need further details about you.

We may obtain information from third parties, such as other insurance or reinsurance companies, medical providers, government agencies, information clearinghouses and other public records. We may also obtain information about you from your other transactions with us, our affiliates or others.

**What We Do With Your Information**

Information that has been collected about you will be retained in our files. We will review your information in evaluating your request for insurance coverage, determining your rates or underwriting risk, servicing your policy or adjusting claims. We may retain information about our former customers and would disclose that information only to affiliates and to non-affiliates as described in this notice or as otherwise permitted by law.

**To Whom Do We Disclose Your Information**

We will not disclose any non-public, personal information about our customers or former customers, except as permitted by law. That means we may disclose information we have collected about you to the following types of third parties:

- Our affiliated companies (Members and subsidiaries of the Tokio Marine Holdings, Inc. group of companies).

- Your agent or broker.

- Parties who perform a business or insurance function for Safety Specialty, including reinsurance, underwriting, claims administration or adjusting, investigation, loss control and computer systems companies.

- Other insurance companies or agents as reasonably necessary concerning your application, policy or claim.

- Insurance regulatory or statistical reporting agencies.

- Law enforcement or governmental authorities in connection with suspected fraud or illegal activities.

- Authorized persons as ordered by subpoena, warrant or court order, or as required by law.

We do not disclose any non-public, personal information about you to non-affiliated companies for marketing purposes or for any other purpose except those specifically allowed by law and described above.

**Independent Sales Agents or Brokers**

Your policy may have been placed with us through an independent agent or broker ("Sales Agent"). Your Sales Agent may have gathered information about you. The use and protection of information obtained by your Sales Agent is their responsibility, not Safety Specialty's. If you have questions about how your Sales Agent uses or discloses your information, please contact them directly.

PEPN001-0416

Safety Specialty Insurance Company
1832 Schuetz Road
St. Louis, MO 63146
1-888-995-5300

## EDUCATORS LEGAL AND EMPLOYMENT PRACTICES LIABILITY DECLARATIONS

---

**BROKER/PRODUCER:** USI INSURANCE SERVICES NATIONAL, INC.

**POLICY NUMBER:** SED6675347

**BROKER/PRODUCER NUMBER:** 2371024

**RENEWAL OF:**

**NOTICE: THIS IS A SURPLUS LINES POLICY, ISSUED BY A NON-ADMITTED INSURER, AND IS NOT PROTECTED BY THE DEPARTMENT OF INSURANCE OR GUARANTY ASSOCIATION.**

**NOTICE: THIS COVERAGE FORM PROVIDES CLAIMS MADE AND REPORTED COVERAGE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**ITEM 1.**     **Named Insured and Mailing Address**
CHARLOTTE-MECKLENBURG BOARD OF EDUCATION
CAMERON BROWN BLDG
301 S. MCDOWELL STREET
SUITE 1100
CHARLOTTE, NC 28204

**ITEM 2.**     **a. Policy Period**     **From:** 07-01-2018
(12:01 am standard time at your address)

     **b. Policy Period**     **To:** 07-01-2019
(12:01 am standard time at your address)

**ITEM 3.**     **Limit of Liability**     $2,000,000 Each **Wrongful Act**
$2,000,000 Policy Aggregate

**ITEM 4.**     **Self-Insured Retention**     $250,000 Each **Wrongful Act,** including **Claims Expenses**

**ITEM 5.**     **Total Advance Premium**     $106,114.00

**ITEM 6.**     **Minimum Earned Premium**     $106,114.00

**ITEM 7.**     **Notification**
Notice to the **Company** under this policy should be given to:
CITY OF CHARLOTTE, NC, (704) 336-3021

**ITEM 8.**     **Retroactive Date:** 05-24-1994

# CMBOE EXHIBIT B 003

**ITEM 9.**　　　**Forms and Endorsements attached to the policy at inception:**

| Form Number | Form Title |
|---|---|
| PEPN01 0416 | Privacy Statement |
| IL N 001 0903 | Fraud Statement |
| IL P 001 0104 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| PEPNNC01 1215 | North Carolina Disclosure Notice |
| ILNONSTACK 0416 | Non-Stacking Of Limits Endorsement |
| ILSIR 0716 | Self-Insured Retention Endorsement |
| MECHANGE 1215 | Manuscript Change Endorsement |
| ELEPCM 0716 | Educators Legal And Employment Practices Liability Coverage Form - Claims Made Form |

_____　　　_____

　　　　Date　　　　　　　　　　　　　　　　Authorized Signature

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# CMBOE EXHIBIT B 006

## NORTH CAROLINA DISCLOSURE NOTICE

**The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NON-STACKING OF LIMITS ENDORSEMENT**

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

**<u>Two or More Coverage Forms, Coverage Parts, or Policies Issued By Us</u>**

If this Policy and any other policy or coverage part(s) or coverage form(s) issued to the Named Insured by us or any of our affiliated companies, apply to the same or related damages, the most we will pay under all such policies combined is the single largest applicable limit of insurance available under any one of those policies, coverage parts or coverage forms, regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

Same or related damages include injury or damages that may have occurred during the prior policy period and/or that continued into a subsequent policy period, or any injury or damages based upon, arising from, or in consequence of the same or related series of acts or omissions, facts, circumstances, situations, transactions, or causes, provided that this Endorsement does not apply to any policies or coverage part(s) or coverage form(s) issued by us or an affiliated company specifically to apply as excess insurance over this Policy.

ILNONSTACK0416

# CMBOE EXHIBIT B 008

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL LIABILITY AND EMPLOYMENT PRACTICES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

## SCHEDULE

| Self-Insured Retention | $250,000 Per Wrongful Act |
|---|---|

This policy is subject to a Self-Insured Retention in the Per **Wrongful Act** amount set forth in the Schedule above. The **Wrongful Act** Self-Insured Retention may be met by the payment of **Claims Expenses**, **Damages** or a combination of both. The provisions of the policy apply unless modified by this endorsement. In the event of a conflict between or among the provisions set forth in this endorsement and the policy, the terms of this endorsement shall control. The provisions of this endorsement are conditions precedent that must be complied with in order for the policy's coverage to apply.

Some policies subject to this endorsement apply to **Claims** as defined in the policy while others apply to **Claims** and/or **Suits** as those terms are defined. Use of the term **Suit** in this endorsement does not alter, amend or change the policies which apply to **Claims**. Unless otherwise stated, the bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

1. SELF-INSURED RETENTION

    The **Company's** obligation to pay **Claims Expenses** and **Damages** on behalf of the **Insured** applies only to amounts in excess of the applicable Self-Insured Retention shown in the above Schedule.

    The Self-Insured Retention is primary and underlying to the insurance provided by the policy and can only be satisfied when the full amount of the retention is paid by the first **Named Insured**. After the first **Named Insured** has paid the amount of the applicable Self-Insured Retention, the **Company** will pay on the **Insured's** behalf, or reimburse the **Insured** for paying **Claims Expenses** or **Damages** in excess of the applicable Self-Insured Retention. The **Company's** payment of **Damages** shall be subject to the Limits of Liability shown in the Declarations for the policy.

In the event there is any other insurance applicable to a **Claim** or **Suit** within the Self-Insured Retention amount, the first **Named Insured** will continue to be responsible for the full Self-Insured Retention before the **Company** can be required to pay.

**2.** SELF-INSURED RETENTION PER WRONGFUL ACT

If a Per **Wrongful Act** Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to the **Company's** liability under the policy that the first **Named Insured** make actual payment of all **Claim Expenses** and **Damages** until the first **Named Insured** has paid the amount equal to the applicable Per **Wrongful Act** amount.

Payments by others, including but not limited to, additional insureds or other insurers, does not serve to reduce or satisfy the Self-Insured Retention. The Per **Wrongful Act** amount is the most the first **Named Insured** will pay for **Claims Expenses** and **Damages** arising out of a **Wrongful Act**.

**3.** LIMITS OF LIABILITY

The **Wrongful Act** Limit of Liability on the policy is excess over the **Wrongful Act** Self-Insured Retention.

**4.** OUR RIGHT TO REIMBURSEMENT

With respect to any **Claim** or **Suit** under this policy, the **Company** may, at its sole discretion, pay any or all of the Self-Insured Retention amount to defend or to effect a settlement. If the **Company** elects to pay the Self-Insured Retention amount, the first **Named Insured** must promptly reimburse the **Company** for such payment.

**5.** BANKRUPTCY OR INSOLVENCY

Satisfaction of the Self-Insured Retention amounts by the first **Named Insured** is a condition precedent to the **Company's** obligations and liability for amounts in excess of the Self-Insured Retention regardless of the first **Named Insured's** bankruptcy or insolvency or inability to pay. Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay will not operate to:

**A.** Deplete or reduce the Self-Insured Retention; or

**B.** Increase the **Company's** liability under this policy.

In no event will the **Company** assume the responsibility or obligations of the first **Named Insured** or any **Insured**.

**6.** CLAIMS ADMINISTRATION:

**A.** As a condition precedent to coverage under the policy, the first **Named Insured** shall maintain a continuous contract with an Authorized Independent Claims Service Administrator ("AICSA") approved by the **Company** at the first **Named Insured's** sole expense without reimbursement from the **Company**, for the purpose of providing claims handling services for the investigation, defense and settlement of **Claims**, **Suits** or other matters reported.

