**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No.: 3:22-CV-45**

| | |
|---|---|
| **CYNTHIA JOHNSON,** | |
| **Plaintiff,** | |
| **v.** | |
| **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION and, CATHY BEAM, in her individual capacity** | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| **Defendants.** | |

Defendants Charlotte-Mecklenburg Board of Education (the "Board" or "Defendant Board") and Cathy Beam ("Defendant Beam"), (collectively referred to hereinafter as "Defendants"), by and through counsel, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit this Memorandum in Support of their Motion to Dismiss.

## SUMMARY OF ARGUMENTS

I.   **Pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's tort-based claims, including the claims for wrongful termination/discharge (First and Second Causes of Action), should be dismissed because Defendant Board is entitled to Governmental Immunity (N.C. Gen. Stat. § 115C-42).**

II.  **Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff has failed to state a claim under the North Carolina Retaliatory Employment Discrimination Act ("REDA") (Third Cause of Action).**

1.   **There is no close temporal connection between Plaintiff's filing of a worker's compensation claim and her termination to support a REDA claim;**

1

2. **Plaintiff has failed to allege a pattern of conduct to support causation;**

3. **Plaintiff has failed to allege that the relevant decision-maker knew that Plaintiff had filed a workers' compensation claim;**

4. **Throughout the Complaint, Plaintiff has presented a legitimate, non-discriminatory reason for her termination – her violations of CMS Board Policy; and**

5. **The purported REDA claim against Defendant Cathy Beam fails because she is not Plaintiff's employer and Plaintiff did not exhaust her administrative remedies for any purported REDA claim against Defendant Beam in her individual capacity.**

III. **Pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff has failed to state a claim for tortious interference of contract against Defendant Beam (Fourth Cause of Action). In addition, Defendant Beam has immunity and had a legitimate business interest of her own in as alleged in the Amended Complaint.**

IV. **Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's Section 1983 claims against Defendant Board (Fifth Cause of Action) under any theory should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff has failed to allege a constitutional violation by Defendant Board, and Plaintiff has failed to adequately plead municipal liability.**

V. **Pursuant to Rule 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure, Plaintiff's Section 1983 claims against Defendant Beam (Fifth Cause of Action) should be dismissed because she is entitled to Qualified Immunity.**

VI. **Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's Section 1981 claim should be dismissed because Plaintiff cannot maintain a freestanding Section 1981 claim against a municipal employer (Sixth Cause of Action). In addition, Plaintiff's Section 1981 claims against Defendant Board under any theory should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff has failed to allege a constitutional violation by Defendant Board, and Plaintiff has failed to adequately plead municipal liability.**

## **PROCEDURAL HISTORY AND RELEVANT FACTS**

Only for purposes of the issues addressed in Defendants' Motion to Dismiss and in this Memorandum in support thereof, the allegations in the Plaintiff's Complaint are accepted as true.

2

The allegations in Plaintiff's Amended Complaint can be summarized as follows:

- Plaintiff was an at-will employee who worked for Defendant Board as a School Nutrition Area Supervisor starting on or around August 4, 2014. (Doc. 1, Amended Complaint, ¶14).[1]

- Plaintiff sustained a workers' compensation injury on April 4, 2018, which she reported to her then-supervisor Angela Camalia. Plaintiff applied for worker compensation benefits, and the workers' compensation carrier paid her medical expenses. (¶¶ 28-31).

- Two days later, Plaintiff returned to work on April 6, 2018, at full capacity, after having two appointments to treat her injury. (¶¶ 2, 32).

- Plaintiff was terminated on October 23, 2018 based on her violation of Board Policy GBEB and her misrepresentation of household income which resulted in her family receiving free/reduced lunch of which they were not entitled. (¶ 2).

- Plaintiff appealed her termination to the Charlotte-Mecklenburg Board of Education. Through the appeal process, Plaintiff was able to submit documents and present oral testimony. After hearing the Plaintiff's appeal, the Board denied her appeal and concluded that her dismissal was proper and without error. (¶ 2).

## STANDARD OF REVIEW

Rule 12(b)(1) provides for dismissal of a claim where the court lacks jurisdiction over the subject matter of the lawsuit. The burden of proving subject-matter jurisdiction is on the plaintiff. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In determining whether subject matter jurisdiction exists, the court must regard the pleadings as "mere evidence" on the issue, and may consider evidence outside of the pleadings. *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The court should grant a 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *See id.*

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff must prove personal jurisdiction. *See, e.g., Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993).

