**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.  3:22-CV-045-RJC-DCK**

| | | |
|---|---|---|
| **CYNTHIA JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **CHARLOTTE-MECKLENBURG BOARD** | ) | |
| **OF EDUCATION, and CATHY BEAM,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss" (Document No. 3).  This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition.  Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> with respect to Plaintiff's claim of wrongful discharge in violation of public policy against Defendant Board, Plaintiff's REDA claim against Defendant Beam, Plaintiff's claim for tortious interference with contract against Defendant Beam, Plaintiff's § 1983 claim against Defendant Beam in her official capacity, and Plaintiff's § 1981 claim against Defendant Board; and <u>denied</u> with respect to Plaintiff's constitutional claim of wrongful termination against Defendant Board, Plaintiff's REDA claim against Defendant Board, and Plaintiff's § 1983 claims against Defendant Board and against Defendant Beam in her individual capacity.

## I.  BACKGROUND

Plaintiff Cynthia J. Johnson ("Plaintiff" or "Mrs. Johnson") initiated this action with the filing of a Complaint in Mecklenburg County Superior Court in May 2019.  (Document No. 4, p. 1).  Plaintiff filed a voluntary dismissal without prejudice of the original action in February 2020

and refiled this action within one year in August 2020. Id. At that time, Plaintiff asserted claims against Defendant Charlotte-Mecklenburg Board of Education ("Defendant Board") for wrongful termination in violation of the North Carolina Constitution, wrongful discharge in violation of public policy, and violation of the North Carolina Retaliatory Employment Discrimination Act (REDA); Plaintiff also asserted claims against Defendant Beam for tortious interference with contract and violation of the North Carolina Retaliatory Employment Discrimination Act (REDA). (Document No. 1-1, pp. 2-27).

After filing a "Pre-Answer Motion To Dismiss" on or about November 6, 2020, Defendants participated in a hearing in Mecklenburg County Superior Court on December 16, 2020 on the motion. Id. at pp. 28, 189.

Plaintiff filed a "Motion To Amend Complaint To Add Claims" on or about October 7, 2021. Id. at pp. 193-94. Plaintiff then filed her First Amended Complaint on December 29, 2021, which asserted claims for violations of 42 U.S.C. §§ 1981 and 1983 against Defendant Board and a claim for violation of 42 U.S.C. § 1983 against Defendant Beam, in addition to the claims originally asserted in Plaintiff's original Complaint. Id. at pp. 195-264.

As detailed in her First Amended Complaint, Plaintiff, an African-American female, alleges that she "was a loyal, high performing employee in the school systems of Cabarrus County, Gaston County, and Mecklenburg County for over eleven years, with four of those years working for Defendants in Mecklenburg County" as a "School Nutrition Area Supervisor." Id. at pp. 234-35, 238. Plaintiff alleges that she received very positive performance evaluations during her time as an employee of the school system and, "in her performance reviews for 2016, 2017, and 2019, she was expressly observed as being honest and trustworthy." Id. at p. 238.

On or about April 4, 2018, Plaintiff suffered an injury while working, sought medical treatment for the injury, and subsequently applied for workers' compensation benefits, returning to work in full capacity shortly thereafter. Id. at p. 240. Plaintiff alleges that she "document[ed] the injury with her then supervisor, Angela Camalia" and also that she "made her report to Cathy Beam and others within the CMS organization of her workers' compensation injury and inquired of her work status." Id. at pp. 235, 257. Plaintiff alleges that she "began noticing a different interaction at work" immediately following the incident and that on September 26, 2018, her supervisor/manager Defendant Beam "suddenly made [Plaintiff] the subject of an investigative review for the free/reduced lunch applications for a look-back period encompassing six years." Id. at p. 235. Plaintiff alleges that this investigative review occurred "*after* the state and federal prescribed review process" for the applications had expired and that Defendant Beam, "without any supporting documentation or justification, reported to Human Resources that [Plaintiff] was falsifying documents and suspected of wrongdoing." Id. at pp. 239-40. Following Defendant Beam's report to Human Resources, "CMS then located six (6) online free/reduced lunch applications in the system on behalf of [Plaintiff's] children, for the periods 2012-2018/2019 school years." Id. at p. 242.

Plaintiff alleges that she "was unaware that her two children had been given free/reduced lunch status in the CMS System," that her children were similarly unaware, and that "at all relevant times, [she] diligently and continuously funded her children's lunch account." Id. at p. 241. Plaintiff alleges that these applications were unauthenticated with respect to who submitted them and "it is undisputed that [Plaintiff's] signature was not on any of" the application forms. Id. at p. 242. Plaintiff alleges that she "was not given an opportunity to demonstrate that she had not submitted any online applications, in spite of the fact her signature was nowhere on the

applications," and that Defendants ultimately concluded the online applications were completed by Plaintiff's husband, Gerald Johnson, Jr., despite producing little to no evidence or receipts in support of this conclusion.  Id. at p. 243.

Plaintiff alleges that on October 10, 2018, she "was suspended for free/reduced lunch applications which she did not complete or submit."  Id. at p. 235.  Plaintiff "refused to resign and Defendants fired her on October 23, 2018."  Id. at pp. 235-36.

Plaintiff also alleges that "a similar situation involving the free/reduced lunch program occurred" between October and December 2018 with another family, "where both the husband and the wife worked for CMS, but the female employee, Mrs. Soares, was terminated, while the male employee, Mr. Soares was not terminated."  Id. at p. 244.  Further, Plaintiff alleges that "Mr. Soares was given an opportunity to demonstrate that he had not signed the online application."  Id.

Prior to commencing this action, Plaintiff "timely filed a REDA complaint with the North Carolina Department of Labor ('NCDOL')" on or about April 3, 2019.  Id. at p. 248.  Plaintiff "received her right to sue letter on July 3, 2019, for which she subsequently filed her Amended Complaint on July 5, 2019."  Id.

Defendants removed this action to the Western District of North Carolina on January 31, 2022, filing a "Notice of Removal."  (Document No. 1).  Defendants then filed the pending "Defendants' Motion to Dismiss" (Document No. 3) Plaintiff's First Amended Complaint on February 7, 2022.  Plaintiff filed "Plaintiff's Response Memorandum in Opposition to Defendant's Motion to Dismiss" (Document No. 4) on February 22, 2022.  Defendants then filed the "Reply Brief By Defendants" (Document No. 7) on March 7, 2022.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

4

## II.  STANDARD OF REVIEW

**Motion To Dismiss Under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).  The plaintiff has the burden of proving that subject-matter jurisdiction exists.  See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  The existence of subject-matter jurisdiction is a threshold issue the court must address before considering the merits of the case.  Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).  "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed."  Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, 945 F.2d at 768.  The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id.; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

**Motion To Dismiss Under Rule 12(b)(2)**

A motion to dismiss under Rule 12(b)(2) seeks to dismiss a complaint for lack of personal jurisdiction.  Fed.R.Civ.P. 12(b)(2).  A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant.  New Wellington Fin. Corp. v.