**B.** Alternatively, the first **Named Insured** shall operate a self-administered claims program to provide claims handling services for the investigation, defense and settlement of

**Claims**, **Suits** or other matters reported. Said self-administered claims program and the procedures for operating the program must be approved by the **Company** and operated at the first **Named Insured's** sole expense without reimbursement from the **Company**.

**C.** Unless the **Company** elects to assume control, the AICSA or the self-administered claims program (if there is no AICSA) shall remain responsible for claims handling services after exhaustion of the Self-Insured Retention.

**7.** NOTICE AND COOPERATION CONDITIONS

Other than for policies issued as **Claims** Made Policies, the Notice and Cooperation Conditions of the policy are amended as follows:

**A.** The **Named Insured** must see to it that the AICSA (or the manager of the approved self-administered claims program if there is no AICSA) is promptly notified of:

**(1)** A **Wrongful Act**;

**(2)** Any investigatory, administrative, disciplinary or criminal proceedings or notices of charges that may involve a **Wrongful Act** covered by this policy; and

**(3)** Circumstances that may reasonably be expected to result in a **Claim** or **Suit**.

Said notice must include particulars regarding the **Wrongful Act** or circumstances, the names and addresses of any injured parties, any witnesses and any involved **Insureds**.

**B.** If **Claim** is made or **Suit** is brought against any **Insured**, such **Insured** and the **Named Insured** shall immediately notify the AICSA (or the manager of the approved self-administered claims program if there is no AICSA) and immediately send to the AICSA (or the manager of the approved self-insured claims administration program if there is no AICSA) every document, demand, notice, summons, or other process or legal papers received by the **Insured** or by the **Insured's** representatives.

**C.** The **Insured** shall cooperate with the AICSA (or the manager of the approved self-administered claims program if there is no AICSA) and with the **Company** in any investigation and in the defense of any **Claim** or **Suit**, and upon the **Company's** request, submit to examination by a representative of the **Company**, under oath if necessary, and attend hearings, depositions and trials, shall assist in any settlement process and assist in the securing and giving of a written statement or statements to claims representatives and defense counsel.

**8.** CLAIMS MADE POLICIES

The Notice and Reporting Conditions of **Claims** Made Policies remain as stated in the policies. However, after a matter is initially reported or a Claim is initially made, the investigation, defense and claims handling shall be conducted by the AICSA or by the approved self-administered claims program if there is no AISCA, subject to the Self-Insured Retention provisions and other terms of the policy and this endorsement.

**9.** ADDITIONAL REPORTING REQUIREMENTS

**A.** For all policies, including but not limited to Claims Made Policies, in addition to complying with the applicable Notice Conditions, the **Named Insured** or the AICSA, on the **Named**

**Insured's** behalf, must immediately provide the **Company's** Claims Department with a captioned report of the following:

**(1)** Any matter where **Claims Expenses** and/or **Damages** may or are likely to exceed 50% of the **Wrongful Act** Self-Insured Retention;

**(2)** Any matter involving riots or civil unrest;

**(3)** Any matter involving sexual abuse or molestation;

**(4)** Any matter involving significant psychological involvement;

**(5)** If the policy covers **Bodily Injury**, any matter involving:

    **a.** Death;

    **b.** Brain or spinal injury;

    **c.** Amputation;

    **d.** Loss of use of an eye or limb;

    **e.** Severe burns involving more than 25% of the body;

    **f.** Multiple fractures;

    **g.** Permanent and/or total disability;

    **h.** Significant neurological involvement;

    **i.** Severe internal body organ damage or loss;

    **j.** Severe cosmetic deformity or disfigurement; and

    **k.** A hospital stay of two weeks or longer.

**(6)** Any matter involving a **Wrongful Act** that constitutes a **Wrongful Employment Practice**;

**(7)** An actual or alleged error or omission of the **Named Insured**, the AICSA, or the **Company** in the claims handling process;

**(8)** An actual or potential conflict of interest between the **Insured** and the **Company** or between the AICSA and the **Company**; and

**(9)** A coverage issue or dispute.

**B.** For all policies, including but not limited to Claims Made Policies, the **Named Insured** or the AICSA, on the **Named Insured's** behalf, must:

**(1)** Provide a summary of all claims, on a loss run form approved by the **Company**, on a monthly basis. This requirement also applies after cancellation or nonrenewal until all matters are closed or settled.

**(2)** Compliance with these reporting requirements is a condition precedent to coverage. In the event of non-compliance, the **Company** shall not be required to establish prejudice resulting from reporting non-compliance and shall be automatically relieved of liability with respect to any matter, **Claim** or **Suit** involved.

**10.** DEFENSE & SETTLEMENT:

**A.** The first **Named Insured** and the AICSA shall exercise the utmost good faith and diligence in claims handling.

**B.** The first **Named Insured** and the AICSA may not effect a settlement that exceeds the remaining Self-Insured Retention amount without the **Company's** written consent. If the **Company's** consent is not obtained, the **Company** shall have no obligation to provide coverage for that settlement or for the **Claim** or **Suit** involving that settlement.

**C.** The **Company**, at its sole discretion, has the right but not the duty to associate itself in the defense of any **Claim** or **Suit**. The **Company**, at its sole discretion, shall also have the right to assume control over the investigation, defense or settlement of any **Claim** or **Suit** which, in the **Company's** sole judgment, may exceed the remaining Self-Insured Retention amount. If the **Company** avails itself of that right, the **Insured** must cooperate with the **Company**. In the event the **Company** retains its own counsel and incurs **Claim Expenses** in the exercise of its right to associate in or assume control over the defense, the first **Named Insured** shall not be liable to reimburse the **Company** for the **Claim Expenses** incurred by the **Company's** own retained counsel. Should the **Company** settle such a **Claim** or **Suit** or should there be a judgment in such a **Claim** or **Suit**, the first **Named Insured** shall pay **Damages** up to the amount remaining in the Self-Insured Retention.

**11.** HOLD HARMLESS AGREEMENT:

The first **Named Insured** will defend, hold harmless and indemnify the **Company** for any and all damages, awards, judgments, attorney's fees or other costs or expenses which are incurred by or imposed upon the **Company** because of the acts or omissions of the first **Named Insured** or its employees, agents, self-administered claims program or independent contractors in the course of the investigation, settlement or handling of any matter, **Claim** or **Suit** under the policy.

# CMBOE EXHIBIT B 013

# Policy Change Endorsement

**SAFETY SPECIALTY INSURANCE COMPANY**

ST. LOUIS, MO 63146

(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| SED6675347 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Mailing Address | Broker/Producer |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210 |

## CHANGE DESCRIPTION

### EARLIER NOTICE OF CANCELLATION ENDORSEMENT – 90 DAYS

This endorsement modifies insurance provided under the following:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICIES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Subsection **4.** of **SECTION IV – GENERAL CONDITIONS**, is revised to provide that the **Company** shall mail notice of cancellation to the **Insured** not less than 90 days before cancellation when cancelling for reasons other than nonpayment of premium. Notice of cancellation for nonpayment of premium shall be mailed to the **Insured** not less than 14 days before cancellation.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 003 0817

# Policy Change Endorsement

**SAFETY SPECIALTY INSURANCE COMPANY**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| SED6675347 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Mailing Address | Broker/Producer |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210 |

## CHANGE DESCRIPTION

### NORTH CAROLINA PRESERVATION OF GOVERNMENTAL IMMUNITY ENDORSEMENT
### -Wake County-

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICIES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another enforcement effective date is indicated below.

The following is added to the section of your policy titled **Sovereign Immunity Defense:**

The purchase of this policy is not intended by the **Insured** to waive its governmental immunity under North Carolina General Statutes Sect. 153A-435 or any other applicable law or statute or amendments thereto.

Accordingly, subject to its terms, conditions and limits, this policy provides coverage only for **Wrongful Acts** for which the defense of governmental immunity is clearly not applicable or for which, after the defense of governmental immunity is asserted, a court of competent jurisdiction determines the defense of governmental immunity is not applicable.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 006 0817

# CMBOE EXHIBIT B 015

## Policy Change Endorsement

**SAFETY SPECIALTY INSURANCE COMPANY**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| SED6675347 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Mailing Address | Broker/Producer |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210 |

### CHANGE DESCRIPTION

### KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following Coverage Forms:

### LAW ENFORCEMENT LIABILITY

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

**SECTION IV – GENERAL CONDITIONS, Subsection 7. Notice and Cooperation**, is amended by adding a new Items D. as follows:

**D.** It is agreed that knowledge by the **Named Insured's Employee,** agent or servant of a **Wrongful Act**, **Claim** or **Suit** as set forth in Items A. and B. above, will not in itself be considered to be knowledge by the **Named Insured** unless the individual(s) in the position(s) or department(s) scheduled below shall have received such notice.