---

[1] All subsequent Paragraph (¶) references will refer to the numbered paragraphs in the Amended Complaint, Doc. 1.

The court "must draw all reasonable inferences arising from the [plaintiff's] proof, and resolve all factual disputes, in the plaintiff's favor." *See id.*[2]

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Dismissal under 12(b)(6) is proper when it is clear the complaint does not allege facts properly supporting a claim for which relief can be granted. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To avoid dismissal, a plaintiff must present facts where "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Even though the court takes the factual allegations as true, a complaint must contain sufficient evidentiary facts to raise a plausible – as opposed to just conceivable – inference that the plaintiff is entitled to relief. *See Twombly*, 550 U.S. at 570; *see also Iqbal*, 550 U.S. at 678. As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). While a plaintiff may not be required to plead facts that constitute a prima facie case in order to withstand a motion to dismiss, she is nevertheless required to "set forth facts sufficient to allege each element of [her] claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002).

---

[2] A trend in recent North Carolina appellate decisions has been to treat governmental immunity as a question of personal jurisdiction. *See, e.g., Green v. Kearney*, 203 N.C. App. 260, 264, 690, 755, 760 (2010).

4

In evaluating whether a claim is stated, the court should not consider "legal conclusions, elements of a cause of action", "bare assertions devoid of further factual enhancement" and "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet v. Chevrolet, Ltd. v. Consumeraffairs.com Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A complaint must be dismissed where plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

**I. PLAINTIFF'S TORT-BASED CLAIMS, INCLUDING WRONGFUL TERMINATION/DISCHARGE (FIRST AND SECOND CAUSES OF ACTION), SHOULD BE DISMISSED BECAUSE DEFENDANT BOARD IS ENTITLED TO GOVERNMENTAL IMMUNITY (N.C. GEN. STAT. § 115C-42).**

North Carolina courts clearly recognize that a claim for wrongful discharge of an at-will employee constitutes a tort claim. *See Salt v. Applied Analytical, Inc.,* 104 N.C. App. 652, 662, 412 S.E.2d 97, 102–103 (1991) ("tort claim alleging wrongful discharge"); *McDonnell v. Guilford County Tradewind Airlines,* 194 N.C. App. 674, 678, 670 S.E.2d 302, 306 (2009) (wrongful discharge in violation of public policy is a tort claim); *Watts v. Charlotte-Mecklenburg Board of Education*, 2016 WL 503078 (W.D.N.C. 2016) (acknowledging the dismissal of Plaintiff's wrongful termination claim against the Board stating "the only cause of action, wrongful termination in violation of public policy, is barred by governmental immunity.").

A. Defendant Board has not waived its governmental immunity through the purchase of insurance.

North Carolina boards of education are entitled to governmental immunity from lawsuits alleging tortious or negligent conduct unless the Board waived its governmental immunity.

N.C. Gen. Stat. § 115C-42; *see Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148, 645 S.E.2d 91, 92-93 (2007) ("With respect to immunity, a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority."). Application of N. C. Gen. Stat. § 115C-42 is construed strictly against waiver. *Id.* at 149, 645 S.E.2d at 93. The purchase of insurance alone is not enough, however, to waive governmental immunity. *See Beatty v. Charlotte-Mecklenburg Bd. of Educ.*, 99 N.C. App. 753, 755, 394 S.E.2d 242, 244 (1990) (saying "[t]he statute makes clear that unless the negligence or tort is covered by the insurance policy, sovereign immunity has not been waived by the Board or its agents.").

The Affidavit of Betty Coulter, attached to the Motion to Dismiss, establishes that Defendant Board's purchase of excess policies with self-insured retention programs did not waive governmental immunity. Since Defendant Board cannot be required to pay any part of the self-insured retention of $1,000,000, then the excess policies provide no indemnification for tort claims. In other words, the excess policies never provide coverage if the Board is otherwise immune from the claim. The excess insurance policy does not waive governmental immunity because they only provide coverage if the Board has paid the retention amount. The Safety National policy also states that it "is not intended by the Insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 115C-42."