<u>Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 294 (4th Cir. 2005); <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence…[W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

<u>Combs</u>, 886 F.2d at 676 (internal citations omitted).

"Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." <u>Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.</u>, 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." <u>IMO Indus., Inc. v. SEIM S.R.L.</u>, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant…factual conflicts must be resolved in favor of the party asserting jurisdiction …." <u>Id.</u> (internal citations omitted).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 119 (2014). Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's

6

contacts with the forum.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

**Motion To Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'"  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual

7

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

Defendants' "Motion To Dismiss" asks the Court to dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6). The undersigned will analyze each of Defendants' arguments for dismissal of Plaintiff's claims below.

### A. Plaintiff's Wrongful Termination and Wrongful Discharge Claims Against Defendant Board (First and Second Causes of Action)

Defendants simultaneously move to dismiss "Plaintiff's state law tort claims against Defendant Board, including the First and Second Cause of Action," because of governmental immunity. (Document No. 3-2, p. 7). Defendants contend that the Court lacks subject-matter jurisdiction and personal jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) to hear such claims and that Plaintiff failed to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) because the Board did not waive its governmental immunity with respect to tort claims under N.C. Gen. Stat. § 115C-42. (Document No. 3-2, pp. 1, 5-7). Defendants contend that the Board's "purchase of excess policies with self-insured retention programs did not waive governmental immunity." Id. at p.6. Given that Defendant Board "cannot be required to pay any part of the self-insured retention of $1,000,000[,]...the excess policies never provide coverage if the Board is otherwise immune from the claim." Id. at p. 6.

According to an affidavit that Defendants submitted in support of the motion to dismiss, "with respect to claims for bodily injury and property damage, CMS [Charlotte-Mecklenburg Schools] had a self-insured retention of $1,000,000 per occurrence" during the 2018-2019 fiscal year. (Document No. 3-1 at p.2). The affidavit also states that "CMS did not have any liability

insurance during that fiscal year covering claims for tort claims of $1,000,000 or less." Id. For claims above the self-insured retention amount, CMS had four "excess liability policies." See id. CMS had two excess liability policies provided by Safety National Policies, under which coverage "is triggered for bodily injury or property damage claims only if CMS becomes liable for and pays the first $1,000,000 for a claim." Id. CMS has a third excess policy provided by Safety National Policy for Educator's Legal and Employment Practices. Id. This policy provides coverage for "Wrongful Acts" in the context of "Educators Legal Liability and Employment Practices Liability," subject to a self-insured retention of $250,000 per Wrongful Act. Id. at p. 108. This policy also specifically states that it is *not* intended to waive sovereign immunity. Id. at pp. 114, 122. Finally, CMS has a commercial excess liability policy provided by Great American Insurance Company. Id. at p. 3. Coverage under the Great American Policy "is triggered only if coverage under the Safety National Policies are exhausted." Id. Because of governmental immunity, the affidavit explains that "CMS will never be liable for, and will never pay, the first $1,000,000" of the claims that would trigger coverage under these excess liability policies. Id. at p. 4.

Plaintiff, on the other hand, contends that by specifically alleging a waiver of governmental immunity, she has sufficiently stated a cause of action. (Document No. 4, p. 5) (citing Paquette v. Cnty. Of Durham, 573 S.E.2d 715, 717 (N.C. Ct. App. 2002)). Plaintiff also contends that the employer-employee relationship is "essentially contractual in its nature" and should be governed by contract law as opposed to tort, and that "[i]t has long been recognized that government[al] immunity is not an available defense for contract claims." Id. (citing Paquette, 573 S.E.2d at 718).

Defendants reply by pointing out that Plaintiff misapplies Paquette. (Document No. 7, p. 2). The contractual claim at issue in that case was one of unpaid wages. Id. (citing Paquette, 573

9

S.E.2d at 718). Defendants highlight that the court in <u>Paquette</u> "specifically noted that 'a claim for wrongful discharge is a tort claim' subject to dismissal based on governmental immunity." <u>Id.</u>

Under North Carolina law, "boards of education are entitled to governmental immunity from lawsuits that allege tortious or negligent conduct unless the Board waived governmental immunity." <u>RM <i>ex rel</i>. MM v. Charlotte-Mecklenburg Cnty. Bd. of Educ.</u>, No. 3:16-CV-528-GCM, 2017 WL 2115108, at *3 (W.D.N.C. May 15, 2017); <u>see also</u> <u>Magana v. Charlotte-Mecklenburg Bd. of Educ.</u>, 645 S.E.2d 91, 92 (N.C. Ct. App. 2007) ("a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority"). Waiver of such immunity occurs "by the act of obtaining" insurance, but "only to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42. Assertion of the governmental immunity defense "presents a question of jurisdiction," although "North Carolina courts have not resolved whether the sovereign immunity defense challenges personal jurisdiction or subject-matter jurisdiction." <u>Frye v. Brunswick Cnty. Bd. of Educ.</u>, 612 F. Supp. 2d 694, 700-01 (E.D.N.C. 2009); <u>accord</u> <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001).

The undersigned acknowledges the Western District of North Carolina's history of construing N.C. Gen. Stat. § 115C-42 "against finding a waiver of sovereign immunity," as "[t]he purchase of a policy of insurance alone is not enough to waive governmental immunity." <u>Collum v. Charlotte-Mecklenburg Bd. of Educ.</u>, No. 3:07-CV-534-RJC-DSC, 2010 WL 702462, at *7 (W.D.N.C. Feb. 23, 2010); <u>accord</u> <u>Grier v. Gray</u>, No. 3:17-CV-486-FDW-DSC, 2018 WL 4620628, at *5 (W.D.N.C. Sept. 26, 2018); <u>Sutton v. Charlotte-Mecklenburg Sch.'s</u>, No. 3:18-CV-161-FDW-DCK, 2018 WL 3637366, at *6 (W.D.N.C. July 31, 2018); and <u>RM <i>ex rel.</i> MM</u>,

2017 WL 2115108, at *4. So, too, has the North Carolina Court of Appeals found no waiver of immunity where the Board of Education possessed excess liability policies for claims exceeding $1,000,000 but only a self-insured retention up to that amount. Irving v. Charlotte-Mecklenburg Bd. of Educ., 2013 WL 5508370, at *2-*3 (N.C. Ct. App. Oct. 1, 2013) ("because the school board had not purchased liability insurance for any amount below the $1,000,000 coverage limit, it had not waived its immunity for any damages under $1,000,000"); Magana, 645 S.E.2d at 93 (same).

The facts of this case are sufficiently similar to the above cases to warrant a conclusion that Defendant Board did not waive its sovereign immunity through the purchase of excess liability policies. Although the Educators Legal And Employment Practices Liability coverage is subject to a self-insured retention amount of $250,000, which is less than the $1,000,000 amount to which Defendants refer, it is nonetheless an excess liability policy that explicitly states it is not intended to waive a defense of sovereign immunity for the insured. The undersigned thus finds that Defendant Board has not purchased insurance coverage for relevant damages under $250,000, and because sovereign immunity will prevent liability for such tort claims in the first place, these excess policies will never be triggered. See Irving, 2013 WL 5508370, at *2-3. As Defendant states, the insurance coverage under the excess policy never kicks in if Defendant never pays the self-insured retention amount. Id.