SCHEDULE

> Knowledge by any person in the Risk Management Department, Human Resources Department, Law Department or a Corporate Executive that is responsible for receiving or acting on such information.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 014 1017

# CMBOE EXHIBIT B 016

# Policy Change Endorsement

**SAFETY SPECIALTY INSURANCE COMPANY**

ST. LOUIS, MO 63146

(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| SED6675347 | 07/01/2018 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |
|  |  |

| Named Insured and Mailing Address | Broker/Producer |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION<br>CAMERON BROWN BLDG<br>301 S. MCDOWELL STREET<br>SUITE 1100<br>CHARLOTTE, NC 28204 | USI INSURANCE SERVICES NATIONAL, INC.<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210 |

## CHANGE DESCRIPTION

## NAMED INSURED - EXCLUSION

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICIES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another enforcement effective date is indicated below.

Throughout this policy the words "you", "your" or the Named Insured, shall not include *The Charlotte Area Transit System (CATS)* nor *The Charlotte Douglass International Airport (CDA)*. Accordingly this insurance does not apply to **Claims** or **Damages** against such entities as the result of a **Wrongful Act**. Additionally, the coverage provided by this policy shall not be considered primary nor excess over any policies providing coverage for such organizations.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 033 0718



# EDUCATORS LEGAL AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

# CLAIMS MADE AND REPORTED

**NOTICE: THIS IS A SURPLUS LINES POLICY, ISSUED BY A NON-ADMITTED INSURER, AND IS NOT PROTECTED BY THE DEPARTMENT OF INSURANCE OR GUARANTY ASSOCIATION.**

**NOTICE: THIS POLICY IS A CLAIMS-MADE POLICY WHICH PROVIDES LIABILITY COVERAGE ONLY IF A CLAIM IS MADE AND REPORTED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine the **Insured's** rights and duties, and what is and is not covered.

Titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Other words and phrases that appear in bold have special meaning. Refer to **SECTION VII - DEFINITIONS.**

In consideration of the payment of the premium, in reliance upon the statements in the written application for this insurance and subject to all of the terms of this policy, the **Company** and the **Insured** agree as follows:

**SECTION I - COVERAGES**

**1. Insuring Agreement**

The **Company** will pay on behalf of the **Insured** those **Damages** resulting from a **Wrongful Act** to which this insurance applies. The **Claim** must be first made during the **Policy Period** and reported to the **Company** in compliance with **SECTION IV - GENERAL CONDITIONS**, Item 7. or any applicable reporting period under **SECTION V - EXTENDED REPORTING PERIOD.**

The **Wrongful Act** must take place in the **Policy Territory** and must occur:

**A.** During the **Policy Period**; or

**B.** Subsequent to the Retroactive Date, if any, stated in the Declarations of this policy, but not after expiration of the **Policy Period** and only if:

**(1)** The **Insured** did not give notice relating to the **Wrongful Act** under any other policy of insurance or program of self-insurance; and

**(2)** Before the effective date of this policy, no **Insured** knew or had a basis to believe that the circumstances of such **Wrongful Act** might reasonably be expected to result in or give rise to a **Claim**.

For purposes of Paragraph **1.A.** of this Insuring Agreement, if during the **Policy Period** or during the applicable reporting period under **SECTION V - EXTENDED REPORTING PERIOD**, the **Insured** gives written notice to the **Company**, in accordance with **SECTION IV - GENERAL CONDITIONS**, Item 7, of a **Wrongful Act** likely to result in a **Claim**, then any **Claim** that may subsequently be made against an **Insured** arising out of such **Wrongful Act** shall be deemed to have been made during the **Policy Period**.

**2. Defense, Self - Insured Retention and Supplementary Payments**

**A.** This policy is subject to a Self-Insured Retention applicable to each **Wrongful Act** which must be paid by the first **Named Insured**. The Self-Insured Retention includes the payment of **Claims Expenses** and/or **Damages** within the limit shown in the Declarations as the Self-Insured Retention.

**B.** Once the Self-Insured Retention has been paid and subject to the terms of this policy, the **Company** shall have the right and duty to defend the **Insured(s)** against a **Claim** covered by this policy, except where otherwise excluded. The **Company** shall have no obligation to defend any **Claim** that is not covered by this policy and no obligation to defend after the applicable Limit of Liability has been exhausted.

**C.** Before the Self-Insured Retention is exhausted, the first **Named Insured** has the right to appoint defense counsel, subject to the **Company's** written consent and approval, to defend a **Claim** against the **Insured(s)**. The **Company**, at its sole discretion, may withdraw approval of counsel and require the first **Named Insured** to appoint a different defense counsel subject to the **Company's** written consent and approval.

**D.** The **Company** has the right, at its sole discretion, to appoint counsel to associate with defense counsel appointed by the first **Named Insured**.

**E.** Once the Self-Insured Retention is exhausted, the **Company** has the right to appoint counsel of its choice to defend the **Insured(s)** in connection with the **Claim** in lieu of defense counsel appointed by the first **Named Insured**.

**F.** Other than as permitted under the Self-Insured Retention provisions of this policy, no **Insured**, except at their own cost and for their own account, shall, without prior written consent of the **Company**, make any payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense.

**G.** Once the Self-Insured Retention is exhausted, the **Company** shall have the right, but not the duty, to appeal any judgment rendered against the **Insured**.

**H.** If the Self-Insured Retention has not been exhausted, and a judgment is rendered against an **Insured** for an amount within the remaining Self-Insured Retention, no appeal shall be taken therefrom without the prior written consent and approval of the **Company**.

**I.** If the Self-Insured Retention is exhausted, and the **Company** is defending, the **Company** will pay in addition to the applicable Limit of Liability:

**(1)** All **Claims Expenses** incurred by the **Company**, costs taxed against the **Insured** in connection with covered **Damages**, and interest on that portion of any judgment for covered **Damages** which does not exceed the limit of the **Company's** liability. The **Company** will have no duty to pay interest after the **Company** has paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limit of Liability; and

**(2)** Reasonable expenses incurred by the **Insured** at the **Company's** request for assisting the **Company** in the investigation or defense of any **Claim**, including the **Insured's** attendance at hearings or trials.

**J.** If the Self-Insured Retention is exhausted, and the **Company** is defending, the **Company**, at its option, may pay, in addition to the applicable Limit of Liability, premium on appeal bonds required in any **Claim** defended by the **Company**, and premium on bonds to release attachments in any such **Claim**, for an amount not in excess of the applicable Limit of Liability of this policy. The **Company** has no obligation to pay such premium and no obligation to apply for or furnish any such bonds.

## SECTION II - WHO IS AN INSURED

**1.** Each of the following is an **Insured**:

**A.** The **Named Insured** as shown in the Declarations;

**B.** The **Named Insured's Employees**, including teachers, instructors or administrators in a school system of the **Named Insured**, but only for **Wrongful Acts** within the course and scope of their employment for the **Named Insured**;

**C.** The **Named Insured's** student teachers, whether paid or unpaid, but only for **Wrongful Acts** while acting at the request of the **Named Insured** and within the course and scope of their duties for the **Named Insured**.

**D.** The **Named Insured's** authorized volunteer workers, but only for **Wrongful Acts** while acting at the request of the **Named Insured** and within the course and scope of their duties for the **Named Insured**.

**E.** The **Named Insured's** elected or appointed officials, trustees, directors or superintendents, but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured**; and

**F.** Boards, commissions, agencies, councils or other governmental units, and authorized members and officials thereof, created by and operated under the **Named Insured**, but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured**.

## SECTION III - LIMITS OF LIABILITY

**1.** The **Company's** total liability for all **Damages** as a result of all **Claims** covered under this policy shall not exceed the amount stated in the Declarations as the Policy Aggregate Limit, regardless of the number of **Insureds**, the number of **Claims** made or the number of persons or organizations making **Claims**.

**2.** Subject to the above provision regarding the Policy Aggregate Limit, the **Company's** liability for all **Damages** as a result of a **Wrongful Act** shall not exceed the amount stated in the Declarations as the **Wrongful Act** Limit, regardless of the number of **Insureds**, the number of **Claims** made or the number of persons or organizations making **Claims**.

**3.** Any applicable reporting period under **SECTION V - EXTENDED REPORTING PERIODS** shall be deemed to be part of this **Policy Period** for purposes of determining the Limit of Liability. The Limits of Liability do not apply separately to any reporting period under **SECTION V - EXTENDED REPORTING PERIODS**.

**4.** If additional **Claims** are subsequently made which arise out of a **Claim** already made and reported to the **Company**, or a proceeding, circumstance or **Wrongful Act** already reported to the **Company**, then all such **Claims**, whenever made, shall be considered first made within the **Policy Period** or the applicable Extended Reporting Period in which the report to the **Company** was made, and all such **Claims** shall be subject to one Limit of Liability.

## SECTION IV - GENERAL CONDITIONS

CMBOE EXHIBIT B 020

**1. Action Against the Company**

No action shall lie against the **Company** unless, as a condition precedent thereto, all of the terms of this policy shall have been fully complied with, nor until the amount of an **Insured's** obligation to pay shall have been finally determined, either by a final judgment against the **Insured** or by written agreement of the first **Named Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy, but the **Company** shall not be liable for **Damages** or other amounts that are not payable under the terms of this policy or for **Damages** that are in excess of the applicable Limit of Liability. No person or organization shall have any right under this policy to join the **Company** as a party to any action against an **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or its legal representative. In the event of bankruptcy or insolvency of the **Insured**, the **Company** shall not be relieved of the payment of such indemnity as would otherwise have been payable under the terms of this policy after exhaustion of the Self-Insured Retention.