Federal and state courts in North Carolina have repeatedly upheld, through the process outlined above, that Defendant Board has not waived its governmental immunity. *See Capps v. Cumberland County Bd. of Educ.,* 2021 WL 4535699, *2021-NCCOA-538 (October 5, 2021) (unpublished); Magana at 146, 645 S.E.2d at 91; Doe v. Charlotte-Mecklenburg Bd. of Educ.,*

222 N.C. App. 359, 362, 731 S.E.2d 245, 247 (2012) (the appellate court noting that the trial court granted the Board's motion to dismiss for the alleged tort claims because the Board "had not waived immunity by the purchase of liability insurance."); *see also Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 2013 WL 5508370 (N.C. App. October 1, 2013) (unpublished).

There is no difference between the claims, or the applicable insurance policies, raised in the present case and those presented in *Capps*, *Magana*, *Doe,* and *Irving*. Simply put, "the purchase of a liability insurance policy will not waive governmental immunity when insurance coverage is triggered only upon the government entity's payment of the entire self-insured retention or retained limit." *Capps*, * 5 (paragraph 18).

Here, Defendant Board has paid no money for the tort claims in this action, it has not waived its immunity, and the carrier will provide no indemnification. For those reasons, the Plaintiffs' state law tort claims against Defendant Board, including the First and Second Causes of Action, should be dismissed with prejudice.


## II.        PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE NORTH CAROLINA RETALIATORY EMPLOYMENT DISCRIMINATION ACT ("REDA") (THIRD CAUSE OF ACTION).

In her Third Cause of Action, Plaintiff purports to allege a violation of REDA. As set forth in more detail below, Plaintiff's Amended Complaint fails to state claim for five reasons: (1) there is no close temporal connection between Plaintiff's August 4, 2018, worker's compensation injury/claim and her October 23, 2018, termination; (2) Plaintiff has failed to allege a pattern of conduct to support causation; (3) Plaintiff has failed to allege that the relevant decision-maker knew that Plaintiff had filed a workers' compensation claim; (4) on the face of

7

the Amended Complaint, Plaintiff has presented a legitimate, non-discriminatory reason for her termination – her violations of CMS Board Policy; and (5) the REDA claim against Defendant Beam fails because Plaintiff cannot sustain a REDA claim against Defendant Beam in her individual capacity (Defendant Beam is not Plaintiff's employer) and, even if she could, Plaintiff has failed to exhaust her administrative remedies.

To assert a REDA claim, a plaintiff must allege: (1) that she exercised her rights as listed under N.C. Gen. Stat. § 95-241(a); (2) that she suffered an adverse employment action; and (3) that the alleged retaliatory action was taken **<u>because</u>** the employee exercised her rights under N.C. Gen. Stat. § 95-241(a). *See Wiley v. United Postal Serv., Inc.,* 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004). The causal connection between the protected activity and the retaliatory discharge must be more than speculation. *See Swain v. Elfland*, 145 N.C. App. 383, 387, 550 S.E.2d 530, 534 (2001); *see also Johnson v. Trustees of Durham Tech.*, 139 N.C. App. 676, 682, 535 S.E.2d 357, 361 (2000) ("The [REDA] does not prohibit all discharges of employees who are involved in a workers' compensation claim, it only prohibits those discharges made *because* the employee exercises his compensation rights.").

A. <u>No close temporal connection or pattern of conduct</u>

To satisfy the causation element, a plaintiff must show (1) a close temporal proximity between the protected activity and the adverse employment action; or (2) a pattern of conduct. *See Wiley v United Parcel Service, Inc.,* 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004).

In this case, Plaintiff has made no allegations of a pattern of conduct. Consequently, the viability of Plaintiff's REDA claim hinges on the highly speculative allegation of a close temporal connection and nothing more – "The timing between Ms. Johnson's workers'

compensation injury and the termination also suggests that her termination was retaliatory. Defendants terminated Ms. Johnson's within five months of her workers' compensation injury." (Amended Complaint, ¶ 75).[3]

North Carolina courts have found **no close temporal relationship** between the filing of a workers' compensation claim and termination <u>four months</u> later.  *See Atkins v. Town of Wake Forest*, 829 S.E.2d 525 (2019) (unpublished).  Similarly, courts have found no close temporal relationship between the filing of a worker's compensation claim and termination of employment <u>two a half months </u>later.  *See Shaffner v. Westinghouse Elec. Corp.*, 101 N.C. App. 213, 216, 398 S.E.2d 657, 659 (1990).