Thus, the undersigned finds that Defendant Board has not waived its governmental immunity through the purchase of insurance. The undersigned agrees with Defendants that wrongful discharge from employment in violation of public policy is recognized as a tort claim subject to governmental immunity. Paquette v. Cnty. Of Durham, 573 S.E.2d 715, 718 (N.C. Ct. App. 2002); see Brackett v. SGL Carbon Corp., 580 S.E.2d 757, 761-62 (N.C. Ct. App. 2003) ("Wrongful discharge in violation of public policy is a tort claim…."). Thus, Defendants are

11

correct that a dismissal of Plaintiff's tort-based claim of wrongful discharge in violation of public policy (second cause of action) is appropriate on the basis of governmental immunity, and the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's second cause of action be granted.

However, the undersigned finds that Defendants incorrectly characterize Plaintiff's *constitutional* cause of action for wrongful termination as a state law *tort* claim barred by governmental immunity. The undersigned will now consider Defendants' motion to dismiss Plaintiff's constitutional claim.

### i. Plaintiff's Claim for Wrongful Termination in Violation of the North Carolina Constitution (First Cause of Action)

Sovereign immunity is not a bar to the assertion of constitutional rights. See Craig *ex rel.* Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 355 (N.C. 2009). "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under [the North Carolina] Constitution." Corum v. Univ. of N.C. *ex rel.* Bd. of Governors, 413 S.E.2d 276, 289 (N.C. 1992). Importantly, "a claim that is barred by sovereign or governmental immunity is not an adequate remedy." Deminski *ex rel.* C.E.D. v. State Bd. of Educ., 858 S.E.2d 788, 793 (N.C. 2021) (internal citations omitted).

However, "governmental immunity is an immunity from suit rather than a mere defense to liability." Martinez v. Wake Cnty. Bd. of Educ., 813 S.E.2d 658, 662 (N.C. Ct. App. 2018) (quoting Doe v. Charlotte-Mecklenburg Bd. of Educ., 731 S.E.2d 245, 248 (N.C. Ct. App. 2012)). As such, "courts must evaluate the validity of constitutional claims because otherwise plaintiffs could 'simply re-label claims that would otherwise b[e] barred on governmental immunity grounds as constitutional in nature.'" Davis v. Blanchard, 175 F.Supp.3d 581, 592 (M.D.N.C. 2016) (quoting Doe, 731 S.E.2d at 251).

12

Here, Plaintiff alleges that Defendant Board failed to protect her constitutionally guaranteed right under N.C. Const. art. 1, § 1 to "enjoy the fruits of one's own labor." (Document No. 1-1, p. 249). The law with respect to claims under this particular provision of the North Carolina Constitution is "admittedly sparse." Tully v. City of Wilmington, 810 S.E.2d 208, 216 (N.C. 2018). Tully narrowly held:

> [T]o state a direct constitutional claim grounded in this unique right under the North Carolina Constitution, a public employee must show that no other state law remedy is available and plead facts establishing three elements: (1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation. If a public employee alleges these elements, he has adequately stated a claim that his employer unconstitutionally burdened his right to the enjoyment of the fruits of his labor.

Id. The court stated that "Article I, Section 1 also applies when a governmental entity acts in an arbitrary and capricious manner toward one of its employees by failing to abide by promotional procedures that the employer itself put in place." Id. at 215.

The North Carolina Court of Appeals recently extended the holding of Tully beyond employment promotional processes to include violations of internal employment disciplinary policies. See generally Mole' v. City of Durham, 866 S.E.2d 773 (N.C. Ct. App. 2021) (finding a plausible claim under § 1 when the state employer gave the plaintiff only 24 hours' notice of his pre-disciplinary conference instead of the minimum 72 hours' notice mandated by policy). However, this case is currently on appeal to the North Carolina Supreme Court. Mole' v. City of Durham, 828 S.E.2d 851 (N.C. 2022).

The undersigned finds that Plaintiff has plausibly alleged the violation of an internal employment disciplinary policy as in Mole', but not necessarily an employment promotional procedure as in Tully. As such, the North Carolina Supreme Court's consideration of Mole' will

have a tangible impact on the disposition of Plaintiff's constitutional claim. In the absence of more established state law with respect to the elements of Plaintiff's constitutional claim and the adequate state remedies that may preclude it from success, the undersigned will respectfully recommend that Defendants' motion to dismiss Plaintiff's constitutional claim be denied and that the claim be permitted to proceed to an analysis on the merits while the North Carolina Supreme Court considers <u>Mole'</u>.

## B. Plaintiff's REDA Claim Against Defendant Board (Third Cause of Action)

Plaintiff asserts her third cause of action under North Carolina's Retaliatory Employment Discrimination Act ("REDA"), which provides in part:

> [n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to…[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action,…with respect to…Chapter 97 of the General Statutes,' the Workers' Compensation Act, N.C. GEN. STAT. § 97-1 (2020) et seq.

N.C. Gen. Stat. § 95-241(a).

To establish a prima facie case of retaliation, a Plaintiff must allege: "(1) that [she] exercised [her] rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that [she] suffered an adverse employment action, and (3) that the alleged retaliatory action was taken *because* the employee exercised [her] rights under N.C. Gen. Stat. § 95-241(a)." <u>Wiley v. United Parcel Serv., Inc.</u>, 594 S.E.2d 809, 811 (N.C. Ct. App. 2004) (emphasis added). If the plaintiff presents a prima facie case, "the burden shifts to defendant to show that the same decision would have been made if the employee had not engaged in the protected activity." <u>Johnson v. Friends of Weymouth, Inc.</u>, 461 S.E.2d 801, 804 (N.C. Ct. App. 1995) (citing <u>Brooks v. Stroh Brewery Co.</u>, 382 S.E.2d 874, 878 (N.C. 1989)). A defendant can meet this burden by demonstrating the existence of "a non-discriminatory reason for the adverse employment action." <u>See</u> <u>Tuan H. Nguyen v. Austin Quality</u>

14

<u>Foods, Inc.</u>, 974 F.Supp.2d 879, 884 (E.D.N.C. 2013).  Plaintiff may then rebut by producing evidence that goes "beyond that which was necessary to make a *prima facie* showing by pointing to specific, non-speculative facts which discredit the defendant's non-retaliatory motive."  <u>Wells v. N.C. Dept. of Correction</u>, 567 S.E.2d 803, 811 (N.C. Ct. App. 2002).