**2. Representations and Agreements**

The **Named Insured** declares and represents that the particulars and information in the application for coverage are accurate and complete and further agrees that said particulars and information are material to the risk assumed by the **Company**, that the **Company** issued the policy in reliance upon the truth, accuracy and completeness of such particulars and information, that the statements in the Declarations are true and correct, and that in the event of a misrepresentation that materially affects either the acceptance of the risk or the hazard assumed by the **Company**, this policy shall be void in its entirety and of no effect.

**3. Assignment**

Assignment of interest under this policy shall not bind the **Company** unless its consent is endorsed hereon; if however, an **Insured** shall die, such insurance as is afforded by this policy shall apply to the **Insured's** legal representatives, while acting within the scope of their duties as such, but only for **Claims** that are otherwise covered by this policy.

**4. Cancellation**

This policy may be cancelled by the first **Named Insured** at any time by surrendering this policy to the **Company** or any of its authorized agents, or by mailing to the **Company** written notice stating when, thereafter, the cancellation shall be effective. This policy may also be cancelled by the **Company** by mailing written notice to the first **Named Insured** at the address shown in the Declarations, stating the effective date of cancellation. Said notice from the **Company** shall be mailed not less than ten (10) days before cancellation for non-payment of premium, or sixty (60) days before cancellation for any other reason. The mailing of notice as aforesaid shall be sufficient proof of notice. The cancellation date stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the first **Named Insured** or by the **Company** shall be equivalent to mailing.

If the policy shall be cancelled by the first **Named Insured**, the **Company** shall retain the customary short rate proportion of the premium herein subject to the minimum earned premium as stated in the Declarations. Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practical. If the period of limitation relating to the giving of notice of cancellation hereunder is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period of limitation of such law.

**5. Changes**

Notice to any agent, or knowledge possessed by any agent or by any other person, shall not affect or change any provision of this policy or stop the **Company** from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, and signed by a duly authorized representative of the **Company**.

**6. Consent to Settle**

The **Company** may settle any **Claim** both within or in excess of the Self-Insured Retention. If the **Company** decides to settle a **Claim** for an amount in excess of the remaining Self-Insured Retention, the first **Named Insured** will promptly pay the amount remaining on the Self-Insured Retention. However, the **Company** will request the consent of the first **Named Insured** when the **Company** recommends a settlement on behalf of any **Insured** that is equal to or less than the remaining Self-Insured Retention. If the first **Named Insured** refuses to consent to such a settlement, the **Company** shall nevertheless have the right to effect the settlement, and the first **Named Insured** shall immediately reimburse the **Company** for all amounts remaining in the Self-Insured Retention. Alternatively, if consent is refused, the **Company** may allow the first **Named Insured** to contest the **Claim** or continue any legal proceeding in connection with such **Claim**, in which event the **Company's** liability will not exceed the amount the **Company** recommended in settlement and the amount of **Claims Expenses** incurred from the date of such refusal.

**7. Notice and Reporting**

    **A.** As a condition precedent to coverage under this policy, the **Named Insured** shall give written notice to the **Company** of any **Claim** made against any **Insured(s)** as soon as practicable, but in no event later than:

        **(1)** 60 days after the end of the **Policy Period** if the policy is renewed; or

        **(2)** During any applicable Extended Reporting Period, before the end of such Extended Reporting Period.

    Such written notice must be delivered or mailed to the **Company** at the address listed in the Declarations of this policy. If delivered, the **Insured** must obtain acknowledgment of the delivery at the time of delivery. If mailed, the date of mailing shall constitute the date that such notice was given to the **Company**, and proof of delivery shall be by certified mail, courier or facsimile. A **Claim** shall be considered to have been first made when written notice of such **Claim** is received by any **Insured** or by the **Company**, whichever comes first.

    **B.** As a condition precedent to coverage under this policy, the **Named Insured** shall also give written notice of the following circumstances to the **Company**, with full particulars as to subject matter, dates and persons or entities involved:

        **(1)** Any investigative, agency, administrative, disciplinary or criminal proceedings or any notice of EEOC charges that allege a **Wrongful Act** or which may give rise to a **Claim**; or

        **(2)** Other situations and circumstances that do or may involve a **Wrongful Act** or which may reasonably be expected to give rise to a **Claim**.

    Notice under these provisions shall likewise be given as soon as practicable but in no event later than:

        **(1)** 60 days after the end of the **Policy Period** if the policy is renewed; or

        **(2)** During any applicable Extended Reporting Period, before the end of the Extended Reporting Period.

    Written notice shall be made as set forth in section **7.A.** above.

**8. Cooperation**

The **Insured(s)** shall cooperate with the **Company** in any investigation and in the defense of any **Claim**, and upon the **Company's** request, submit to examination by a representative of the **Company**, under oath if necessary, and attend hearings, depositions and trials, assist in any settlement process, and assist in the securing and giving of information and statements to the **Company's** representatives and defense counsel.

**9. Minimum Earned Premium**

This policy is subject to a Minimum Earned Premium as shown on the Declarations, and it shall be fully earned at the inception date of the policy.

**10. Other Insurance**

The insurance provided by this policy shall apply as excess over any other insurance and its deductible or self-insured retention provision and over any self-insured program, whether such other insurance or self-insurance is stated to be primary, excess, contingent or otherwise, unless such other insurance is expressly written as excess over this policy and specifically designates this policy as underlying insurance in its Declarations. When this policy is excess over other insurance or self-insurance, the **Company** will have no duty to defend the **Insured** in any **Claim** where any other insurer or self-insured program has a duty defend the **Insured**.

When this insurance is excess, the **Company** will pay only the **Company's** share of what is owed, if any, that exceeds the total amount of all such other insurance or self-insurance and the total amount of all deductibles and self-insured retention amounts under all such other insurance or self-insurance.

When both this insurance and other insurance or self-insurance apply on the same excess basis, the **Company** will share as set forth below:

**A.** Contribution by Equal Shares. If all of the other insurance or self-insurance provides for contribution by equal shares, the **Company** shall not be liable for a greater proportion than would be payable if each insurer or self-insurer contributes an equal share until the share of each equals its applicable Limit of Liability or the full amount of the loss is paid.

**B.** Contribution by Limits. If any such other insurance or self-insurance does not provide for contribution by equal shares, the **Company** shall not be liable for a greater proportion of loss than the applicable Limit of Liability under this policy bears to the total applicable Limit of Liability of all other insurance and self-insurance.

**11. Separation of Insureds**

Except with respect to the Limit of Liability, and any rights or duties specifically assigned in this policy to the first **Named Insured**, this policy applies:

**A.** As if each **Named Insured** were the only **Named Insured**; and

**B.** Separately to each **Insured** against whom **Claim** is made.

**12. Service of Suit - Action Against the Company**

Pursuant to any statute of any state, territory or District of the United States which makes provision therefor, the **Company** hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the **Company's** true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Named Insured**, arising out of this policy.

**13. Sovereign Immunity**

The **Company** will use the defense of sovereign immunity, to which an **Insured** may be entitled, only when both the **Company** and the first **Named Insured** are in agreement in its use. If the first **Named Insured** does not agree with the **Company** to use the defense of sovereign immunity, the **Company** shall have no liability to any **Insured** because of the failure to raise such defense. This policy does not constitute a waiver of sovereign immunity to which an **Insured** is entitled.

**14. Subrogation**

In the event of any payment under this policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery against any person or organization, and the **Insured** shall execute and deliver

instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after the payment of judgment or settlement to prejudice such rights.

**15. Terms of Policy - Statute**

If the state in which this policy is issued imposes statutory requirements upon the **Company** regarding this policy's terms, then any provision of this policy which, on its inception date, is in conflict with such statutory requirements, is amended to conform to the minimum requirements so imposed.

## SECTION V - EXTENDED REPORTING PERIODS

**1.** The **Company** will provide an Extended Reporting Period to the first **Named Insured**, only as described herein.

**2.** An Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided under this policy.

**3.** An Extended Reporting Period does not reinstate or increase the Limit of Liability.

**4.** A Basic Extended Reporting Period of sixty (60) days from the effective date of expiration or cancellation or nonrenewal of this policy is automatically provided without an additional charge. The Basic Extended Reporting Period applies to **Claims** for **Damages** that are first made against an **Insured** during the **Policy Period** and reported to the **Company**, in accordance with **SECTION IV - GENERAL CONDITIONS - Item 7**., no later than the end of the Basic Extended Reporting Period.

The Basic Extended Reporting Period does not apply to **Claims** covered under any other insurance issued subsequent to this policy or which replaces this policy.

**5.** If this policy is canceled by the **Company** or not renewed by the **Company** for any reason other than nonpayment of premium or any other amount owed to the **Company**, an Optional Extended Reporting Period may be offered to the first **Named Insured**, subject to the payment of additional premium and shall take effect on the effective date of cancellation or nonrenewal of this policy. The Optional Extended Reporting Period will remain in effect for a period of one (1) to three (3) years, depending on which Optional Extended Reporting Period the **Insured** purchases. An offer by the **Company** to renew this policy based on terms, conditions, Limits of Liability and/or premiums that are different from those of the expiring policy shall not constitute non-renewal. The Optional Extended Reporting Period applies to a **Claim** for **Damages** that is first made against an **Insured** during the **Policy Period** and reported to the **Company** in accordance with **SECTION IV - GENERAL CONDITIONS - Item 7.A.**, no later than the end of the Optional Extended Reporting Period.