According to the Amended Complaint, Plaintiff alleges that she sustained a workers' compensation injury on <u>April 4, 2018</u>, and reported it to her supervisor Angela Camalia. Plaintiff sought medical treatment, applied for workers' compensation benefits, and was able to return to work full capacity two days later on <u>April 6, 2018</u>.  (¶¶ 2, 27-28).

According to the Amended Complaint, on <u>October 23, 2018</u>, over six and a half-months after the April 4, 2018 workers' compensation claim, Plaintiff was terminated based on Plaintiff's violations of CMS Standards of Conduct (misrepresentation of household income which resulted in her family receiving free/reduced lunch of which they were not entitled). (¶ 2).

As our courts have found no close temporal connection between the filing of a workers' compensation claim and termination of employment separated by two and half months (*see Shaffner* above) and four months (*see Atkins* above), it follows that this court should conclude that no close temporal connection exists when the period in question <u>is six-and-a-half months.</u>

---

[3] Plaintiff's 5-month calculation is inaccurate.  Plaintiff was injured on April 4, 2018 and terminated on October 23, 2018, which is a period of 6 ½ months.  Whether the time is 5 months 6 ½ months, it is still too remote for causation purposes.

B.  No knowledge by the relevant decision-maker

As an additional ground supporting dismissal, Plaintiff has made no fact-based allegations that the relevant decision-maker (supervisor Defendant Cathy Beam) had knowledge of Plaintiff's workers' compensation claim.

In Brown v. Sears Automotive Center, 222 F.Supp.2d 757, 762-763 (M.D.N.C. 2002), the court concluded the retaliatory motive could **not** be established and that a REDA claim could **not** be stated where the decision-making supervisor did not know that the employee had engaged in protected activity.

According to the Amended Complaint, Plaintiff alleges that she sustained a workers' compensation injury on April 4, 2018 and reported it to her then-supervisor Angela Camalia. (¶2).  Plaintiff returned to work on April 6, 2018.  (¶2).  Plaintiff was later terminated on October 23, 2018, for violations of Board Policy.  (¶ 2).  There are no allegations that Defendant Beam (Executive Director), the relevant decision-maker, knew that Plaintiff had filed a worker's compensation claim six-and-a-half months earlier.

C.  Plaintiff has presented a legitimate, non-discriminatory reason for her termination on the face of the Amended Complaint

Finally, Plaintiff's own allegations rebut any inference or hint of retaliation.  On the face of the Amended Complaint, Plaintiff explicitly provided the Court with a non-discriminatory reason for her termination:  (1) Plaintiff, a School Nutrition Area Supervisor, was terminated for violating CMS Board Policy – "misrepresentation of household income, which resulted in her family receiving free/reduced lunch of which they were not entitled"; (2) Plaintiff appealed her termination to the Board; (3) the Board conducted a hearing, Plaintiff was represented by

10

counsel, and Plaintiff was able to provide evidence in support of her position; and (4) the Board upheld Plaintiff's termination.  (¶¶ 2, 78)

### D. No REDA claim against Defendant Beam

To the extent that Plaintiff's REDA allegations extend to Defendant Beam[4], that claim against her should be dismissed because Plaintiff cannot sustain a REDA claim against Defendant Beam in her individual capacity (Defendant Beam is not Plaintiff's employer), and even if she could, Plaintiff's claim would be subject to dismissal because she has failed to exhaust her administrative remedies.

Before filing a lawsuit under REDA, within 180-days of the alleged violation, a plaintiff must file a complaint with the North Carolina Commissioner of Labor, obtain a right-to-sue letter from the Commissioner, and file suit within 90 days of receiving that letter.  *See Whitfield v. DLP Wilson Med. Ctr., LLC,* No. 5:20-CV-91-FL, 2020 WL 5044216, at *7 (E.D.N.C. Aug. 26, 2020); *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 257 (2003)) ("[W]e hold the 180–day time limit for filing a REDA claim with the NCDOL is mandatory"); *see also* N.C. Gen. Stat. §§ 95-242(a), 95-243(b), (e)); *see also Satterwhite v. Wal-Mart Stores East, L.P.*, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012) (dismissing REDA claim where plaintiff failed to exhaust available administrative remedies).

According to the record, the North Carolina Department of Labor issued a Right to Sue letter on July 4, 2019, which listed Charlotte-Mecklenburg Schools as the Respondent, **not** Defendant Cathy Beam.  (Doc. 2).

---

[4] Plaintiff has cast the allegations contained in the Third Cause of Action against "All Defendants" which would include the Board and Cathy Beam in her individual capacity.