Defendants argue under Fed.R.Civ.P. 12(b)(6) that Plaintiff has insufficiently pled a causal connection (the third element) between the protected activity and the adverse employment action because she has failed to allege a close temporal connection, pattern of conduct, or any knowledge of the protected activity by the relevant decision-maker.  (Document No. 3-2, pp. 7-8).  Defendants also argue that Plaintiff has, in her own complaint, offered a legitimate, non-discriminatory reason for termination.  <u>Id.</u>  Each of the sub-sections that follow analyze Defendant's arguments attacking the sufficiency of Plaintiff's pleading of the causation element.

The undersigned finds that Plaintiff has sufficiently pleaded facts with respect to the causal element of her REDA claim, and Defendants' arguments to the contrary will be addressed below in turn.  As such, the undersigned respectfully recommends for the reasons that follow that Defendants' motion to dismiss Plaintiff's REDA claim against Defendant Board be denied.

i.      **Close Temporal Connection or Pattern of Conduct**

To satisfy the causation element, "a plaintiff may present evidence of close temporal proximity between the protected activity and the adverse employment action, or a pattern of conduct."  <u>Smith v. Comput. Task Grp., Inc.</u>, 568 F.Supp.2d 603, 614 (M.D.N.C. 2008).

Defendants contend that Plaintiff "has made no allegations of a pattern of conduct." (Document No. 3-2, p. 8).

Plaintiff does not address this argument in her response.

Defendants also argue that "no close temporal connection exists when the period in question is six-and-a-half months." Id. at p. 9. Defendants arrive at this time frame by noting that the Amended Complaint alleges that Plaintiff's workers' compensation incident occurred in early April and her termination occurred in late October. See id. Defendants note that North Carolina courts "have found no close temporal connection between the filing of a workers' compensation claim and termination of employment separated by two and half [sic] months…and four months." Id.

Plaintiff responds by contending that temporal proximity "is not the sole determining factor" and states that "[b]y considering only the termination date in the temporal proximity analysis, a defendant can avoid a finding of close temporal proximity by merely delaying the retaliatory firing for several months, even when there is direct evidence of wrongful motive." (Document No. 4, p. 6) (citing Tarrant v. Freeway Foods of Greensboro, Inc., 593 S.E.2d 808, 813 (N.C. Ct. App. 2004)). Plaintiff also argues that "soon after filing the worker's compensation claim, Defendant Beam and other supervisors began treating Plaintiff differently at work…by creating a hostile work environment" and that "the date of the temporal proximity should begin when the hostile treatment commenced." (Document No. 4, p. 6).

Defendants reply that Plaintiff has included "no fact-based, non-conclusory allegations that anyone discriminated against or took retaliatory action against Plaintiff due to her race or sex, or that a hostile work environment existed." (Document No. 7, p. 2).

The undersigned agrees with Defendant that six-and-a-half months between the protected activity and the alleged retaliation does not constitute close temporal proximity as a matter of law. The Middle District of North Carolina evaluated "the general parameters of close temporal proximity for purposes of REDA" as follows:

At one extreme, courts have found a time period of approximately one month or less to constitute close temporal proximity…At the other extreme, courts have held a time period of more than two and one-half months to constitute the absence of close temporal proximity…But see Tarrant v. Freeway Foods of Greensboro, Inc., 593 S.E.2d 808, 813 (N.C. Ct. App. 2004) (finding causal relationship based on direct evidence six years after filing of workers' compensation claim). A grey area appears to exist for periods between one month and two and one-half months….

Smith v. Comput. Task Grp., Inc., 568 F.Supp.2d 603, 614 (M.D.N.C. 2008) (internal citations omitted).

The undersigned notes that Plaintiff has alleged that, within five months of her injury, she experienced "belittling behavior, false accusations against her, conduct which threatened her job and employee benefits, [and she] was purposely placed under pressure resulting in extreme stress created by Defendants CMS, Cathy Beam." (Document No. 1-1, p. 245). These allegations do not specifically place the hostile treatment within the typical range for temporal proximity by law.

However, Plaintiff is correct that temporal proximity is not the only factor in determining causation. "Although some courts require close temporal proximity…, other courts find that direct evidence of retaliatory conduct is sufficient even in the absence of close temporal proximity." Smith, 568 F.Supp.2d at 614 (internal citations omitted). In the absence of a pattern of conduct or temporal proximity, the question then becomes whether Plaintiff has sufficiently pled facts showing direct evidence of retaliatory conduct. See id. at 614-616; see also Tarrant v. Freeway Foods of Greensboro, 593 S.E.2d 808, 813 (N.C. Ct. App. 2004).

The undersigned finds that the facts alleged, viewed in the light most favorable to the non-movant, give rise at least at the motion to dismiss stage to a reasonable inference that the adverse employment action was causally connected to Plaintiff's workers' compensation incident (at least

17

at this stage of the analysis on this element).  More discovery is warranted to understand whether a causal connection may be established through direct evidence.

## ii.    Knowledge by the Relevant Decision-Maker

Defendants argue in part that, to state a plausible retaliation claim, Plaintiff must make "fact-based allegations that the relevant decision-maker (supervisor Defendant Cathy Beam) had knowledge of plaintiff's workers' compensation claim."  (Document No. 3-2, p. 10).  Defendants also contend that the Amended Complaint contains "no allegations that Defendant Beam…knew that Plaintiff had filed a worker's compensation claim six-and-a-half months earlier."  Id.  Rather, the Amended Complaint alleges that Plaintiff reported her workers' compensation injury on April 4, 2018 to her then-supervisor, Angela Camalia.  (Document No. 1-1, pp. 235, 240).  Defendants cite Brown v. Sears Auto. Ctr., arguing that "the court concluded the retaliatory motive could **not** be established and that a REDA claim could **not** be stated where the decision-making supervisor did not know that the employee had engaged in protected activity."  (Document No. 3-2, p. 10) (citing 222 F.Supp.2d 757, 762-763 (M.D.N.C. 2002)).

Plaintiff does not directly address this argument in her response.

Defendants are correct with respect to *proving* a retaliation case that "a REDA claim cannot be stated if the decision-making supervisor did not know that the employee had engaged in protected activity."  Id.  Knowledge, therefore, of the relevant decision-maker is more appropriately analyzed at the summary judgment stage.  Brown, 222 F.Supp.2d at 763.

In this case, Plaintiff has alleged that "Defendants violated REDA after Plaintiff made her report to Cathy Beam and others within the CMS organization of her workers' compensation injury."  (Document No. 1-1, p. 257).  Taken as true, the undersigned finds that Plaintiff has adequately alleged Defendant Beam's knowledge (even though not *required* at the motion to

dismiss stage) of Plaintiff's protected workers' compensation activity for purposes of a REDA claim.

### iii.     Legitimate, Non-Discriminatory Reason for Termination

Defendants also argue that "[o]n the face of the Amended Complaint, Plaintiff explicitly provided the Court with a non-discriminatory reason for her termination," referring to allegations that Plaintiff violated CMS Board Policy in the form of misrepresenting household income on applications for free and reduced lunch. (Document No. 3-2, p. 10). Defendants cite no case law in support of this argument.