The additional premium for the Optional Extended Reporting Period will depend on which option the first **Named Insured** chooses, as shown below, but will be no more than 150% of the annual premium for the last policy period.

| | | |
|---|---|---|
| Option 1 | 1 year | 75% of the annual premium for this policy. |
| Option 2 | 2 years | 125% of the annual premium for this policy. |
| Option 3 | 3 years | 150% of the annual premium for this policy. |

The **Company** must receive a written request from the first **Named Insured**, together with payment of additional premium due, within sixty (60) days after the effective date of cancellation or nonrenewal of this policy if the first **Named Insured** wishes to purchase one of the Optional Extended Reporting Periods. The first **Named Insured** must state in the request which Optional Extended Reporting Period it wishes to purchase. The Optional Extended Reporting Period will not go into effect unless the **Insured** pays and the **Company** acknowledges receipt of the additional premium when due. Once in effect, the Optional Extended Reporting Period may not be canceled and the premium for the Optional Extended Reporting Period is fully earned.

**6.** There is no coverage for **Claims** reported during any Extended Reporting Period if the **Claim** is covered under any other insurance or self-insurance program, including insurance or a self-insurance program in effect subsequent to this **Policy Period** or which replaces this policy.

**SECTION VI - EXCLUSIONS**

This policy does not apply to, and the **Company** has no obligation to defend any **Claim**:

**1.** Arising out of:

  **A.** Any access to or disclosure of any person's or organization's confidential or personal information, including but not limited to patents, trade secrets, unpublished lists, financial information, credit card information, health information, grades, testing, or any other type of nonpublic information;

  **B.** Any loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data; or

  **C.** Any failure, malfunction, error or problem in any electronic data network or computer system, or any related or component part, including but not limited to hardware and software, or any intrusion into, breach of or improper access to such a network or system.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other damages, loss, cost or expense incurred by the **Insured** or others arising out of that which is described above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cellular or mobile devices, laptop devices, data processing devices or any other media which are used with electronically controlled equipment.

**2.** Arising out of:

  **A.** The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of:

    **(1)** Asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

    **(2)** Lead, or any products or materials containing lead;

    **(3)** Silica, silica dust, or any products or materials containing silica or silica dust; or

    **(4) Fungi** or mold.

  **B.** Any loss, cost, expense, request, demand, legal proceeding, order or requirement related to the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of:

    **(1)** Asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

    **(2)** Lead, or any products or materials containing lead;

    **(3)** Silica, silica dust, or any products or materials containing silica or silica dust; or

    **(4) Fungi** or mold.

  **C.** Any supervision, training, instructions, disclosures, recommendations, warnings, or advice given or which should have been given in connection with **A.** or **B.** above.

**3.** Arising out of:

  **A.** The actual, alleged or threatened presence of, exposure to, discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

**B.** Any loss, cost, expense, request, demand, legal proceeding, order or requirement relating to the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or in any way responding to or assessing the effects of **Pollutants;** and

**C.** Any supervision, training, instructions, disclosures, recommendations warnings, or advice given or which should have been given in connection with **A.** or **B.** above.

**4.** Arising out of the ownership, maintenance, operation, use, loading or unloading, or negligent entrustment of any:

**A.** **Automobile,** watercraft, aircraft, motorcycle, or other motorized means of transportation owned by, operated by, rented by, or loaned to any **Insured**; or

**B.** Any other **Automobile,** watercraft, aircraft, motorcycle, or other motorized unit operated by any person in the course of their employment by the **Named Insured**.

This exclusion also applies to negligent supervision, training or dispatch related to ownership, maintenance, use or entrustment of any **Automobile,** watercraft, aircraft, motorcycle or other motorized means of transportation.

**5.** Arising out of **Bodily Injury** or **Property Damage.**

**6.** Arising out of:

**A.** A publication or utterance in the course of or relating to advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**;

**B.** Violation of public occupancy or violation of property rights;

**C.** Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises;

**D.** Misappropriation of any trade secret, advertising ideas or style of business;

**E.** Infringement of any patent, collective mark, registered mark, copyright, trademark, trade dress, domain, title or slogan, copyright or service name, or any other intellectual property right;

**F.** Plagiarism by any **Insured**;

**G.** Emotional distress or mental anguish; or

**H.** Libel, slander, defamation, humiliation or invasion of privacy.

However, exclusions **6.G.** and **6.H.** do not apply when injury is caused by an otherwise covered **Wrongful Employment Practice**.

**7.** Arising out of law enforcement activities, including but not limited to:

**A.** False arrest, detention or imprisonment;

**B.** Malicious prosecution;

**C.** False or improper service of process; or

**D.** Other abuse of process.

**8.** Arising out of:

**A.** The issuance of bonds; or

**B.** Tax collection, tax assessment, tax revenues, tax adjustments, the improper administration of taxes or loss that relates to any tax obligation.

**9.** Arising out of acts or omissions in connection with the modification, adaption or construction of any building or property in order to make such building or property more accessible or accommodating to any disabled person.

10. Arising out of any labor disputes, labor negotiations, collective bargaining, collective bargaining agreements, grievance proceedings, labor arbitration proceedings, replacement of staff, lockouts, picket lines or any other activity protected under the National Labor Relations Act or similar state or local law.

11. Arising out of eminent domain, condemnation, inverse condemnation, temporary or permanent taking, adverse possession, or dedication by adverse use.

12. Arising out of any communicable disease or the transmission of any communicable disease.

13. Brought by any claimant's domestic partner, spouse, child, parent, sibling or other relative, other than as the legal representative of a claimant's Estate.

14. Arising out of:

   A. Breach of any written, oral, express, implied, actual or constructive contract, warranty, guarantee or promise (except as may be otherwise covered as a **Wrongful Employment Practice**); or

   B. The assumption of liability in a contract, agreement or warranty, whether written, oral, express, implied, actual or constructive. This does not apply to liability for otherwise covered **Damages** that the **Insured** would have in the absence of the contract or agreement.

15. Arising out of fraud, dishonesty, intentional acts or omissions, or criminal acts or omissions committed by or at the direction of the **Insured**, or the willful violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of the **Insured**. However, if a **Claim** made against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action subject to the Self-Insured Retention and defense provisions of this policy, until such time as a finding or judgment is entered that such conduct or violations occurred. The **Company** shall have no obligation to pay any monetary awards, amounts, fees, costs or expenses in connection with such a finding or judgment.

16. Arising out of failure to procure, obtain or maintain any insurance or bond, or the failure to advise or counsel with respect to the procuring, obtaining or maintaining of any insurance coverages, bonds or any other plan or agreement of risk transfer or assumption.

17. Arising out of any obligation or duty imposed by:

   A. The Employee Retirement Income Security Act (ERISA);

   B. The Pension Benefit Act;

   C. The Consolidated Omnibus Budget Reconciliation Act of 1988 (COBRA);

   D. The Fair Labor Standards Act; or

   E. SECTION 89 of the Internal Revenue Code;

   or any amendments thereto, or similar provisions of any federal, state or local, statutory or common law.

18. Seeking lost wages or arising out of salary disputes or federal, state or local wage or hours laws. This exclusion shall not apply to a claim for lost wages made in an otherwise covered **Wrongful Employment Practice Claim.**

19. Brought by or on behalf of one **Insured** against another **Insured**, however, with respect to a **Claim** alleging a **Wrongful Employment Practice,** this exclusion shall only apply to crossclaims or counterclaims brought by one **Insured** against another **Insured.**

20. For any investigatory, administrative, disciplinary or criminal proceedings or any notice of charges, including EEOC notices, against an **Insured**. However, at the **Company's** option and with its consent, such a proceeding or charge may be designated and treated as a **Claim** under this policy. Fees, costs or expenses incurred by any **Insured** in connection with such proceedings shall not go towards payment of the Self-Insured Retention unless the **Company** consents in writing.

21. Seeking equitable relief or redress in any form other than compensatory **Damages** or for costs, charges, fees or expenses in relation to any claim or suit seeking relief or redress in any form other than compensatory **Damages,** or for the costs of an **Insured's** compliance with the condition of any injunctive or equitable relief, or for any fines or penalties assessed from the failure to comply with any injunctive relief. However, if a **Claim** against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action subject to the Self-Insured Retention and defense provisions of this policy.

22. Arising out of duties performed by any **Insured** for anyone other than the **Named Insured**.

23. Arising out of a **Claim**, proceeding or other circumstance for which the **Named Insured** gave notice under any policy of insurance or program of self-insurance in effect prior to the inception date of this policy, including any prior policy issued by the **Company**.

24. Arising out of the rendering of or failure to render professional services, including but not limited to the following: healthcare services, psychological treatment, mental health counseling or treatment, and medical services or treatment.

25. Seeking fines or punitive, exemplary, treble or multiplied damages awards that are uninsurable under the law or public policy. However, if a **Claim** made against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action pursuant to the Self-Insured Retention and defense provisions of this policy, but the **Company** shall not have any obligation to pay for fines or punitive, exemplary, treble or multiplied damages awards or any costs or interest associated therewith.

26. Arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC section §§1961-68 et sequential, any amendments thereto, or any rules or regulations promulgated thereunder.

27. Arising out of self-dealing or gaining of any profit, remuneration or advantage to which an **Insured** is or was not legally entitled.

28. Arising out of any strikes, riots or civil commotion.

29. Arising out of:

   **A.** War, including undeclared or civil war; or

   **B.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any governmental sovereign or other authority using military personnel or other agents; or

   **C.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

30. Arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988) or any amendment thereto, or any similar federal, state or local law.

31. Arising out of any claim for which an **Insured** or other insurer may be held liable under any workers compensation law, unemployment law, unemployment compensation law, disability benefits law, or attributable to any obligations pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law.

32. Arising out of the destruction, theft, conversion, use or disappearance of money or securities.

33. Arising out of construction, architectural, or engineering contracts or any other contract for the purchase of goods or services.

34. Arising out of the failure to integrate, desegregate, allowing or refusal to allow enrollment or participation in school related activities or any educational or extracurricular program or facilities on the basis of race, gender, religion, ethnic background or national origin, including but not limited to the following:

   **A.** The transportation of students to or from schools or extracurricular events; and

**B.** Causing or allowing enrollment or participation in any activities, programs or facilities to be operated or administered on a discriminatory basis because of race, gender, religion, ethnic background or national origin.

35. Arising out of financial or revenue loss, financial shortfalls, failure to anticipate financial or revenue loss or shortfalls, interest, notes, loans, financial status, indebtedness, credit or credit status, debt security financing, investment of funds or failure to invest.

36. Arising out of the actual or threatened abuse, molestation, bullying or harassment, in any form, of a student or other person not employed by the **Insured** or the negligent employment, hiring, investigation, supervision, training, reporting to the proper authorities, or failure to so report, or retention of a person engaged or allegedly engaged in the actual or threatened abuse, molestation, bullying or harassment, in any form, of a student or other person not employed by or acting on behalf of the **Insured**.

**SECTION VII - DEFINITIONS**

Whenever used in this policy, the following words have these meanings:

1. **Automobile** means:

   **A.** Any land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

   **B.** Any other land vehicle that is subject to a compulsory financial responsibility law.

2. **Bodily Injury** means physical injury, sickness or disease and includes death and mental distress, anguish or suffering arising from such physical injury, sickness or disease.

3. **Claim** means any of the following received by an **Insured** and alleging a **Wrongful Act** during the **Policy Period** or subsequent to the Retroactive Date, if applicable:

   **A.** A written demand for **Damages** or a notice advising an **Insured** of an intent to sue for **Damages** or a right to sue for **Damages**;

   **B.** Notice of an arbitration or alternative dispute resolution proceeding seeking **Damages** to which the **Insured** must submit or does submit with the **Company's** consent; or

   **C.** A civil proceeding alleging **Damages** commenced by the service of a summons, complaint or similar pleading.

4. **Claims Expenses** means reasonable and necessary fees, costs and expenses charged by an attorney designated by the **Company**, or designated by the **Insured** with the prior written consent of the **Company**, in the investigation and defense of any **Claim** against the **Insured**, and all other fees, costs, and expenses resulting from the investigation, adjustment and defense of a **Claim**. **Claims Expenses** shall not include wages or salaries of employees of the **Company** or the **Insured**.

5. The **Company** means the insurer stated in the Declarations of this policy or its lawfully designated successor.

6. **Damages** means compensatory damages which the **Insured** is legally obligated to pay as a result of a judgment or settlement for a **Wrongful Act** covered by this policy.

7. **Employee** means a past or present employee of the **Named Insured**. **Employee** also includes a **Leased Worker**, but only if the **Named Insured** provides indemnification to such **Leased Worker** in the same manner as is provided to the **Named Insured's Employees**.

8. **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by **Fungi.**

9. **Insured** means a person(s) or organization(s) identified in **SECTION II - WHO IS AN INSURED.**

10. **Leased Worker** means a person leased to the **Named Insured** by a labor leasing firm under an agreement between the **Named Insured** and the labor leasing firm, to perform authorized duties for the **Named Insured**.

11. **Named Insured** means the entity named in the Declarations.

12. **Policy Period** means the period of time from the inception date of policy stated in the Declarations to the expiration date of this policy stated in the Declarations or to any earlier cancellation date of this policy.

13. **Policy Territory** means coverage is worldwide provided that the **Claim** is brought within the United States of America.

14. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

15. **Property Damage** means:

   **A.** Physical injury to or destruction of tangible property, including loss of use thereof at any time resulting there from; or

   **B.** Loss of use of tangible property which has been physically injured or destroyed.

16. **Wrongful Act** means any of the following committed by an **Insured** in the performance of the **Insured's** official duties for or on behalf of the **Named Insured**:

   **A.** Any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty in the performance of administrative or educational services on behalf of the **Named Insured** and in the course and scope of duties for the **Named Insured**; or

   **B.** Any **Wrongful Employment Practice.**

   **Wrongful Act** includes a series of connected or interrelated acts, errors, omissions, misstatements, misleading statements, neglect, breaches of duty, or **Wrongful Employment Practices** committed by one or more **Insureds** in performance of the **Insured's** official duties, all of which shall be considered one **Wrongful Act**.

17. **Wrongful Employment Practice** means any of the following acts or practices:

   **A.** Discrimination in hiring, promotion, advancement, opportunity, demotion, discipline or pay (including discrimination based on age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

   **B.** Harassment, coercion or creation of an intimidating, hostile or offensive work environment;

   **C.** Wrongful demotion, discipline, dismissal, reassignment, failure to promote, discharge or termination (whether actual or constructive);

   **D.** Wrongful failure to employ;

   **E.** Employment-related libel, slander, defamation, humiliation or invasion of privacy;

   **F.** Failure to provide or enforce adequate or consistent policies or procedures relating to employment practices;

   **G.** Employment-related violation of an individual's civil rights;

   **H.** Employment-related negligent infliction of emotional distress; and

   **I.** Retaliatory treatment due to the actual or attempted exercise of an **Employee's** rights under the law or an **Employee's** disclosure or threatened disclosure of activities by the **Insured** that may violate law or the **Employee's** cooperation in any investigation or proceeding into whether the **Insured's** activities may violate law.

**CLAIMS**

**Report All Claims To**

GREAT AMERICAN CUSTOM INSURANCE SERVICES

c/o CLAIMS OPERATIONS
725 S. Figueroa Street, Suite 3400
Los Angeles, CA 90017

*In an effort to adhere to our paperless environment,
please e-mail claims to the following address:
claims@gamcustom.com or eFax: (213) 430-8459

**Your Great American Insurance Policy**™

301 E. Fourth St., Cincinnati, OH 45202



MEMBER OF **GREATAMERICAN.** INSURANCE GROUP

**Great American Professional Risk Insurance Services**

800-545-4269

GAIG.com

© 2018 Great American Insurance Company

0790-C (03/18)

# CMBOE EXHIBIT C 003

Great American Insurance Co. of New York

GAI 6600 (Ed. 06/97)

| | |
|---|---|
| **Policy No.** | EXC2275340 |
| **Renewal Of** | EXC1603748 |

## COMMERCIAL EXCESS LIABILITY DECLARATIONS PAGE

| 1. **NAMED INSURED AND ADDRESS:** | 2. **POLICY PERIOD:** |
|---|---|
| Charlotte Mecklenburg Board of Education (As Per Underlying Insurance) 301 S. McDowell Street, Suite 1100 Charlotte, NC 28204-2659 | 12:01 A.M. Standard Time at the address of the Named Insured shown at left. From 07/01/2018          To 07/01/2019 |

| IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. | **PRODUCER'S NAME AND ADDRESS:** USI Insurance Services National, Inc. P.O. Box 220748 Charlotte, NC 28222 |
|---|---|

Insurance is afforded by: Great American Insurance Co. of New York

| 3. **PREMIUM:** | Total Advance Premium | $ | 85,000 |
|---|---|---|---|
| | Service Charge | $ | |
| | Taxes | $ | |
| | Surcharge | $ | |
| | Total | $ | 85,000 |

**BASIS OF PREMIUM:**     Non-Auditable     ( X )          Auditable     (     )

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ as a policy minimum premium.

| 4. **LIMITS OF INSURANCE:** | $ | 15,000,000 | Each Occurrence |
|---|---|---|---|
| | $ | 15,000,000 | Aggregate Limit (Where Applicable) |

These Limits of Insurance apply in excess of the Underlying Limits of Insurance indicated in Item **5.** of the Declarations.

**5. UNDERLYING INSURANCE:**

| **Carrier Information** | **Type of Coverage** | **Limits of Insurance** |
|---|---|---|
| See GAI6008 - Schedule A - Schedule of Underlying Insurance (Supplemental) | | |

6. **FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule, GAI 6013 (Ed.06/97).