Plaintiff has not alleged that she has complied with the statutory prerequisite of filing a complaint with the North Carolina Department of Labor within the mandatory 180-day time period and obtaining a right-to-sue letter as it relates to Defendant Beam in her individual capacity. As a result, this Court lacks subject matter jurisdiction over the REDA claim against Defendant Beam and additionally and alternatively, the REDA claim against her fails under Rule 12(b)(6).

For the reasons stated above, Plaintiff's REDA claim should be dismissed with prejudice.

### III. PLAINTIFF'S TORTIOUS INTERFERENCE WITH CONTACT CLAIM AGAINST DEFENDANT BEAM SHOULD BE DISMISSED FOR FAILURE TO STATE A LEGAL CLAIM.

Plaintiff's tortious interference with contract claim should be dismissed because Defendant Beam is considered a non-outsider to the employment relationship, had a legitimate business interest in the employment contract/relationship at issue, and enjoys qualified immunity.

The elements of a claim for tortious interference with contract are as follows:

(1) A valid contract between the plaintiff and a third party which confers upon the plaintiff a contractual right against a third person;

(2) Defendant knows of the contract;

(3) The defendant intentionally induces the third person not to perform the contract;

(4) And in doing so acts without justification;

(5) Resulting in actual damage to the plaintiff.

*See Wagoner*, 113 N.C. App. at 587, 440 S.E.2d at 124.

North Carolina makes a distinction between defendants who are "outsiders" and "non-outsiders" to the contract. An outsider is "one who was not a party to the terminated contract and who had no legitimate business interest of his own in the subject matter thereof." *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010). A non-outsider is "one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." *Id*.

"Non-outsiders enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Combs*, 203 N.C. App. at 84, 690 S.E.2d at 725-26. Qualified immunity is lost only "if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992) (internal citations omitted). A non-outsider may be liable for tortious interference if the non-outsider acted with "legal malice," or "without any legal justification for his action." *Varner v. Bryan*, 113 N.C. App. 697, 702, 440 S.E.2d 295, 298 (1994) (citations omitted). A person acts with legal malice if "he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* "In order to demonstrate the element of acting without justification, the action must indicate 'no motive for interference other than malice.'" *Hubbard v. N.C. State Univ.*, 248 N.C. App. 496, 789 S.E.2d 915, 922 (2016).

A.  Defendant Beam Had a Legitimate Business Interest in the Subject Matter of the Terminated Employment Contract.

Because Defendant Beam is considered a non-outsider to the employee contract, she had a legitimate business interest of her own in the subject matter of the employment contract, and therefore, Plaintiff has failed to state a claim as outlined below.

13

In North Carolina, "employees of the contracting organization cannot commit tortious interference unless they have in fact interfered with the contract and the interference has no relation whatever to that legitimate business interest which is the source of the defendant's non-outsider status." *Ennett v. Cumberland County Bd. of Educ.*, 698 F.Supp.2d 557 (W.D.N.C. 2010).

In *Privette v. Univ. of North Carolina at Chapel Hill*, 96 N.C. App. 124, 385 S.E.2d 185 (1989), the plaintiff was a research scientist who charged that two doctors, the director and assistant director of the lab where plaintiff worked, interfered with his employment contract by having him discharged. Plaintiff Privette claimed that the defendants began a pattern of harassment against him because of his association with another doctor who supervised some of the plaintiff's work. Plaintiff Privette claimed that the defendants encouraged other research technicians to make false accusations against him because of this association. *See Privette*, 96 N.C. App. at 134-135, 385 S.E.2d at 191. The court found that as the director and assistant director of the laboratory, defendants "had a legitimate professional interest in the plaintiff's performance of his duties" and this interest foreclosed plaintiff from establishing the "without justification" element of malicious interference with contract. *Id.*; *see also Welch-Walker v. Guildford County Bd. of Ed.*, 2014 WL 6997596 (M.D.N.C. 2014) (where plaintiff alleged that the individual defendant was responsible for implementing district policies, acted in the course of her employment, and acted as agent of the school board, the individual defendant had a legitimate business interest in the employment contract between the plaintiff and the school board to preclude a tortious interference claim).