Plaintiff does not directly address this argument in her response.

REDA states that no violation of the statute has occurred if the person taking unfavorable action towards the employee "proves by the greater weight of the evidence that it would have taken the same unfavorable action in the absence of the protected activity of the employee." N.C.G.S. § 95-241(b). North Carolina courts consider this showing to constitute an affirmative defense that defendants may raise in response to a prima facie case of retaliation. See Smith v. Comp. Task Grp., Inc., 568 F.Supp.2d 603, 617 (M.D.N.C. 2008). Evidence that a plaintiff "was terminated for legitimate, non-discriminatory reasons" speaks to this aspect of the statute and is also understood to constitute an affirmative defense. See Tuan H. Nguyen v. Austin Quality Foods, Inc., 974 F. Supp.2d 879, 887 (E.D.N.C. 2013).

"The North Carolina courts have held that plaintiffs may generally rely on the evidentiary standards employed in federal discrimination cases to establish REDA claims," particularly the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lilly v. Mastec N. Am., 302 F.Supp.2d 471, 480 (M.D.N.C. 2004) (citing Wiley v. United Parcel

<u>Serv.</u>, 102 F.Supp.2d 643, 650 (M.D.N.C. 1999). In <u>Woods v. City of Greensboro</u>, the Fourth

Circuit evaluated a motion to dismiss a § 1981 discrimination claim as follows:

> Whether [Defendant's] nondiscriminatory explanation…is in fact pretext is a question to be analyzed under the long-familiar shifting burdens regime of <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and not under Rule 12(b)(6). Still, under <u>Iqbal</u> and <u>Twombly</u>, the Court must consider the plausibility of inferring discrimination based on [Plaintiff's] allegations in light of an "obvious alternative explanation" for the conduct. <u>Iqbal</u>, 556 U.S. at 682, 129 S.Ct. 1937. In other words, while [Plaintiff] need not establish a prima facie case at this stage, as discussed *supra* in Part II.B, we must be satisfied that the [Defendant's] explanation…does not render BNT's allegations implausible.

855 F.3d 639, 649 (4th Cir. 2017).

Plaintiff has alleged that Defendants' "reason given for her termination was false" and that

the investigation Defendants conducted was "deficient, lacked credibility, and thus constitutes

pretext." (Document No. 1-1, p. 245). Plaintiff has alleged that "Defendants falsely accused Mrs.

Johnson [of] falsifying records" and "wrongdoing" and that Defendants "defamed her character

and ultimately held [her] accountable for the alleged and unverified tort actions of her spouse…."

<u>Id.</u> at p. 244. Taking these allegations as true, Plaintiff has stated a plausible claim that her

termination was illegitimate, and more discovery would be warranted on this point to establish

whether the evidence suggests that Defendants' reasons for termination were pretextual or non-

discriminatory.

Whether Defendant Board's reason for Plaintiff's termination was legitimate and non-

pretextual is a determination better left to a later stage of this litigation. The undersigned finds

that Plaintiff's claim is not rendered implausible at this stage. Because Plaintiff has sufficiently

pleaded facts giving rise to reasonable inferences of a causal connection between her engagement

in protected activity and the adverse employment action she suffered, the undersigned respectfully recommends that Defendants' motion to dismiss this claim be denied.

### C. Plaintiff's REDA Claim Against Defendant Beam (Third Cause of Action)

Defendants contend that Plaintiff's REDA claim against Defendant Beam should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) because "Plaintiff cannot sustain a REDA claim against Defendant Beam in her individual capacity…and even if she could, Plaintiff's claim would be subject to dismissal because she has failed to exhaust her administrative remedies." (Document No. 3-2, p. 11). Defendants note that, prior to filing a lawsuit under REDA, Plaintiff is required to exhaust administrative remedies in the form of "fil[ing] a complaint with the North Carolina Commissioner of Labor, obtain[ing] a right-to-sue letter…and fil[ing] suit within 90 days of receiving that letter." (Document No. 3-2, p. 11) (internal citations omitted). Defendants note that "[a]ccording to the record, the North Carolina Department of Labor issued a Right to Sue letter on July 4, 2019, which listed Charlotte-Mecklenburg Schools as the Respondent, **not** Defendant Cathy Beam." (Document No. 3-2, p. 11) (citing Document No. 2).

Plaintiff does not directly address this argument in her response.

The undersigned agrees with Defendant that Plaintiff has only alleged exhaustion of administrative remedies with respect to Defendant Board. Exhaustion of administrative remedies requires "an initial filing of a written complaint with the Commissioner of Labor alleging the statutory violation, obtaining a right-to-sue letter, and commencing a civil action with ninety days of the letter's issuance." Lockie v. Staples Cont. and Com., Inc., No. 3:14-cv-521-FDW-DCK, 2015 WL 93643, at *4 (W.D.N.C. Jan. 7, 2015). Here, Plaintiff has only obtained a right to sue letter naming "Charlotte Mecklenburg Schools" as the respondent. (Document No. 2). Because Plaintiff has not exhausted administrative remedies with respect to Defendant Beam in her

individual capacity, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's REDA claim against Defendant Beam in her individual capacity be granted.

### D. Plaintiff's Claim For Tortious Interference of Contract Against Defendant Beam (Fourth Cause of Action)

Defendants argue that Plaintiff's claim for tortious interference with contract against Defendant Beam should be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 3-2, p. 2). Defendants argue that Defendant Beam "is considered a non-outsider to the employment relationship, had a legitimate business interest in the employment contract/relationship at issue, and enjoys qualified immunity." Id. at p. 12. Further, Defendants argue that "[i]n North Carolina, 'employees of the contracting organization cannot commit tortious interference unless…the interference has no relation whatever" to the defendant's legitimate business interest in the contract. Id. at p. 14 (quoting Ennett v. Cumberland Cnty. Bd. of Educ., 698 F.Supp.2d 557 (E.D.N.C. 2010)).

Defendants argue that "North Carolina makes a distinction between defendants who are 'outsiders' and 'non-outsiders' to the contract" and that "[a]n outsider is 'one who was not a party to the terminated contract and who had no legitimate business interest of his own in the subject matter thereof.'" Id. at p. 13 (quoting Combs v. City Elec. Supply Co., 690 S.E.2d 719, 725 (N.C. Ct. App. 2010)). Defendants note that "a non-outsider may be liable for tortious interference if the non-outsider acted with 'legal malice,' or 'without any legal justification for his action.'" Id. (quoting Varner v. Bryan, 440 S.E.2d 295, 298 (N.C. Ct. App. 1994)). Defendants contend that Defendant Beam, as Plaintiff's supervisor, had a legitimate business interest in Plaintiff's employment and is a non-outsider to the contract and that "Plaintiff has failed to allege any non-conclusory facts that Defendant Beam acted with legal malice…." Id. at p. 16.