GAI 6600 (Ed. 06/97)                    (Page 1 of 1)

Great American Insurance Co. of New York

GAI 6013 (Ed. 06/97)

## FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 1 | GAI6600 06/97 | NC | | Commercial Excess Liability Declarations Page |
| 2 | GAI6008 06/97 | NC | | Schedule A - Schedule of Underlying Insurance (Supplemental) |
| 3 | GAI6551 06/97 | NC | | Abuse or Molestation Exclusion |
| 4 | GAI6669 10/04 | NC | | Corporal Punishment Exclusion |
| 5 | GAI6011 06/97 | NC | | Non Drop Down for Excluded Coverages Exclusions |
| 6 | GAI6011 06/97 | NC | | Police Professional Exclusions |
| 7 | GAI6011 06/97 | NC | | Public Officials Liability Exclusion |
| 8 | GAI6965 10/14 | NC | | Following Form Endorsement |
| 9 | GAI7354 08/17 | NC | | Advance Notice of Cancellation and Nonrenewal Provided by Us |
| 10 | GAI6011 06/97 | NC | | Claims Made Endorsement - Following Form |
| 11 | GAI6011 06/97 | NC | | Non Accumulation of Limits of Insurance |
| 12 | GAI6011 06/97 | NC | | Non Drop Down Over Sublimits |
| 13 | GAI6452 04/15 | NC | | Cap On Losses From Certified Acts Of Terrorism |
| 14 | GAI6472 04/15 | NC | | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 15 | GAI6730 04/13 | NC | | North Carolina Changes |
| 16 | GAI6524 06/97 | NC | | Excess Liability Coverage Form |
| 17 | IL7268 09/09 | NC | | In Witness Clause |

*If not at inception

Great American Insurance Co. of New York

GAI 6008 (Ed. 06/97)

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE (SUPPLEMENTAL)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| 1. Safety National Casualty Corporation<br><br>a) Pol.# GLE4058956<br>7/1/2018 To 7/1/2019 | Commercial General Liability | $2,000,000 Per Occurrence<br>$4,000,000 General Aggregate<br>$4,000,000 Products-Completed Operations Aggregate<br>$2,000,000 Personal and Advertising Injury<br>In Excess of a $1,000,000 Self-Insured Retention |
| b) Pol.# CAE4058957<br>7/1/2018 To 7/1/2019 | Commercial Auto Liability (X) Any One Accident | $2,000,000 Combined Single Limit<br>In Excess of a $1,000,000 Self-Insured Retention |
| c) Pol.# XPE4058961<br>7/1/2018 To 7/1/2019 | Commercial Excess Liability | $3,000,000 Occurrence Limit<br>$3,000,000 Aggregate Limit<br>In Excess of Items a & b above. |

Great American Insurance Co. of New York

**GAI 6551**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABUSE OR MOLESTATION EXCLUSION

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability for or arising out of:

**(a)** the actual, threatened, or alleged abuse, molestation, harassment or sexual conduct by anyone of any person; or

**(b)** the negligent

   **(i)** employment,

   **(ii)** investigation,

**(iii)** supervision,

**(iv)** reporting to the proper authorities, or failure to so report,

**(v)** retention, or

**(vi)** referral

of a person for whom any Insured is or ever was legally responsible and whose conduct would be excluded by **(a)** above.

This endorsement does not change any other provision of the policy.

GAI 6551 (Ed. 06/97) XS

Great American Insurance Co. of New York

**GAI 6669**
(Ed. 10 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CORPORAL PUNISHMENT EXCLUSION**

**SECTION IV - EXCLUSIONS** is added as follows:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by, or related in any way, either directly or indirectly, and either in whole or in part, to corporal punishment administered to any pupil or student by or at the direction of any Insured.

**This endorsement does not change any other provision of the policy.**

GAI 6669 (Ed. 10/04) XS

# CMBOE EXHIBIT C 008

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

### GENERAL ENDORSEMENT

**Non Drop Down for Excluded Coverages Exclusions**

This policy shall not become excess of any reduced or exhausted underlying aggregate limit of liability or aggregate self-insured retention to the extent such reduction or exhaustion is the result of claims, damage, or loss arising out of any named insured entity or peril excluded by this policy.

This endorsement does not change any other provision of the policy.

GAI 6011 (Ed. 06/97)                    (Page 1 of 1)

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

**GENERAL ENDORSEMENT**

**Police Professional Exclusions**

Coverage under this policy is excluded with respect to or arising out of any act or omission of your police department, or any law enforcement agency of yours including their agents or employees.

This endorsement does not change any other provision of the policy.

GAI 6011 (Ed. 06/97)                     (Page 1 of 1)

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

## GENERAL ENDORSEMENT

### Public Officials Liability Exclusion

The following exclusion is added to Section IV - EXCLUSIONS:

Any coverage for Public Officials Liability as provided under Coverage Part B of Safety National Casualty Corporation policy #s GLE4058956 - CAE4058957 - XPE4058961

This endorsement does not change any other provision of the policy.

GAI 6965 (Ed. 10/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FOLLOWING FORM ENDORSEMENT

This endorsement modifies insurance provided under the following

EXCESS LIABILITY COVERAGE FORM

**INSURING AGREEMENTS I. COVERAGE** of this policy is deleted in its entirety and is replaced with the following:

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **INSURING AGREEMENT** Section II., **Limits of Insurance**. Except for Items **1.** through **8.** listed below, the coverage provided by this policy shall follow form and be in accordance with the insuring agreements, exclusions, definitions and conditions contained in the "first underlying insurance" identified below.

Insurance Company:  Safety National Casualty Corporation

Policy Number:          GLE4058956 - CAE4058957 - XPE4058961

**1.**   Limits of Insurance

**2.**   Policy Period

**3.**   Premium

**4.**   Schedule of Underlying Insurance

**5.**   Asbestos Exclusion

**6.**   Nuclear Energy Liability Exclusion

**7.**   Any other endorsement agreed upon by us and the Named Insured, and endorsed to this policy

**8.**   Cancellation provision

If any provisions of the "first underlying insurance" are more restrictive than items identified as **1.** through **8.** in this Endorsement, the provisions of the "first underlying insurance" shall apply.

In addition, the coverage provided by this policy will follow form and be in accordance with the limitations, exclusions or restrictions of coverage in any other "underlying insurance" to the extent coverage is further limited or restricted by a policy or endorsement of "underlying insurance."

In no event will this policy provide broader coverage in any respect than would be provided by any of the "underlying insurance."

**This endorsement does not change any other provision of the policy.**

GAI 6965 (Ed. 10/14)                              (Page 1 of 1)

# CMBOE EXHIBIT C 012

Great American Insurance Co. of New York

GAI 7354 (Ed. 08/17)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADVANCE NOTICE OF CANCELLATION AND NONRENEWAL PROVIDED BY US**

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE FORM

**Schedule**

Number of Days Notice - Cancellation    90

Number of Days Notice - Nonrenewal    90

If we cancel this Policy for any reason other than nonpayment of premium, the minimum number of days required for notice of cancellation, as provided in Paragraph **D. 2. Cancellation** of **SECTION VI. CONDITIONS** or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

The number of days required for notice of nonrenewal, as amended by an applicable state cancellation and nonrenewal endorsement, is increased to the number of days shown in the Schedule above.

**All other Policy terms and conditions remain unchanged.**

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

### GENERAL ENDORSEMENT

### Claims Made Endorsement - Following Form

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE FORM

I. COVERAGE - CLAIMS MADE

It is agreed that the insurance afforded by this policy is subject to the same terms, conditions, definitions, exclusions and warranties as contained in the claims-made coverage(s) described in the schedule of Underlying Insurance and/or item II. below.

II. CLAIMS MADE UNDERLYING INSURANCE

This policy shall apply to claims first made against the Insured and reported to the Company during the policy period for which coverage is provided by the following underlying claims made policy.

Schedule of Claims Made Insurance: Medical Incident Liability Coverage

Insurance Company: Safety National Casualty Corporation

Policy Number: As Per Form GAI6008

Limits of Insurance: As Per Form GAI6008

III. RETROACTIVE DATE

The retroactive dates for this policy are: As per Primary Binder on file with this Insurance Company.

This endorsement does not change any other provision of the policy.

GAI 6011 (Ed. 06/97)

### GENERAL ENDORSEMENT

### Non Accumulation of Limits of Insurance

The policy is amended as follows:

If this policy and any other policy issued to the insured by us or any company affiliated with us apply to the same occurrence, the most we will pay under all policies will not exceed the highest applicable limit of insurance under any one policy. Whenever an aggregate limit appears in the policy, the most we will pay under all policies will not exceed the highest applicable aggregate limit of insurance under any one policy. This endorsement does not apply to any policy issued by us or any company affiliated with us specifically to apply as excess over this policy.

This endorsement does not change any other provision of the policy.

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

## GENERAL ENDORSEMENT

### Non Drop Down Over Sublimits

Coverage is excluded for any "loss" provided by a sublimit in the "underlying insurance" unless such sublimit is specifically in the Item 5 of the Declarations.

This endorsement does not change any other provision of the policy.