In this case, Defendant Cathy Beam, Executive Director, had legitimate reasons for terminating Plaintiff's employment given that Defendant Beam was Plaintiff's manager at the

14

time of termination and was aware of Plaintiff had been illegally receiving free/reduced lunch to which she was not entitled. Throughout the Amended Complaint, Plaintiff has articulated Defendant Beam's justification for terminating Plaintiff's employment and which rebut any legal malice.

In the Amended Complaint, Plaintiff has asserted:

- Plaintiff is a School Nutrition Area Supervisor. (¶ 14)

- Defendant Cathy Beam, an employee of CMS, is the Executive Director and Plaintiff's manager. (¶¶ 7, 26).

- Defendant CMS maintains supervision, oversight, and control over all other Defendants. (¶ 6).

- On September 26, 2018, Defendant Beam made Plaintiff the subject of an investigative review for the free/reduced lunch applications for a look-back period encompassing six years, 2012-2018 for the Mallard Creek Elementary School. (¶2)

- CMS has a designated person for which the applications for free/reduced lunch were sent in the Child Nutrition Office. (¶ 21).

- The review process for reviewing free/reduced lunch applications is mandated by the federal and/or state government to occur annually and prior to September of each year before the applications period expires. (¶ 22-24).[5]

- Plaintiff was unaware that her two children had been given free/reduced lunch status in the CMS System. (¶ 36)[6]

- After Cathy Beam's accusations against Mrs. Johnson were made known to Human Resources, CMS then located six (6) online free/reduced lunch applications in the system on behalf of Mrs. Johnson's children for the periods of 2012-2018/2019 school years. (¶ 41).

---

[5] This allegation is incorrect, is not supported by the law, and should be disregarded. Public schools in North Carolina are required to participate in the National School Lunch Program established by the federal government. *See* N.C. Gen. Stat. § 115C-264.

According to federal law, the free and reduced lunch verification deadline is November 15 of each school year. *See* 7 C.F.R. § 245.6a(b)(1). In addition, according to federal law, school districts must verify any questionable application and should, on a case-by-case basis, verify any application for cause such as an application on which a household reports zero income or when the local educational agency is aware of additional income or persons in the household. *See* 7 C.F.R. § 245.6a(c)(7).

[6] This allegation is implausible on its face. In addition, according to federal law, school boards are required to notify the household of their eligibility for free/reduced lunch. *See* 7 C.F.R. § 245.6(c)(6)(i). In addition, if parents notify the school that they decline free/reduced lunch, the school is required to discontinue the benefit. *See* 7 C.F.R. § 245.6(c)(6)(iii).

- On October 23, 2018, Defendants terminated Plaintiff for misconduct in violation of Board Policy GBEB – "Mrs. Johnson's misrepresentations of household income, which resulted in her family receiving free/reduced lunch of which they were not entitled." (¶¶ 2, 57).

- On February 28, 2019, Plaintiff had a termination appeal hearing before the CMS Board which upheld her dismissal. (¶ 78).

In short, Plaintiff's own allegations reveal that Defendant Beam, as Executive Director of School Nutrition, had a proper motive (legitimate supervisory, business interest) for her actions of reporting Plaintiff (a School Nutrition Area Supervisor) to Human Resources and later terminating Plaintiff. Defendant Beam had an interest in ensuring that her subordinates did not violate Board policy and a legitimate professional interest in Plaintiff's performance as a School Nutrition Area Supervisor. As in *Privette*, Defendant Beam's executive director status forecloses Plaintiff from establishing the "without justification" element of the tortious interference with contract claim as a matter of law. Plaintiff has failed to allege any non-conclusory facts that Defendant Beam acted with legal malice to overcome the qualified immunity that she enjoys.

Plaintiff's tortious interference of contract claim against Defendant Beam should be dismissed as a matter of law.

## IV. PLAINTIFFS' SECTION 1983 CLAIM AGAINST DEFENDANT BOARD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In *Monell v. Dept. of Social Services of City of New York*, the United States Supreme Court held that governmental entities cannot be liable for a Section 1983 claim under a theory of *respondeat* superior. *Monell*, 436 U.S. 658, 691 (1978) (saying "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held

16

liable under § 1983 on a *respondeat* superior theory."); *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

"A municipality can be found liable under Section 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This theory of liability requires the existence of an identifiable municipal policy or custom that caused the alleged injury. *See Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000); *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir 2009).

A municipal policy or custom arises in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *see also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cmm'rs of Bryan Cnty. v Brown*, 520 U.S. 397, 403-404 (1997). The Plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

17

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id*. at 405; s*ee also City of Canton*, 489 U.S. at 391-92.