Plaintiff argues that Defendant Beam undertook an irregular and unjustified investigative audit into Plaintiff's free/reduced lunch applications in a manner bearing no proper relation to her legitimate business interest in Plaintiff's employment contract. (Document No. 4, p. 7). Further, Plaintiff argues that "[w]hether or not Defendant Beam had the capacity and obligation to review the school lunch program…is factual determination" best left to a later stage of litigation. Id. Plaintiff does not directly respond to Defendants' argument that Defendant Beam is a non-outsider to the contract, nor does Plaintiff argue that Defendant Beam's alleged acts satisfy the requirement of "legal malice."

Defendants reply that "Plaintiff is a School Nutrition Area Supervisor," "Defendant Beam is the Executive Director and Plaintiff's manager," and "[t]he School Nutrition department is responsible for auditing and reviewing the free/reduced lunch program." (Document No. 7, p. 6). Defendants argue, "[i]f Defendant Beam, as the Executive Director of School Nutrition and Plaintiff's supervisor, did not have a legitimate business or supervisory interest under the facts of this case, then no one would." Id. at p. 7.

For claims of tortious interference with contract, North Carolina characterizes a "non-outsider" as "one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." Smith v. Ford Motor Co., 221 S.E.2d 282, 292 (N.C. 1976). Non-outsiders "often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee…. The qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." Lenzer v. Flaherty, 418 S.E.2d 276, 286 (N.C. Ct. App. 1992). The privilege, therefore, is not absolute. "A plaintiff can overcome the presumption that a non-outsider's action was justified by showing that the non-outsider took the

action for an improper reason." Benjamin v. Sparks, 173 F.Supp.3d 272, 290 (E.D.N.C. 2016) (internal citations omitted).

However, "merely alleging an improper actual or primary motive will not suffice." Id. at 290. Rather, "the complaint must admit of no other motive for interference other than malice." Privette v. Univ. of N.C. at Chapel Hill, 385 S.E.2d 185, 191 (N.C. Ct. App. 1989) (finding that a plaintiff's complaint on its face admitted a proper motive when bringing suit against management personnel). Still, the North Carolina Supreme Court has perceived "no reason for conferring upon the non-outsider immunity to suit for the malicious procurement of the termination of a contract when such action has no relation whatever to the source of the non-outsider status." Smith, 221 S.E.2d at 291.

The undersigned agrees with Defendants that Defendant Beam, as Plaintiff's supervisor, constitutes a non-outsider to the contract. In her complaint, Plaintiff alleges that Cathy Beam was "Executive Director and [Plaintiff's] manager." (Document No. 1-1, p. 239). As such, Defendant Beam had a legitimate business interest in Plaintiff's employment contract.

Ultimately, the undersigned finds that Defendant Beam's conduct bore a clear relation to her business interest in Plaintiff's employment contract and to her responsibilities as Executive Director. The undersigned agrees with Defendants that Defendant Beam's investigation into Plaintiff's free and reduced lunch applications was relevant both to her role as Plaintiff's supervisor and to her management position in the School Nutrition Department. Defendant Beam's interest in Plaintiff's compliance with department policies as an employee follows logically from Defendant Beam's supervisory position. As such, Defendant Beam enjoys the qualified immunity privilege of a non-outsider to Plaintiff's contract, and the undersigned respectfully recommends that Defendants' motion to dismiss this claim be granted.

### E.  Plaintiff's § 1983 Claims Against All Defendants (Fifth Cause of Action)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

In this case, Plaintiff alleges that Defendants have "violated her Constitutional rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution" in violation of 42 U.S.C. § 1983.  (Document No. 1-1, p. 261-62).  "To succeed on an equal protection claim, a plaintiff must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  "[T]he McDonnell Douglas framework, developed for Title VII, has been used to evaluate claims under [Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983]."  Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).

Defendants argue that Plaintiff's § 1983 claim against Defendant Board should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because "Plaintiff has failed to allege a constitutional violation by Defendant Board, and Plaintiff has failed to adequately plead municipal liability." (Document No. 3-2, p. 2).  Defendants also argue that Plaintiff's § 1983 claim against Defendant Beam should be dismissed pursuant to Rules 12(b)(1), (2), and (6) because Defendant Beam is entitled to qualified immunity.  Id.  The undersigned will address each of these arguments in turn.

### i.  Plaintiff's § 1983 Claim Against Defendant Board

Defendants contend that Plaintiff's § 1983 claim against Defendant Board should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because "Plaintiff has failed to sufficiently allege facts supporting Section 1983 municipal liability."  (Document No. 3-2, p. 19).  Defendants argue

that "governmental entities cannot be liable for a Section 1983 claim under a theory of *respondeat superior*." Id. at p. 16 (citing Monell v. Dept. of Social Serv.'s of City of New York, 436 U.S. 658, 691 (1978)). Defendants contend that municipal liability under § 1983 "requires the existence of an identifiable municipal policy or custom that caused the alleged injury." Id. at p. 17 (citing Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000); Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009)). Defendants argue that

> [a] municipal policy or custom arises in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law."

(Document No. 3-2, p. 17) (citing Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). Defendants argue that Plaintiff's Amended Complaint fails to allege sufficient facts that indicate a policy or widespread practice or deliberate indifference on the part of Defendant Board. Id. at p. 18.

Plaintiff argues in response that "Plaintiff's adverse employment actions were ratified and approved by the Defendant Board" and that "[u]nder North Carolina law, a school board is the final policymaker with regard to the employment and discharge of school employees." (Document No. 4, p. 10) (citing Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F.Supp.3d 797 (M.D.N.C. 2021)). Plaintiff notes that Defendants admit in their Memorandum in Support of Defendants' Motion to Dismiss that Defendant Board "held an administrative hearing to determine whether Plaintiff shall return to her job or be completely terminated" and, "relying on advice of Defendant Beam, made the final decision that Plaintiff should be terminated." Id. (citing Document No. 3, p. 3).

Defendants reply that "Plaintiff has not alleged that an official policy, practice, or custom of institutional discrimination led to her injury and has failed to articulate an underlying

constitutional violation or any underlying discrimination based on race or sex." (Document No. 7, p. 7).

The undersigned recognizes that municipalities and local governments, which include school boards, can be sued pursuant to § 1983. Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 690 (1978); Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 522 n.3 (4th Cir. 2000). However, "[l]ocal governments are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011). In order to sue a municipality or school board under § 1983, Plaintiff must show that "the alleged injury was caused by an identifiable municipal policy or custom." Riddick, 238 F.3d at 522. Policy "may be found in written ordinances and regulations, [] in certain affirmative decisions of individual policymaking officials, [] or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). All of these manifestations of policy occur in "formal decisionmaking channels"— including the policy by omission. Id. Custom, on the other hand, can arise informally, "if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Id. (internal citations and quotations omitted).