# CMBOE EXHIBIT C 016

Great American Insurance Co. of New York

GAI 6452 (Ed. 04/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

> COMMERCIAL UMBRELLA
> EXCESS LIABILITY

The following is added to **SECTION II. LIMITS OF INSURANCE**:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
GAI 6452 (Ed. 04/15)

Great American Insurance Co. of New York

GAI 6472 (Ed. 04/15)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA
EXCESS LIABILITY

**Schedule\***

**Terrorism Premium (Certified Acts) $** 0

\* Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in paragraph D. below) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Federal Share of Losses Under the Terrorism Risk Insurance Act**

85% Year: 2015
84% Year: 2016
83% Year: 2017
82% Year: 2018
81% Year: 2019
80% Year: 2020

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Great American Insurance Co. of New York

GAI 6730 (Ed. 04 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NORTH CAROLINA CHANGES

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE FORM

Section **VI - CONDITION D. Cancellation**, Paragraph **2**, is deleted and replaced by the following:

**Cancellation**

**2. a. Cancellation Of Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** expiration of the policy term; or

**(2)** anniversary date, stated in the policy only for one or more of the following reasons:

**(a)** nonpayment of premium;

**(b)** an act or omission by the "Insured" or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** substantial breach of contractual duties, conditions or representations that materially affects the insurability of the risk;

**(e)** a fraudulent act against us by the "Insured" or his or her representative that materially affects the insurability of the risk;

**(f)** willful failure by the "Insured" or his or her representative to institute reasonable loss control measures that materially affects the insurability of the risk after written notice by us;

**(g)** loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S.58-41-30;

**(h)** conviction of the "Insured" of a crime arising out of acts that materially affect the insurability of the risk;

**(i)** a determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(j)** you fail to meet the requirements contained in our corporate charter, articles of incorporation or bylaws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

The following **CONDITION** is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(a)** expiration of the policy if this policy has been written for one year or less; or

**(b)** anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**2.** We need not mail or deliver the notice of nonrenewal if you have:

**(a)** insured property covered under this policy under any other insurance policy;

**(b)** accepted replacement coverage; or

**(c)** requested or agreed to nonrenewal of this policy.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice.

The written notice of cancellation or nonrenewal will:

**a.** be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy or, if not indicated in the policy, at their last known addresses; and

**b.** state the reason or reasons for cancellation or nonrenewal.

**This endorsement does not change any other provision of the policy.**

**GAI 6524**
(Ed. 06 97)

## EXCESS LIABILITY COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we," "us" and "our" refer to the Company providing this insurance. The word Insured means any person or organization qualifying as such in the "first underlying insurance." Other words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITIONS** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide the coverage as follows:

### INSURING AGREEMENTS

#### I. COVERAGE

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance.** Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

#### II. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay under the terms of this insurance regardless of the number of:

  **1.** Insureds;

  **2.** claims made or suits brought;

  **3.** persons or organizations making claims or bringing suits.

**B.** The Limits of Insurance of this policy will apply as follows:

  **1.** This policy applies only in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations.

  **2.** The aggregate limit shown in Item **4.** of the Declarations is the most we will

pay for all "loss" that is subject to an aggregate limit provided by the "first underlying insurance." The aggregate limit applies separately and in the same manner as the aggregate limits provided by the "first underlying insurance," provided that all "underlying insurance" applies their aggregate limit in the same manner as the "first underlying insurance."

  **3.** Subject to **B.2.,** the occurrence limit stated in Item **4.** of the Declarations is the most we will pay for all "loss" arising out of any one occurrence to which this policy applies.

  **4.** Subject to Paragraphs **B.2.** and **B.3.** above, if the "Underlying Limits of Insurance" described in Item **5.** of the Declarations are either reduced or exhausted solely by payment of "loss," such insurance provided by this policy will apply in excess of the reduced underlying limit or, if all underlying limits are exhausted, will apply as "underlying insurance" subject to the same terms, conditions, definitions and exclusions of the "first underlying insurance," except for the terms, conditions, definitions and exclusions of this policy.

GAI 6524 (Ed. 06/97) XS

Great American Insurance Co. of New York

However, we will not pay that portion of a "loss" that is within the "Underlying Limits of Insurance" which the Insured has agreed to fund by self-insurance or means other than insurance.

5. The limits of this policy apply separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations unless the policy period is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss." If we exercise such right, we will do so at our own expense, but not after the limits of this policy are exhausted.

## IV. EXCLUSIONS

This policy does not apply to:

A. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

  1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

  2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

  3. any obligation to investigate, settle or defend, or indemnify any person against any claim or suit arising out of or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

B. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

  1. the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused;

  2. any request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons;

  3. steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

C. Any liability excluded by the Nuclear Energy Liability Exclusion attached to this policy.

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 150 of 155

## V. DEFINITIONS

**A.** "First underlying insurance" means the policy or policies of insurance stated as such in Item **5.** of the Declarations.

**B.** "Loss" means those sums actually paid in the settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage.

**C.** "Underlying insurance" means "first underlying insurance" and all policies of insurance listed in Item **5.** of the Declarations.

**D.** "Underlying Limits of Insurance" means the total sum of the limits of all applicable "underlying insurance" stated in Item **5.** of the Declarations, including self-insurance, or means other than insurance.

## VI. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "Underlying Limits of Insurance," we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and interest incidental to this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **II.** of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any Insured or the bankruptcy, insolvency or inability to pay of any of the underlying insurers will not relieve us from the payment of any claim or suit covered by this policy.

In the event of bankruptcy or insolvency of any underlying Insurer, the insurance afforded by this policy will not replace such "underlying insurance," but will apply as if the "underlying insurance" was available and collectible.

### C. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

### D. Cancellation

**1.** You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

**2.** We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

**3.** The policy period will end on the day and hour stated in the cancellation notice.

**4.** If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

**5.** If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.

**6.** Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

**7.** The first Named Insured in Item **1.** of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

Case 3:22-cv-00045-RJC-DCK   Document 3-1   Filed 02/07/22   Page 151 of 155

**8.** Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

### E. First Named Insured Duties

The person or organization first named in Item **1.** of the Declarations is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for the giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

We will be furnished a complete copy of the "first underlying insurance" described in Item **5.** of the Declarations and any subsequently issued endorsements which may in any way affect this insurance.

### F. Legal Actions Against Us

There will be no right of action against us under this insurance unless:

**1.** you have complied with all the terms of this policy; and

**2.** the amount you owe has been determined by settlement with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

### G. Maintenance of Underlying Insurance

During the period of this policy, you agree:

**1.** to keep the policies listed in Item **5.** of the Declarations in full force and effect;

**2.** that the Limits of Insurance of the "underlying insurance" policies listed in Item **5.** of the Declarations will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for "losses" covered by "underlying insurance."

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

### H. Notice of Occurrence

**1.** You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim or suit which may involve this policy. To the extent possible, notice will include:

    **a.** how, when and where the occurrence took place;

    **b.** the names and addresses of any injured persons and witnesses;

    **c.** the nature and location of any injury or damage arising out of the occurrence.

**2.** If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.** You and any other involved Insured must:

    **a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

    **b.** authorize us to obtain records and other information;

    **c.** cooperate with us in the investigation, settlement or defense of the claim or suit; and

    **d.** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**4.** If the "Underlying Limits of Insurance" are exhausted solely by payment of "loss," no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

GAI 6524 (Ed. 06/97) XS         (Page 4 of 6)

# CMBOE EXHIBIT C 024

Great American Insurance Co. of New York

**I. Other Insurance**

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for funding of legal liabilities.

**J. Premium**

Unless otherwise provided, the premium for this policy is a flat premium and is not subject to adjustment except as provided herein or amended by endorsement. If any additional premium charge is made to the "underlying insurance" during the policy period or if there is an increase in the risk assumed by us, our premium may be adjusted accordingly.

**K. Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured.

**L. When "Loss" is Payable**

Coverage under this policy will not apply unless and until the Insured or the Insured's "underlying insurance" is obligated to pay the full amount of the "Underlying Limits of Insurance."

When the amount of "loss" has finally been determined, we will promptly pay on behalf of the Insured the amount of "loss" falling within the terms of this policy.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

**A.** Any liability, injury or damage:

1. with respect to which any Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** any Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

1. the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, any Insured or **(b)** has been discharged or dispersed therefrom;

2. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any Insured; or

3. the injury or "nuclear property damage" arises out of the furnishing by any Insured of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America,

GAI 6524 (Ed. 06/97) XS

(Page 5 of 6)

its territories or possessions or Canada, this Exclusion **B.3.** applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

**C.** As used in this exclusion:

**1.** "Hazardous properties" includes radioactive, toxic or explosive properties.

**2.** "Nuclear facility" means:

  **a.** any "nuclear reactor";

  **b.** any equipment or device designed or used for

    **(1)** separating the isotopes of uranium or plutonium,

    **(2)** processing or utilizing "spent fuel" or

    **(3)** handling, processing or packaging "nuclear waste";

  **c.** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **d.** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

**3.** "Nuclear material" means "source material," "special nuclear material" or by-product material.

**4.** "Nuclear property damage" includes all forms of radioactive contamination of property.

**5.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**6.** "Nuclear waste" means any "nuclear waste" material **(a)** containing "by-product material" other than the tailings of "nuclear waste" produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **C.2.a.** or **C.2.b.**

**7.** "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**8.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

Great American Insurance Co. of New York

**IL 72 68**
(Ed. 09 09)

### In Witness Clause

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

**President**                    **Secretary**

IL7268GG (09/09)
IL 72 68 (Ed. 09/09)

Copyright Great American Insurance Co., 2009