To survive a motion to dismiss, a plaintiff asserting Section 1983 liability must assert factual allegations, and not simply legal conclusions, that the municipal entity caused the deprivation through an official policy, custom or a widespread practice. Courts "need not accept the legal conclusions drawn from the facts [alleged in a complaint], and [they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted); *see also Barrett v. Bd. of Ed. of Johnston County*, N.C., 590 Fed. Appx. 208, 210 (4th Cir. 2014) (unpublished) (saying "[t]here were no factual allegations showing that the Board had a policy, custom, or practice that led to the alleged violations.").

Here, Plaintiffs' Amended Complaint simply fails to allege any relevant fact-based allegations to support a Section 1983 claim. Defendant Board has an anti-discrimination policy, GBA (https://go.boarddocs.com/nc/cmsnc/Board.nsf/Public?open&id=policies#) which is a matter of public record.[7] In addition, Plaintiffs' Amended Complaint fails to describe any practice of the Board that is "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with force of law." In addition, the allegations in the Amended Complaint fail to rise to the level of deliberate indifference to Plaintiff's constitutionally based equal protection rights.

---

[7] The Court can take judicial notice of matters of public record. "In reviewing a Rule 12(b)(6) dismissal, [courts] may properly take judicial notice of matters of public record." *See Phillis v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiff has failed to sufficiently allege facts supporting Section 1983 municipal liability that satisfies the Rule 12(b)6) pleading requirements; therefore, Plaintiff's Section 1983 claim is subject to dismissal.

## V. PURSUANT TO RULE 12(B)(1), (2), AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE, PLAINTIFF'S SECTION 1983 CLAIMS AGAINST DEFENDANT BEAM SHOULD BE DISMISSED BECAUSE SHE IS ENTITLED TO QUALIFIED IMMUNITY.

In Paragraph 150 of the Amended Complaint, Plaintiff purports to bring a Section 1983 claim against Defendant Beam: "Defendant Beam is sued in her individual and official capacity under 42 U.S.C. 1983 for her actions taken under color of state law that violated Plaintiff's Equal Protection Rights." (¶ 150).

The Section 1983 claim against Defendant Beam in her official capacity should be dismissed as duplicative. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 399 (M.D.N.C. 2004) (dismissing official capacity claims against individual defendants where the governmental entity was also sued).

Qualified immunity is a doctrine that protects government officials from civil liability, if "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cty.,* 713 F.3d 723, 731 (4th Cir. 2013). Qualified immunity "strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions" by precluding an award of "money damages as a result of 'bad guesses in gray areas.'" *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011).

19

To determine whether qualified immunity applies, the Court determines whether the facts, taken in the light most favorable to the non-movant, establish that the official violated a constitutional right, and if necessary, determines if the right was clearly established to a reasonable person. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may also "determine whether the constitutional rights allegedly violated ... were clearly established without first determining whether those rights exist at all." *See e.g., Braun*, 652 F.3d at 560. A right is clearly established if "in the light of pre-existing law, the unlawfulness of the actions is apparent"; the law does "not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007).

To assert a claim under section 1983 for a violation of the equal protection clause, Plaintiff is "required to plead sufficient facts to 'demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Adams v. Trs. of Univ. of N.C. Wilmington*, 640 F.3d 550, 566 (4th Cir. 2011). "The equal protection clause confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (*citing Davis v. Passman*, 442 U.S. 228, 234-35 (1979)).

Claims of discrimination in employment under § 1983 are evaluated under the Title VII framework. *See Love-Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004) ("Specifically, the *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims under [Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983]."); *Beardsley v.*

*Webb*, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983."); s*ee also Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010).

To establish a claim under *McDonnell Douglas*, a plaintiff must put forth a prima facie case of discrimination by establishing that: (1) she is a member of a protected class; (2) she "suffered an adverse employment action"; (3) her job performance was satisfactory; and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004); *see Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x. 745, 747 (4th Cir. 2017).

To be similarly situated, the employees must have been disciplined by the same supervisor. *See McDougal-Wilson v. Goodyear Tire and Rubber Co.*, 427 F.2d 595,610 (E.D.N.C. 2006); *see also Forrest v. Transit Mgmt of Charlotte, Inc.*, 245 Fed.Appx. 255, 257 (4th Cir. 2007) ("If different decision-makers are involved, employees are generally not similarly situated."); *see also Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful.").