In identifying such policy or custom, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality;" rather, a plaintiff must show that the municipality "through its *deliberate* conduct" was the "moving force" that caused the alleged injury. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). "Accordingly, to impose section 1983 liability on a municipality, a claimant must first show that 'a municipal decision reflects *deliberate indifference* to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" Riddick, 238 F.3d at 524 (citing Brown,

520 U.S. 397 (1997)). "Deliberate indifference is established where policymakers have actual notice and acquiesce in a pattern of similar constitutional violations." Doe v. Putney, No. 3:18-CV-586-RJC-DSC, 2020 WL 2813525, at *6 (W.D.N.C. May 29, 2020).

"Deliberate indifference is a very high standard…." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "Deliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action [or inaction].'" Biggs v. Edgecombe Cnty. Pub. Sch.'s Bd. of Educ., 2018 WL 4471742, at *6 (E.D.N.C. Sept. 18, 2018) (quoting Brown, 520 U.S. at 410). Courts have held that there was no evidence of deliberate indifference in cases where only a single incident of violation was alleged, or where the municipality expressly condemned the discriminatory behavior or otherwise took disciplinary action in response to alleged violations. See Sciacca v. Durham Cnty. Bd. Of Educ., 509 F.Supp.3d 505, 519 (M.D.N.C. 2020); see also Va. Student Power Network v. City of Richmond, 2021 WL 6550451, at *7 (Va. Cir. Ct. January 20, 2021). Even policymaking decisions which are "clearly unfortunate, [and] might perhaps be thought imprudent, or even be found legally negligent" are insufficient to establish deliberate indifference. See Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997); see also Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000).

In cases addressing deliberate indifference in the context of a local government's failure to properly train employees, "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action…necessary to trigger municipal liability." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 409 (1997)). In the context of supervisory liability under § 1983, the Middle District of North Carolina found facts sufficient to state a claim for deliberate indifference where

the plaintiff alleged that her supervisor had actual notice of an employee's discriminatory behavior and failed to take action in response to the plaintiff's multiple complaints regarding the discrimination. See Mandsager v. Univ. of N.C. at Greensboro, 269 F.Supp.2d 662, 679 (M.D.N.C. 2003).

At the pleading stage, the Supreme Court has confirmed that the notice pleading requirements in the Federal Rules of Civil Procedure at Rule 8(a)(2) still apply in the context of a claim against a municipality under Monell—there is no "heightened pleading standard" for these § 1983 claims. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). According to the Fourth Circuit, with respect to the sufficiency of pleading a policy or custom, the Leatherman decision indicates that "[t]here is no requirement that [a plaintiff] detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan by Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994). Thus, so long as a Plaintiff "alleges the existence" of a policy or custom that "proximately caused" the constitutional violation of clearly established rights, at the pleading stage, that is all that is required to survive a motion to dismiss. Id. at 340.

Plaintiff is correct that a policy or custom can arise "through the decisions of a person with final policymaking authority." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). "The question of who possesses final policymaking authority is one of state law." Riddick v. Sch. Bd. City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). Plaintiff correctly cites the Middle District of North Carolina's determination that "[u]nder North Carolina law, a school board is the final policymaker with regard to the employment and discharge of school employees." Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F.Supp.3d 797, 810 (M.D.N.C. 2021). The question becomes

whether Plaintiff has sufficiently pleaded facts giving rise to a reasonable inference of Defendant Board's deliberate indifference to her constitutional rights.

The undersigned finds that this question presents a close call. Plaintiff, in her response to Defendants' arguments, makes no statements regarding Defendant Board's deliberate indifference to Plaintiff's constitutional rights. Instead, she seems to rely on attributing the injury to Defendant Board's conduct alone through a theory of vicarious liability. (Document No. 4, p. 10).

Plaintiff does allege that "Defendant knew or should have known that they were violating well established laws." (Document No. 1-1, p. 261). Plaintiff also alleges that Defendant Board "has a history of treating African American women differently than other groups as it relates to investigative and disciplinary matters" and that Defendant Board "treated a similarly situated male employee differently than Plaintiff, as the male employee was allowed to remain employed and Plaintiff was terminated for allegedly violating the same rule or policy." Id. at p. 261. Plaintiff has alleged that "Defendant CMS ratified and/or condoned such policy/conduct" with respect to the employees. Id.

The undersigned finds some of Plaintiff's statements with respect to Defendant Board's ratification of the alleged constitutional violations to be conclusory. However, viewing other allegations in the light most favorable to Plaintiff as the non-movant, the undersigned ultimately finds that Plaintiff's allegations with respect to Defendant Board are sufficient to establish a reasonable inference of deliberate indifference to Plaintiff's constitutional rights for the purposes of establishing municipal liability at the motion to dismiss stage. As such, the undersigned respectfully recommends that Defendants' motion to dismiss this claim be denied and that the claim be permitted to proceed to discovery.

### ii.    Plaintiff's § 1983 Claims Against Defendant Beam

Plaintiff sues Defendant Beam "in her individual and official capacity under 42 U.S.C. § 1983." (Document No. 1-1, p. 262). Defendants move for dismissal of Plaintiff's § 1983 claims against Defendant Beam pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). (Document No. 3-2, p. 19).

In part, Defendants argue that "[t]he Section 1983 claim against Defendant Beam in her official capacity should be dismissed as duplicative" of the § 1983 claims against Defendant Board. Id.

The undersigned agrees. "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). As such, the undersigned will respectfully recommend that Plaintiff's § 1983 claim against Defendant Beam in her official capacity be dismissed. The undersigned will now consider Plaintiff's § 1983 claim against Defendant Beam in her individual capacity.

Defendants next argue that Plaintiff's claims against Defendant Beam in her individual capacity should be dismissed because Defendant Beam is entitled to qualified immunity as a government official. (Document No. 3-2, p. 19). Defendants assert that "[t]o determine whether qualified immunity applies, the Court determines whether the facts, taken in the light most favorable to the non-movant, establish that the official violated a constitutional right, and if necessary, determines if the right was clearly established to a reasonable person." Id. at p. 20 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Defendants contend that Plaintiff has not pleaded sufficient facts to demonstrate that she has been treated differently from other similarly situated employees as the result of intentional

discrimination in violation of her Fourteenth Amendment rights. Id. at pp. 20-22. Defendants argue that "[t]o be similarly situated, the employees must have been disciplined by the same supervisor" and that Plaintiff has failed to allege sufficient facts with respect to this element of the claim. (Document No. 3-2, p. 21). Defendant makes no argument with respect to whether Plaintiff's rights were clearly established.

Plaintiff responds only that she has "alleged that other white male employees who were accused of the same act were not terminated nor had any other adverse employment consequences." (Document No. 4, p. 11).

Qualified immunity "is a doctrine that protects government officials from civil liability, as long as their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Albright v. Charlotte-Mecklenburg Bd. of Educ., No. 3:17-CV-461-FDW-DSC, 2017 WL 6028362, at *2 (W.D.N.C. December 5, 2017) (citing Meyers v. Balt. Cnty., 713 F.3d 723, 731 (4th Cir. 2013)).