In this case, Plaintiff has failed to allege any facts that Defendant Beam treated Plaintiff differently than similarly-situated employees. In this case, Plaintiff has alleged:

- Additionally, Ms. Johnson learned that a similar situation involving the free/reduced lunch program occurred with the Soares' family between October - December 2018, where both the husband and the wife worked for CMS, but the female employee, Mrs. Soares, was terminated, while the male employee, Mr. Soares was not terminated. Mr.

Soares was given an opportunity to demonstrate he had not signed the online application. (¶ 59).

- ▪ This was a stark difference in treatment by CMS as between the females, Mrs. Johnson, Mrs. Soares, and the male. Mr. Soares, who were similarly situated, especially since both of the Soares' were employed by CMS, and Mr. Johnson was not employed by CMS. (¶ 60).

- ▪ In the case at bar, Defendants did not give Mrs. Johnson the same opportunity as Mr. Soares, but rather attributed the application forms allegedly completed by Mr. Johnson to Mrs. Johnson. In both situations, however, the males received the more favorable treatment. Mr. Soares kept his job instead of Mrs. Soares for the same alleged action; and Mrs. Johnson was held accountable and liable for CMS' conclusion that the application forms were purportedly completed by her husband, Mr. Johnson, a non-CMS employee. (¶ 61).

- ▪ Defendants, whether intentionally, or by disparate impact, elected to treat its male and female employees substantially different for similarly situated individuals. (¶ 62).

There are no fact-based allegations that the Plaintiff and Mr. Soares were similarly-situated other than the allegation that they both worked for CMS. The absence of those allegations is fatal to Plaintiff's discrimination claim.

As noted by one court:

> … when different decision-makers are involved, two decisions are rarely similarly-situated in all relevant respects. Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently. These distinctions sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination.

*See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

For the reasons stated above, the Section 1983 claim against Defendant Beam should be dismissed with prejudice.

# VI. PLAINTIFF'S CLAMS AGAINST DEFENDANT ARISING UNDER 42 U.S.C. § 1981 SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A LEGAL CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In her Sixth Cause of Action, Plaintiff asserts a race-discrimination claim in violation of the provisions of 42 U.S.C. § 1981 ("Section 1981"). Plaintiff has made no race discrimination claims under 42 U.S.C. § 1983 ("Section 1983"). Plaintiff's Sixth Cause of Action cannot stand because no freestanding claim against a municipal employer exists under Section 1981.

In *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989), the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."

In *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995), the Court of Appeals for the Fourth Circuit upheld dismissal of plaintiff's Section 1981 claims, stating that the claims "[ran] afoul of *Jett*]. Other courts have ruled similarly. *See McGovern v. City of Phila*, 554 F.3d 114, 120-21 (3rd Cir. 2009) ("the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) ("[N]o independent cause of action against municipalities is created by § 1981(c).").

Even if Plaintiff's Section 1981 were evaluated under Section 1983, the claim would fail for the reasons set forth in Section IV above. Plaintiff has identified no policy, practice, or custom of intentional racial discrimination and has not alleged any elements of a racial discrimination claim.

For these reasons, Plaintiff's Section 1981 claim should be dismissed.

23

**VII.     CONCLUSION**

For the reasons stated herein, the Defendants respectfully request that the Court dismiss this action in its entirety with prejudice

Respectfully submitted, this the 7th day of February 2022.

/s/ Terry L. Wallace
Terry L. Wallace
NC Bar # 26806

**WALLACE LAW FIRM PLLC**
6000 Fairview Road, Suite 1200
Charlotte, NC 28210
T: (704) 626-2903
F: (704) 626-3476
E:  terry@wallacelawnc.com

Attorney for Defendants

## CERTIFICATE OF SERVICE

This is to certify that on this date the undersigned filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** using the Court's CM/ECF system which will send notification of such filing to any CM/ECF participants.

Lawrence Wooden
Wooden Bowers Vinson PLLC
Suite 810
Charlotte, NC 28262

This the 7th day of February 2022.

/s/ Terry L. Wallace
Terry L. Wallace
N.C. State Bar No. 26806

**WALLACE LAW FIRM PLLC**
6000 Fairview Road; Suite 1200
Charlotte, North Carolina 28210
Phone:      704-626-2903
Fax:          704-626-3476
Email: terry@wallacelawnc.com