To determine whether qualified immunity applies, the court asks "whether the facts, taken in the light most favorable to the non-movant, establish that the [public official] violated a constitutional right, and if necessary, determines if the right was clearly established to a reasonable person." Albright, 2017 WL 6028362, at *2 (W.D.N.C. December 5, 2017) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "A right is clearly established if 'in light of pre-existing law, the unlawfulness of the actions is apparent'" to "an objectively reasonable official in similar circumstances at the time of the challenged conduct." Id. (citing Johnson v. Caudill, 475 F.3d 645, 650 (4th Cir. 2007)).

Qualified immunity is an immunity from suit, not merely from liability, and "qualified immunity from section 1983 claims should be addressed 'at the earliest possible stage in

litigation.'" Id. at *3 (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). However, as the Western District of North Carolina held in Albright,

> determining qualified immunity at the pleading stage can be difficult…. For example, the plaintiff may have alleged a plausible violation of a clearly established right, but a material factual dispute over what actually occurred exists….If these circumstances exist, dismissal at the pleading stage is not appropriate. Discovery will proceed, but issues relating to qualified immunity should be prioritized.

Id. at *3 (internal citations omitted). In Albright, the Western District denied defendants' motion to dismiss the plaintiff's § 1983 claim against CMS for discriminatory termination based on gender in violation of the Equal Protection Clause, stating that

> Defendants may dispute the facts alleged by Plaintiff, and ultimately, show that a reasonable official would have believed that his conduct was lawful, but the Court cannot conclude this on the pleadings. Thus, at this preliminary stage, the Court cannot conclude as a matter of law that the Individual Defendants are entitled to qualified immunity.

Id.

The undersigned finds that the posture of this case is sufficiently similar to Albright to reach the same conclusion, or lack thereof, regarding whether Plaintiff's rights under the circumstances were clearly established as a matter of law.

In determining whether a violation of these rights occurred, the undersigned agrees that sufficiently alleging a violation of the Equal Protection Clause of the Fourteenth Amendment under § 1983 requires Plaintiff to plead facts giving rise to a reasonable inference of disparate, discriminatory treatment towards similarly situated employees. Defendants are correct that "**[i]n most cases**, "[t]o be similarly situated the employee must have been disciplined by the same supervisor." Reid, 154 F.Supp.3d at 285 (quoting McDougal-Wilson v. Goodyear Tire and Rubber

33

Co., 427 F.Supp.2d 595, 610 (E.D.N.C. 2006)) (emphasis added).  Defendants are also correct that Plaintiff has alleged no facts to this point.

However, at the summary judgment stage, the Western District of North Carolina recently stated:

> To demonstrate a triable issue on [this element], a plaintiff must show that employees outside his protected class were similarly situated in all relevant respects, though they need not have engaged in "precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances[.]"

Reid v. Dalco Nonwovens, LLC, No. 5:13-CV-RLV-DCK, 154 F.Supp.3d 273, 285 (W.D.N.C. 2016).  Importantly, "[t]he similarly situated analysis typically occurs in the context of establishing a *prima facie* case of discrimination, not at the 12(b)(6) stage."  Woods v. City of Greensboro, 855 F.3d 639, 651 (4th Cir. 2017) (citing Haywood v. Locke, 387 Fed.Appx. 355, 358–59 (4th Cir. 2010)).

The undersigned notes that Plaintiff's Amended Complaint alleges "a similar situation involving the free/reduced lunch program occurred" with Mr. and Mrs. Soares, both CMS employees, in which Mr. Soares "was given an opportunity to demonstrate he had not signed" the program application and ultimately was not terminated, but his wife was.  (Document No. 1-1, p. 244).  Plaintiff contends that in both her situation and the Soares', "the males received the more favorable treatment."  Id. at p. 245.  However, the undersigned also notes that in Plaintiff's situation, the male to whom Plaintiff refers is Plaintiff's husband, who is not an employee of CMS.

Ultimately, the undersigned finds that, at the motion to dismiss stage, Plaintiff's allegation that Mr. Soares "was given an opportunity to demonstrate he had not signed" the program application whereas Mrs. Johnson was given no such opportunity sufficiently gives rise to the reasonable inference that she and Mr. Soares were similarly situated and that Plaintiff was treated

34

differently.  Id. at p. 245.  As such, Defendants' argument regarding Plaintiff's failure to state a claim is unpersuasive.

The undersigned therefore respectfully recommends that Plaintiff's § 1983 claim against Defendant Beam in her individual capacity be permitted to proceed to discovery and that Defendant's motion to dismiss this claim be denied.

### F.  Plaintiff's § 1981 Claim Against Defendant Board (Sixth Cause of Action)

Defendants contend that Plaintiff's Section 1981 claim against Defendant Board should be dismissed because "no freestanding claim against a municipal employer exists under Section 1981." (Document No. 3-2, p. 23).  Defendants point out that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 733 (1989).  Defendants further argue that "[e]ven if Plaintiff's Section 1981 [claim] were evaluated under Section 1983, the claim would fail" because "Plaintiff has identified no policy, practice, or custom of intentional racial discrimination and has not alleged any elements of a racial discrimination claim." (Document No. 3-2, p. 23).

Plaintiff responds that "Defendant is correct that there is no freestanding § 1981 claims [sic] against a municipal employer such as Defendant Board."  (Document No. 4, p. 11) (citing Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F.Supp.3d 797 (M.D.N.C. 2021) (quoting Jett v. Dall. Indep. Sch. Dist., 491 U.S. at 733)).  Plaintiff argues, "[h]owever, this is not sufficient to warrant dismissal." Id. (citing Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (quoting Jett, 491 U.S. at 733)).  Plaintiff contends that she properly established municipal liability under § 1983 by alleging that "other white male employees who were accused of the same act were not terminated nor had any other adverse employment consequences." (Document No. 4, p. 11).

35

The Western District of North Carolina recently held that "no freestanding claim against a municipal employer exists under § 1981." White v. Gaston Cnty. Bd. of Educ., No. 3:16-cv-552-MOC-DSC, 2017 WL 220134, at *4 (W.D.N.C. Jan. 18, 2017). "Instead, plaintiff should have stated the substance of such claim under Section 1983, to wit, that defendant, acting under color of state law, deprived [her] of [her] right secured under Section 1981 to be free from interference with [her] public employment contract based on his race." Id.

As such, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's § 1981 claim against Defendant Board be granted.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss" (Document No. 3) be **GRANTED IN PART** with respect to Plaintiff's claim of wrongful discharge in violation of public policy against Defendant Board, Plaintiff's REDA claim against Defendant Beam, Plaintiff's claim for tortious interference with contract against Defendant Beam, Plaintiff's § 1983 claim against Defendant Beam in her official capacity, and Plaintiff's § 1981 claim against Defendant Board; **and DENIED IN PART** with respect to Plaintiff's constitutional claim of wrongful termination against Defendant Board, Plaintiff's REDA claim against Defendant Board, and Plaintiff's § 1983 claims against Defendant Board and against Defendant Beam in her individual capacity.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service

of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.


Signed: July 29, 2022

David C. Keesler
United States Magistrate Judge